UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| ADONAY ENCARNACION, Individually, and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| J.W. LEE, INC., D/B/A SCARLETT'S CABARET D/B/A SCARLETT'S OF HALLANDALE, FL; J.W. LEE PROPERTIES, LLC; YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP; BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY, | § § § § § § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

### I.       SUMMARY

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees.  29 U.S.C. §§ 206, 207.  These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees.  *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

1.      This case implicates a chain of adult entertainment clubs which go by the trade name of "Scarlett's."  The entities and employers implicated are, J.W. Lee Inc. d/b/a Scarlett's Cabaret, J.W. Lee Properties, LLC, YBOR Operations, L.C. d/b/a Scarlett's of Ybor Strip, BZLY, Inc. M.S.B. Land Holdings, Inc., SVC Joint Ventures LLC, BENORE Ventures, Inc., SB Productions, Inc., Brandon Samuels, John Blanke, and William Beasley ("Defendants").

2.      Defendants have a longstanding policy of misclassifying their employees as independent contractors.

3.      Defendants required and/or permitted Plaintiff Adonay Encarnacion ("Plaintiff") to work as exotic "entertainers" and/or dancers at their adult entertainment club in excess of forty (40) hours per week, but refused to compensate them at the applicable minimum wage and overtime rate.

4.      In fact, Defendants failed to pay Plaintiff any wages whatsoever, throughout her employment.

5.      Thoughout her employment with Defendants, Plaintiff's only compensation was in the form of tips from club patrons.

6.      Defendants' conduct violates the FLSA, which requires non-exempt employees, such as Plaintiff, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay.  *See* 29 U.S.C. § 207(a).

7.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision as does Defendants' practice of siphoning away those tips to distribute to non-tip eligible employees.  *See* 29 U.S.C. §§ 203, 206.

8.      Plaintiff brings a collective action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked at Scarlett's

Cabaret of Hallendale, Scarlett's of Ybor Strip, and/or Scarlett's of Fort Myers, at any time during the three year period before this Complaint was filed up to the present ("Class Members"). These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## II.    SUBJECT MATTER JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10.    Venue is proper in the Southern District of Florida because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants' headquarters are located in this District.

11.    Defendants' headquarters are located at 3040 SW 30th Ave. Pembroke Park, Florida 33009.

12.    Plaintiff worked at Defendants' club, located at 2920 SW 30th Ave. Hallandale Beach, Florida 33009 over extended periods of time, and it is Defendants' failure to pay Plaintiff for this work that gives rise to the instant claims.

## III.    PARTIES AND PERSONAL JURISDICTION

13.    Plaintiff Adonay Encarnacion is an individual residing in Miami-Dade County, Florida. Plaintiff's written consent to this action is attached hereto as Exhibit "A."

14.    The Class Members are all of Defendants' current and former exotic entertainers who worked at any of the Scarlett's chain of clubs located in Florida including, Scarlett's Cabaret located in Hallandale, Florida, Scarlett's of Ybor Strip located in Tampa, Florida, and Scarlett's of Fort Myers located in Fort Myers, Florida at any time during the three years prior to the filing of this Complaint up to the present.

3

15.     Defendant J.W. Lee, Inc. d/b/a Scarlett's Cabaret d/b/a Scarlett's of Hallandale, FL is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Defendant may be served through its Registered Agent as follows: Hugh McNew, 707 NE 195th St., N Miami Beach, FL 33179.

16.     Defendant J.W. Lee Properties, LLC is a domestic limited liability company doing business in Florida for the purpose of accumulating monetary profit.  This Defendant may be served through its Registered Agent as follows: Hugh McNew, 707 NE 195th St., N Miami Beach, FL 33179.

17.     Defendant Ybor Operations, L.C. d/b/a Scarlett's of Ybor Strip is a domestic limited company doing business in Florida for the purpose of accumulating monetary profit. This Defendant may be served through its Registered Agent as follows: Hugh McNew, 707 NE 195th St., N Miami Beach, FL 33179.

18.     Defendant BZLY, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit.  This Defendant may be served through its Registered Agent as follows: Hugh McNew, 707 NE 195th St., N Miami Beach, FL 33179.

19.     Defendant M.S.B. Land Holdings, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Defendant may be served through its Registered Agent as follows: Hugh McNew, 707 NE 195th St., N Miami Beach, FL 33179.

20.     Defendant SVC Joint Ventures, LLC is a domestic limited liability company doing business in Florida for the purpose of accumulating monetary profit. This Defendant may be served through its Registered Agent as follows: Hugh McNew, 3040 SW30th Ave Pembroke Park, FL 33009.

21.     Defendant Benore Ventures, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Defendant may be served through its Registered Agent as follows: Hugh McNew, 707 NE 195th St., N Miami Beach, FL 33179.

22.     Defendant SB Productions, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Defendant may be served through its Registered Agent as follows: Hugh McNew, 707 NE 195th St., N Miami Beach, FL 33179.

23.     Defendant Brandon Samuels is an individual residing in Florida.  Said Defendant may be served with process at his personal residence: 1625 SE 14th St, Fort Lauderdale, FL 33316.  This Court has personal jurisdiction over this Defendant because he is a resident of Florida.

24.     Defendant John Blanke is an individual residing in Florida.  Said Defendant may be served with process at his personal residence: 5130 Monroe St, Hollywood, FL 33021.  This Court has personal jurisdiction over this Defendant because he is a resident of Florida.

25.     Defendant William M. Beasley is an individual residing in Florida.  Said Defendant may be served with process at his person residence: 2235 Antlia Ave. Davie, FL 33324.  This Court has personal jurisdiction over this Defendant because he is a resident of Florida.

26.     Collectively, Defendants comprise a "joint enterprise" within the meaning of the FLSA, because they: (1) exist for a common business purpose: to operative adult entertainment establishments for profit; and (2) have common ownership and management.

## IV.   FLSA COVERAGE

27.     In an FLSA case, the following elements must be met.  "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages." *Freeman v. Key Largo*

*Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

## EMPLOYMENT RELATIONSHIP

28.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id.*

29.     Here, Defendants had the power to hire and fire Plaintiff.  Defendants hold an audition for entertainers looking to be hired at the club.  Defendants ask that the entertainers "bring proper dancing attire" to the auditions or submit a picture if applying online.  *See* Exhibit B (Entertainer FAQ from Scarlett's Hallandale, and Fort Myers).

30.     Defendants controlled Plaintiff's work schedule.  Defendants scheduled Plaintiff and other entertainers to certain shifts.  *See* Exhibit B.

31.     Defendants required Plaintiff and other entertainers to work a certain number of days during the week.

32.     Defendants provided training, if needed, through an orientation program that taught the entertainers "everything [they] need to know."  *See* Exhibit B.

33.     Defendants required Plaintiff and other dancers to wear certain clothing on certain days of the week.

34.     Defendants required Plaintiff and other dancers to sell certain promotional items including items such as t-shirts bearing the Defendants' logo.

35.     Defendants determined the rate and the method of payment of all dancers including Plaintiff.  Defendants set the price for their customers to pay dancers for "side table dances" and "song lap dances."  *See* Exhibit B.    Further, Defendants set a price for their customers to pay entertainers for champagne room dances.

36.     Additionally, Defendants required Plaintiff and all other entertainers to pay "house fees" depending on the day and shift the dancer was working.  Plaintiff and all other entertainers had to tip out certain employees at the end of their shift including but not limited to the DJ, the House Mom, wait staff, floor men, valet, security, and managers.  *See* Exhibit B.

37.     Entertainers are an integral part of Defendants' strip clubs.

38.     Plaintiff's and all other entertainers' job duties consisted of dancing in designated areas and performing dances for Defendants' customers at the club.  These job duties require little to no skill. [1]

39.     Defendants maintained some records regarding the time Plaintiff and all other entertainers arrived and left the club.

40.     At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

---

[1] *See, Freund v. Hi-Tech Satellite, Inc.,* 185 Fed. Appx. 782, 783 (11th Cir. 2006) ([C]ourts must determine whether, as a matter of economic realit[y], an individual is an employee or an independent contractor in business for himself. Several factors guide this inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business.") (internal citations omitted); *see also, Clincy v. Galardi S. Enterprises, Inc.,* 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011) (applying economic reality test and finding exotic dancers were employees not independent contractors).

41.     Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

42.     The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation. *See id.*; *Patel v. Wargo,* 803 F.2d 632, 636 (11th Cir .1986); *Reich v. Circle C. Investments, Inc*., 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 971-72 (5th Cir. 1984).

43.     Defendant Brandon Samuels is the President and manager of Benore Ventures, Inc.

44.     Defendant Brandon Samuels is the President and manager of J.W. Lee, Inc.

45.     Defendant Brandon Samuels is the manager of J.W. Lee Properties, LLC.

46.     Defendant Brandon Samuels is the manager of Ybor Operations, L.C.

47.     Defendant Brandon Samuels is the President and manager of M.S.B. Land Holdings, Inc.

48.     Defendant Brandon Samuels is the manager of SVC Joint Ventures, LLC.

49.     Defendant Brandon Samuels is the President and manager of SB Productions, Inc.

50.     Defendant John Blanke is the President and Director of Defendant BZLY, Inc.

51.     Defendant John Blanke is the manager of Ybor Operations, L.C.

52.     Defendant John Blanke is the Vice President and director of Benore Ventures, Inc.

53.     Defendant John Blanke is the director of J.W. Lee, Inc.

54.     Defendant John Blanke is the manager of J.W. Lee Properties, LLC.

55.     Defendant John Blanke is the manager of Ybor Operations, L.C.

56.     Defendant John Blanke is the Vice President and director of M.S.B. Land Holdings, Inc.

57.     Defendant John Blanke is the manager of SVC Joint Ventures, LLC.

58.     Defendant John Blanke is the Vice President and director of SB Productions, Inc.

59.     Defendant William Beasley is the shareholder, manager, officer and director of Defendant BZLY, Inc.

60.     Defendant William Beasley is the manager of Ybor Operations, L.C.

61.     Defendant William Beasley is the shareholder and manager of Benore Ventures, Inc.

62.     Defendant William Beasley is the shareholder and manager of J.W. Lee, Inc.

63.     Defendant William Beasley is the manager of J.W. Lee Properties, LLC.

64.     Defendant William Beasley is the manager of Ybor Operations, L.C.

65.     Defendant William Beasley is the shareholder and manager of M.S.B. Land Holdings, Inc.

66.     Defendant William Beasley is the manager of SVC Joint Ventures, LLC.

67.     Defendant William Beasley is the shareholder and manager of SB Productions, Inc.

68.     Defendants Brandon Samuels, John Blanke, and William Beasley are involved in the day-to-day business operation of all three Florida Scarlett's clubs (Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip, and Scarlett's of Fort Myers).

69.     Defendants Brandon Samuels, John Blanke, and William Beasley have responsibility for the supervision of the entertainers at all three Florida Scarlett's clubs (Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip, and Scarlett's of Fort Myers).

9

70.     Defendants Brandon Samuels, John Blanke, and William Beasley are responsible for the compensation or lack thereof paid to entertainers at all three Florida Scarlett's clubs (Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip, and Scarlett's of Fort Myers).

71.     Defendants Brandon Samuels, John Blanke, and William Beasley have the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

72.     Additionally, Defendants Brandon Samuels, John Blanke, and William Beasley were responsible for the day-to-day affairs of the clubs. In particular, they were responsible for determining whether the clubs complied with the Fair Labor Standards Act.

73.     Defendants Brandon Samuels, John Blanke, and William M. Beasley controlled the nature, pay structure, and employment relationship of the Plaintiff and Class Members.

74.     As such, Defendants Brandon Samuels, John Blanke, and William Beasley are the employers of the Plaintiff and Class Members within the meaning of 3(d) of the FLSA, and are jointly, severally, and liable for all damages.

## ENTERPRISE AND INDIVIDUAL COVERAGE

75.     "The Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a) (1), requires an employer to pay overtime compensation to an hourly worker if the employee can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634-CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.*, 448 F.3d 1264, 1265 (11th Cir.2006)).  "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross

volume of sales made or business done is not less than $500,000.'" *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id.* (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

76.    At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

77.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

78.    Specifically, Defendants' employees have sold goods—such as alcoholic beverages and a variety of foods—that have been moved or produced in interstate commerce to Defendants' patrons.  Additionally, Defendants' employees, including Plaintiff, have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

79.    Defendants advertise on the internet, own clubs in two states which they advertise together on their website, process credit cards from out of state patrons, communicate via mail, email, and telephone with their clubs outside of the state of Florida, and sell their merchandise across state lines.

80.    Defendants, at all times relevant hereto have maintained business operations in two (2) or more states simultaneously.

81.    Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

82.    At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

**WAGE VIOLATIONS**

83.     Defendants misclassify Plaintiff and all other entertainers as independent contractors.

84.     Defendants failed to pay Plaintiff and all other entertainers they hire any compensation whatsoever.

85.     The money Plaintiff received directly from Defendants' customers are tips.

86.     Defendants siphoned Plaintiff's and all other entertainers' tips by requiring them to share their tips with other employees who are not eligible to participate in a tip pool.

V.     **FACTS**

87.     Plaintiff and Class Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them minimum wage, proper overtime, and the tips they lawfully earned.

88.     Defendants operate three adult entertainment clubs in Florida.

89.     Defendants operate an adult entertainment club at 2920 S.W. 30th Ave. Hallandale Beach, FL 33009 under the name of "Scarlett's Cabaret."

90.     Defendants operate an adult entertainment club at 3819 7th Avenue Tampa, Florida 33605 under the name of "Scarlett's of Ybor Strip."

91.     Defendants operate an adult entertainment club at 3650 Fowler Street Fort Myers, Florida 33901 under the name of "Scarlett's of Fort Myers."

92.     Defendants employ exotic entertainers at Scarlett's Cabaret, Scarlett's Ybor Strip, and Scarlett's of Fort Myers.

93.     Plaintiff Adonay Encarnacion is a former exotic entertainer at Defendants' adult entertainment club: Scarlett's Cabaret.

94.     Plaintiff worked on a regular basis for Defendants' club.

95.     From approximately August of 2012 until October 31, 2013, Plaintiff Adonay

Encarnacion danced at Scarlett's Cabaret in Hallandale Beach, Florida.

96.     Therefore, Plaintiff Adonay Encarnacion has first-hand personal knowledge of the pay violations at Scarlett's.

97.     The exotic entertainers are compensated exclusively through tips from Defendants' customers.

98.     Defendants did not pay the entertainers compensation for any hours worked at their establishments.

99.     Defendants charged the entertainers certain fees per shift worked.

100.    Defendants charged the entertainers a "house fee" depending on the time they arrive to work.

101.    Defendants also required the entertainers to share their tips with employees who do not customarily and regularly receive tips, including the disc jockeys and the managers.

102.    Defendants illegally classified the entertainers as independent contractors. However, at all times, the entertainers were employees of Defendants as that term is defined by the FLSA and relevant case law.

103.    Defendants hired, fired and supervised the entertainers.  Defendants also set the schedule for the entertainers. Defendants controlled the details of the entertainers' jobs, including setting the prices to charge customers for dances and imposing limitations on how to interact with the clubs' customers.

104.    Defendants also controlled the entertainers' appearances with respect to their attire and makeup.

105.    Defendants disciplined the entertainers for not following club rules.

106.    Defendants tracked the time and days the entertainers worked just as is common for typical employer-employee relationships.

107.    In addition, Defendants instructed the entertainers about when, where, and how the entertainers were to perform their work.

108.    The following further facts demonstrate the entertainers' status as employees:

   a)    Defendants had the sole right to hire and fire the entertainers;

   b)    Defendants require dancers to complete an employee application as a prerequisite to their employment;

   c)    Defendants made the decision not to pay overtime;

   d)    Defendants made the decision not to compensate at the FLSA minimum wage rate;

   e)    Defendants provided the entertainers with music equipment and a performing stage;

   f)    Defendants controlled the entertainers' music;

   g)    The dancers have made no financial investment with Defendants' business;

   h)    The dancers were hired as permanent employees and have worked for Defendants for years;

   i)    Defendants supervised the entertainers; and

   j)    Defendants scheduled entertainers and as such had sole control over their opportunity for profit.

109.    Defendants misclassified Plaintiff and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA.

110.    Plaintiff and Class Members are not exempt from the overtime and minimum wage requirements under the FLSA.

111.    Although Plaintiff and Class Members are required to and do in fact frequently

work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek.  In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of the FLSA. *See* 29 U.S.C. § 206.

112.    Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the intent to avoid paying her in accordance to the FLSA.

113.    Defendants have been in the exotic dancing industry for years and are familiar with the long line of federal cases holding that entertainers in this industry are employees as that term is defined by the FLSA.

114.    Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).  That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

115.    All Defendants have a common business purpose of for profit adult entertainment.

116.    The individually named Defendants keep employment records for Scarlett's Cabaret of Hallandale, Florida, Scarlett's of Fort Myers, and Scarlett's of Ybor Strip.

117.    The individually named Defendants have ultimate authority regarding hiring and firing employees at Scarlett's Cabaret of Hallandale, Florida, Scarlett's of Fort Myers, and Scarlett's of Ybor Strip.

118.    The individually named Defendants own and operate Scarlett's Cabaret of Hallandale, Florida, Scarlett's of Fort Myers, and Scarlett's of Ybor Strip.

119.    The individually named Defendants created and implemented companywide

policy of misclassifying exotic entertainers as independent contractors at Scarlett's Cabaret of Hallandale, Florida, Scarlett's of Fort Myers and Scarlett's of Ybor Strip.

120.    All corporate Defendants have the same registered agent.

121.    Defendants operate a chain of strip clubs under the assumed name "Scarlett's." Indeed, they advertise themselves as such on their website. *See* Exhibit C (Defendants' website advertising its chain of clubs). The fact that they run each Scarlett's Cabaret identically and their customers can expect the same kind of customer service regardless of the location is Defendants' main advertising selling point.

122.    Defendants represent themselves to the general public as one strip club— Scarlett's—operating at multiple locations.   They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.   This is a family of strip clubs that advertises together on the same website, provides the same array of services to its customers, and uses the same business model.   The "Scarlett's" family of strip clubs exists under the control and direction of Defendants.   This family of strip clubs provides the same service product to its customers by using a set formula when conducting its business.   Part of that set formula is the wage violation alleged in this complaint.   These facts represent a classic example of "corporate fragmentation."

## VI.    COUNT ONE: VIOLATION OF 29 U.S.C. § 207

123.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

124.    Defendants' practice of failing to pay Plaintiff and Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

125.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiff.

## VII.    COUNT TWO: VIOLATION OF 29 U.S.C. § 206

126.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

127.    Defendants' practice of failing to pay Plaintiff and Class Members at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206. In fact, Defendants do not compensate the exotic entertainers whatsoever for any hours worked.

128.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

129.    Defendants failed to keep adequate records of Plaintiff's and Class Members' work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c).

130.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a)    The time of day and day of week on which the employees' work week begins;

b)    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c)    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d)    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e)      The hours worked each workday and total hours worked each workweek;

f)      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g)      The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h)      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i)      The dates, amounts, and nature of the items which make up the total additions and deductions;

j)      The total wages paid each pay period; and

k)      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

131.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiff and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

## VIII.   COLLECTIVE ACTION ALLEGATIONS

132.     As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiff and Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

133.     Although Defendants permitted and/or required Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty.  Defendants have also denied them full compensation at the federally mandated minimum wage rate.

134.     Class Members perform or have performed the same or similar work as Plaintiff. In particular, Plaintiff and Class Members all worked as exotic entertainers under the same conditions and subject to the same violations of the FLSA.

135.     Many Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

136.     Defendants have classified and continue to classify Class Members as independent contractors.

137.     Class Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

138.     As such, Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

139.     Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Class Members.

140.     The experiences of Plaintiff, with respect to their pay, are typical of the experiences of Class Members.

141.   The experiences of Plaintiff, with respect to their job duties, are typical of the experiences of Class Members.

142.   The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

143.   All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

144.   All Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

145.   Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a formula.   The claims of all Class Members arise from a common nucleus of facts.   Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

146.   The Plaintiff and the Class Members held the same job title: Dancers and/or Entertainers.

147.   The Defendants have classified all of its entertainers as independent contractors from June 10, 2011 to present.

148.   The individually named Defendants instituted, permitted, and/or required the policy and practice of classifying all exotic entertainers at Scarlett's Cabaret of Hallandale, Scarlett's of Fort Myers, and Scarlett's of Ybor Strip as independent contractors.

149.   The individually named Defendants instituted, permitted, and/or required the policy and practice of charging all exotic entertainers at Scarlett's Cabaret of Hallandale, Scarlett's of Fort Myers, and Scarlett's of Ybor Strip a house fee.

150.    The individually named Defendants instituted, created, and/or permitted the policy and practice of requiring all dancers and/or exotic entertainers at Scarlett's Cabaret of Hallandale, Scarlett's of Fort Myers, and Scarlett's of Ybor Strip to tip out staff including the DJ.

151.    As such, the class of similarly situated Plaintiff is properly defined as follows:

**Defendants' current and former exotic entertainers who worked at Scarlett's Cabaret, Scarlett's of Ybor Strip, and/or Scarlett's of Fort Myers at any time during the three years preceding the date this Complaint was filed up to the present.**

## IX.    DAMAGES SOUGHT

152.     Plaintiff and Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated minimum wage rate.

153.    Additionally, Plaintiff and Class Members are entitled to recover their unpaid overtime compensation.

154.    Plaintiff and Class Members are also entitled to all of the misappropriated funds, including all funds that were charged as fees and penalties, and all tips that were taken.  Without repayment of such fees, Plaintiff and Class Members will not have been paid minimum wage and overtime in accordance with the FLSA.

155.    Plaintiff and Class members are also entitled to an amount equal to all of their unpaid wages and fees as liquidated damages.  29 U.S.C. § 216(b).

156.    Plaintiff and FLSA Class Members are entitled to recover their attorney's fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

## X.    JURY DEMAND

157.    Plaintiff and Class Members hereby demand trial by jury.

## PRAYER

158.   For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

      a.      Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

      b.      All unpaid wages at the FLSA mandated minimum wage rate;

      c.      All misappropriated tips;

      d.      All misappropriated funds that were labeled as fees or otherwise;

      e.      An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under the FLSA;

      f.      Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

      g.      Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

Respectfully submitted,

/s/ Andrew Frisch
Andrew R. Frisch, Esquire
FL Bar No. 27777
Morgan & Morgan, P.A.
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Tel: (954) 318-0268
Fax: (954) 327-3013
E-mail: afrisch@forthepeople.com

Galvin B. Kennedy (will seek *pro hac vice* admission)
gkennedy@kennedyhodges.com
711 W. Alabama St.
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

Beatriz Sosa-Morris (will seek *pro hac vice* admission)
KENNEDY HODGES, LLP

711 W. Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile:  713-523-1116
Bsosamorris@kennedyhodges.com

ATTORNEY IN CHARGE FOR PLAINTIFF &
CLASS MEMBERS

# EXHIBIT A

## CONSENT TO BECOME A PARTY PLAINTIFF

Name: _Adonay Encarnacion_

1.      I consent and agree to pursue my claims of unpaid overtime and/or minimum wage through the lawsuit filed against my employer.

2.      I understand that this lawsuit is brought to recover unpaid wages under the Fair Labor Standards Act and/or any applicable state laws. I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3.      I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if the court approves. If someone else serves as the class representative, then I designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

4.      In the event the case is certified and then decertified, I authorize Plaintiffs' counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.

(Signature) _____        (Date Signed) _5/28/2014_

# EXHIBIT B

6/10/2014                                   Entertainer FAQ - Scarlett's Cabaret Hallandale



HOME    EVENTS    CLUB TOUR    BOOK A PARTY    DIRECTIONS    MENU    FAQ    🔍

r FAQ

## ENTERTAINERS: FREQUENTLY ASKED QUESTIONS

**Important Notice:** Scarlett's Cabaret is the nations leader in upscale adult entertainment. We hire only the most experienced and professional management team and staff members. We understand the value of our entertainers, thus you will be treated in the most professional and courteous manner. We will ensure that your transition to Scarlett's will be pleasant, positive, productive but most of all Profitable! Flexible schedules are now available.

Before calling or contacting us, please check below to make sure that your question or concern has not already been addressed by our FAQ. We've taken the time to provide answers to the most commonly asked questions that we receive about the club, our entertainers and promotions.

### 1: How do entertainers make money at Scarlett's?

**ANSWER:** Entertainers make tips on stage, $15 per song doing table side dances, $25 per song doing lap dances and $325 per hour doing champagne rooms.

### 2: How much entertainers make on average per night?

**ANSWER:** Different entertainers make different amounts. Every night there will be entertainers that make as little as $100 and as much as $1000 plus.

### 3: What shifts are available?

**ANSWER:** We have many shifts to accommodate everyone's schedule: Noon – 7 PM, 3 PM – 10 PM, 5 PM – 12 AM, 8 PM – 3 AM, and 10 PM – 5 PM. On the weekends when we're open later, we even have a 1 AM – 8 AM shift.

### 4: How much are dances?

**ANSWER:** Nude table-side dances are $15 each. Private lap-dances are $25 each.

### 5: How late are you open?

**ANSWER:** We are open until 5 AM Sun – Wed, 6 AM Thurs, and 8AM Fri and Sat.

### 6: How many entertainers work on an average night?

**ANSWER:** It depends on the day and shift. In general, there are between 30 and 80 girls working at a time.

### 7: How much are house fees?

**ANSWER:** They range from $25 - $45 depending on the day and shift.

### 8: Is Scarlett's a full liquor bar?

**ANSWER:** Yes, we have a wide variety of premium liquors, cognac's wines, and champagnes as well as domestic and imported beers.We also offer Liquor bottle service and champagne bottle service.

### 9: Does Scarlett's have a happy hour?

**ANSWER:** Yes, Mon-Fri from 12PM-8PM all drinks and VIP Rooms are ½ price.

---

### SEARCH SCARLETT'S CABARET

**Search**

### Download the APP



### FOOD AND BOTTLE MENU

LUNCH MENU
NIGHT MENU
Bottle Menu

### JOIN OUR NEWSLETTER

Sign up to receive invites to VIP only parties. This includes invites to all our OPEN bar parties!

* Email

* First Name

Last Name

Cell Phone

* = Required Field

Submit

### GET DIRECTIONS TO SCARLETT'S

From:  Enter your starting point here
To:    2920 SW 30th Avenue F ▾   Go

6/10/2014                                    Entertainer FAQ - Scarlett's Cabaret Hallandale

### 10: Am I responsible for any other fees in addition to house fee?

**ANSWER:** Yes, you will need to tip out the staff and DJ. The amount depends on the shift and the day but it is a flat rate per person, not a percentage of what you make.

### 11: How do the stages run?

**ANSWER:** Stage sets are 2 songs; first song topless, second song nude. Songs are around 3 minutes.

### 12: What is the clientele like?

**ANSWER:** It is a mix of older, affluent men and young professionals. The club is centrally located right off I-95, between Ft Lauderdale and Miami so it draws business travelers, tourists, and locals alike.

### 13: How do I get hired?

**ANSWER:** Start with an audition. You can come in for an audition during our normal business hours without an appointment. Make sure to bring proper dancing attire and identification.

### 14: Do you hire girls with no experience as entertainers?

**ANSWER:** Absolutely! Scarlett's has an extensive orientation program that can teach you everything you need to know.

### 15: How old do I need to be?

**ANSWER:** You must be 18 years old to work as an entertainer.

### 16: Do I need any sort of adult entertainer permit to work at Scarlett's?

**ANSWER:** No, our area does not require any form of formal registration or permit.

### 17: Is there a dress code?

**ANSWER:** Yes and no ... Sunday – Wednesday you can wear a 2-piece or a 1-piece outfit of virtually any style and length. Thursday you need a 1-piece dress of any length. Friday and Saturday after 7 PM, you need a 1-piece dress at or past your knees. Don't worry if you don't have the proper attire, our house mom's sell dresses in our dressing room.

Gadgets powered by Google

### RECEIVE TXT/SMS UPDATES

Thank you for signing up to receive our text messages. Scarlett's sends an average of 6 text messages a month! Don't miss out on invites to VIP and Open Bar parties! You can opt out anytime by replying STOP to any of our messages!

Name:

Last Name:

Mobile:

Sign Up to Receive Invites To All Our Events
☑ Events Sign Up

Msg&Data rates may apply. Reply STOP to cancel. T&C - Terms - Privacy Policy

Reset   Submit

---

Home   Events   Specials   Club Tour   Entertainers   Book A Party   VIP Members   FAQ   Site Map

**VIP Party Information**



**Download Our iPhone App**



**Download Our Android App**



CLUB LOCATION

2920 SW 30th Avenue
Hallandale, FL 33009
info@scarlettscabaret.com
Club Phone: (954)455-8310
Corporate Phone: (954)923-2110

All content is © 2014 Scarlett's Cabaret, Hallandale Beach, FL

6/10/2014                                    Entertainer FAQ | Scarlett's Cabaret Fort Myers



**HOME   EVENTS   CLUB TOUR   BOOK A PARTY   VIP MEMBERS ENTERTAINERS   FAQ**

Scarlett's Cabaret Fort Myers \ FAQ \ Entertainer FAQ

## Entertainer FAQ

### HOW OLD DO I NEED TO BE TO BE AN ENTERTAINER?

You must be 18 years old to work at Scarlett's.

### HOW DO I GET HIRED?

You may apply online, or in person any day between noon and 5PM. Be sure to bring ID and dancing attire. If applying online, please attach photos.

### HOW DO ENTERTAINERS MAKE MONEY AT SCARLETT'S?

Entertainers make tips on stage, $20 per song for lap dances, and $150 per half hour doing champagne rooms.

### HOW MUCH ARE HOUSE FEES?

They range from $30 to $50 depending on the day and shift.

### AM I RESPONSIBLE FOR ANY OTHER FEES OTHER THAN HOUSE FEES?

Yes. DJ tipout is $10 minimum, or 10% of your tips, whichever is greater. Tipping all other staff members is optional, but encouraged.

### HOW MUCH DO ENTERTAINERS MAKE ON AN AVERAGE SHIFT?

This varies from entertainer to entertainer. Some make as little as $100, others make as much as $1000 or more.

### WHAT ARE THE HOURS?

Dayshift is from 11AM to 7PM, nightshift is from 7PM to 2AM.

### DO I NEED ANY SORT OF ADULT ENTERTAINMENT PERMIT TO WORK AT SCARLETT'S FORT MYERS?

Yes, to work at Scarlett's Fort Myers, you need to get an adult entertainer's license from

---

### EMAIL THE OWNER

Have Questions? Concerns? A Comment? Click Here to Email the Owner Directly

### DIRECTIONS

View Larger Map

DRIVING DIRECTIONS

| | From | |
|---|---|---|
| | To | 3650 Fowler Street For |

Get Directions

Google                    Gadgets powered by Google

### Archives

Select Month  ▼

---

the Fort Myers Police Department.

## WHAT IS THE CLIENTELE LIKE?

The majority of our customers are gentlemen of means, including young professionals, business travelers, and local affluent men.

## DO YOU HIRE GIRLS WITH NO EXPERIENCE AS ENTERTAINERS?

Yes, absolutely, although experience is a plus, it is definitely not required. We have a detailed orientation program, as well as a pole dance class on Sunday mornings.

APRIL 28, 2014   Posted by ADMIN in SPECIAL EVENTS

## Facebook Friend And Fan Appreciation Party !!

THIS WEDNESDAY APRIL 30th – 7pm-2am !! Facebook Friend and Fan Appreciation Party !!

Mention you're a friend or fan on Facebook and you'll get FREE FOOD and Drink Specials –

$5 Tullamore Dew Drinks
$5 Azunia Tequila Drinks
$5 Malibu Sparkling Drinks
and
$100 Bottles On Each!! (while supplies last)

Wednesday is also Scarlett's Goes WILD night – The biggest night of the week so reservations are strongly recommended! Call 239-936-2375 NOW and get your spot reserved !

# EXHIBIT C

