UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:14-61927-CIV-DIMITROULEAS

ADONAY ENCARNACION,
Individually, and on Behalf of All Others
Similarly Situated,

        Plaintiff,

v.

J.W. LEE, INC., D/B/A SCARLETT'S CABARET
D/B/A SCARLETT'S OF HALLANDALE, FL;
J.W. LEE PROPERTIES, LLC; YBOR
OPERATIONS, L.C. D/B/A/ SCARLETT'S OF YBOR
STRIP; BZLY, INC.; M.S.B. LAND HOLDINGS, INC.;
SVC JOINT VENTURES LLC; BENORE VENTURES,
INC.; SB PRODUCTIONS, INC.; BRANDON
SAMUELS, individually, JOHN BLANKE, individually,
WILLIAM BEASLEY,

        Defendants.
_____/

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS STATE LAW CLAIMS AND SUPPORTING MEMORANDUM OF LAW

Pursuant to the Federal Arbitration Act, U.S.C. §§ 1 *et seq.* (the "FAA"), and Fed. R. Civ. P. 12(b), Defendants J.W. Lee, Inc., D/B/A Scarlett's Cabaret D/B/A Scarlett's of Hallandale, FL ("Scarlett's of Hallandale), J.W. Lee Properties, LLC, Ybor Operations, L.C. D/B/A Scarlett's of Ybor Strip, BZLY, Inc., M.S.B. Land Holdings, Inc., SVC Joint Ventures LLC, Benore Ventures, Inc., SB Productions, Inc., Brandon Samuels, John Blanke and William Beasley (collectively "Defendants") respectfully move this Court to compel the named Plaintiff, Adonay Encarnacion, along with additional opt-in plaintiffs Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, and Rachel Stephenson, to submit to arbitration all claims alleged in the Complaint, as they have contractually agreed to do. For Andrea Wong, the single opt-in

plaintiff who does not have an arbitration agreement, Defendants move to dismiss her claims under Article X, Section 24 of the Florida Constitution (Count III) for failure to comply with statutory conditions precedent. In support of their motion, Defendants state:

## I. INTRODUCTION

Encarnacion, on behalf of a putative class of exotic dancers, sues Defendants for violating federal and Florida minimum wage and overtime requirements, claiming that Defendants wrongly classified her and the other entertainers as independent contractors when they were really employees. However, Encarnacion's Amended Complaint ignores her Lease Agreement with Scarlett's of Hallandale, which expressly provides for Encarnacion's compensation and independent contractor status, and unequivocally requires her to arbitrate all disputes arising under the agreement or between the parties. Opt-in plaintiffs Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, and Rachel Stephenson likewise contractually agreed to arbitrate the claims alleged in the Amended Complaint. Accordingly, the Federal Arbitration Act requires this Court to stay their claims and to compel arbitration.

Moreover, the one remaining opt-in plaintiff, Andrea Wong, cannot pursue her Florida minimum wage claims because she failed to provide the statutorily-required notice. Under Florida law, an employee cannot sue to recover for minimum wage violations unless she first notifies her employer of the alleged violation and provides an opportunity to cure. Neither Wong nor any other plaintiff provided the proper notice. Accordingly, Wong's state law claims must be dismissed.

## II. PERTINENT BACKGROUND

**A.     The Amended Complaint**

Encarnacion and each member of the putative plaintiff class are or were exotic dancers at Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip or Scarlett's of Fort Myers.[1]  *See* Amended Complaint [ECF No. 12]. at ¶¶ 3, 7, 13.  Encarnacion, who danced at Scarlett's Cabaret in Hallandale, *id.* at ¶ 91, purports to sue the Scarlett's establishments, their alleged owners and managers (Brandon Samuels, John Blanke and William Beasley), and several additional entities that allegedly collectively "operate" the Scarlett's clubs.  She claims that the defendants violated the Fair Labor Standards Act ("FLSA") and Article X, Section 24 of the Florida Constitution by misclassifying her and the putative Plaintiff class of other entertainers as independent contractors instead of employees.  *See* Amended Complaint [ECF No. 12] at ¶ 83, 105, 107, 120, 123.  The Amended Complaint alleges that Defendants failed to pay appropriate overtime, to keep adequate records and to pay the appropriate minimum wage.  *Id.* at ¶¶ 120, 123-25.  Encarnacion seeks as damages compensation for the hours she worked that were not paid at the federal and Florida minimum wage rate, overtime compensation and tips retained by Scarlett's.  *Id.* at ¶¶ 167-69.

After Encarnacion's initial Complaint was filed, six other alleged current or former Scarlett's exotic dancers filed notices of consent to join Encarnacion's action:  Andrea Wong [ECF No. 5], Marissa Gall [ECF No. 6], Patricia Kugmeh [ECF No. 7], Rachel Stephenson [ECF No. 8], Roberta Inserra [ECF No. 27], and Valeria Casillas [ECF No. 28].[2]

---

[1] However, the independent entity that owns and operates Scarlett's of Fort Myers has not been named as a party defendant or served with the Complaint.  Therefore, this Motion is not filed on that entity's behalf and does not constitute consent to jurisdiction over that entity.

[2] Additionally, on February 4, 2015, plaintiffs filed a Notice of Entry of Parties Listed [ECF No. 30], which requested addition of Linda Chavez to the docket as a party plaintiff.  However,

**B.     Encarnacion's Lease Agreements With Scarlett's**

The business relationship between Encarnacion and Scarlett's is set forth in a "Performer License and Temporary Space Lease Agreement".  *See generally* Ex. A (Performer License and Temporary Space Lease Agreement between Plaintiff and J.W. Lee, Inc. d/b/a Scarletts) (the "Encarnacion Agreement").  The Agreement memorializes in their entirety the terms and conditions governing any business relationship between Encarnacion and Defendants.  *Id.* at 5 ("This Agreement constitutes the entire understanding of the parties").

Despite Encarnacion's bald allegation that Defendants misclassified her as an independent contractor, Encarnacion herself chose to be a "licensee" and "lessee" of Scarlett's -- not an employee -- and agreed that her compensation was contingent upon that status:  "[T]he relationship of the parties hereto is that of The Club as "Licensor" and "Lessor" and Performer is a Licensee and Temporary Space Lessee and is not an employee/employer relationship.  Nothing in this Agreement shall be construed so as to create an employee/employer relationship." *Id.* at §§ 6 and 9; Ex. B (Encarnacion's "Performer Relationship Selection Agreement").  Encarnacion's Agreement further provides that if the relationship between the parties was that of employer and employee, Scarlett's would be required to collect and retain certain fees, such that any judicial determination of that relationship would require Plaintiff to reimburse Scarlett's for all performance fees received.  Ex. A (Encarnacion Agreement) at § 9.

---

Chavez has never filed a consent to join this lawsuit.  Therefore, she is not a proper plaintiff and should not be considered by the Court.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action [under the Fair Labor Standards Act] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1016-17 (11th Cir. 2007).  To the extent the Court considers Chavez as a plaintiff, her claims are subject to the same defenses discussed below.

The Encarnacion Agreement contains a clearly-identified, broad provision that requires every dispute arising under the Agreement and at any time during the relationship between the contracting parties to be arbitrated:

> ARBITRATION
> The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, applicable retroactively, for the specific dates of the entirety of the relationship between the parties hereto, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association, FLORIDA branch, and the determination of the arbitrator shall be the final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). . . .
> THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.
>
> \*   \*   \*
>
> PERFORMER UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME PERFORMER IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF PERFORMER SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

*Id.* at § 16 (emphasis in original).

C.  **Opt-In Plaintiffs' Lease Agreements With Scarlett's**

With the exception of Andrea Wong, all of the opt-in Plaintiffs have agreed to arbitration provisions identical or similar to Encarnacion's.

Marissa Gall signed an identical License and Temporary Space Lease with Scarlett's of Hallandale. A copy of that Agreement, along with Gall's Performer Relationship Selection Agreement, is attached hereto as Exhibit C.

Patricia Kugmeh, Rachel Stephenson, Roberta Inserra, and Valeria Casillas each signed a Dancer Performer Lease with Scarlett's of Hallandale that, like the Encarnacion Agreement, contains elections of lessee (not employee) status, provides for corresponding compensation and requires arbitration. *See* Exhibit D (Kugmeh's Dancer Performance Lease) at ¶ 21; Exhibit E (Stephenson's Dancer Performance Lease) at ¶ 21; Exhibit F (Inserra's Dancer Performance Lease) at ¶ 21; Exhibit G (Casillas's Dancer Performance Lease) at ¶ 21 (the "Agreement"). Like Encarnacion, Kugmeh, Stephenson, Inserra, and Casillas each elected to be "independent professional entertainers" rather than employees and to be compensated as such. *See, e.g.*, Exs. D-G at ¶ 12 ("THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM . . . . ENTERTAINER UNDERSTANDS THAT THE CLUB WILL NOT PROVIDE TO HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.") (Emphasis in original.)

The Kugmeh, Stephenson, Inserra and Casillas Agreements provide for binding arbitration of all disputes arising from the entertainers' Agreements and performance at Scarlett's:

> EXCEPT FOR ANY ADMINISTRATIVE PROCEEDINGS THAT ARE NOT LEGALLY BARRED BY THIS PARAGRAPH, ANY CONTROVERSY, DISPUTE OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AT THE CLUB, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT . . . . THE PARTIES WAIVE ANY RIGHT TO LIGITATE SUCH CLAIMS IN A COURT OF LAW.

*See* Exhibit D (Kugmeh's Dancer Performance Lease) at ¶ 21(A); Exhibit E (Stephenson's Dancer Performance Lease) at ¶ 21(A); Exhibit F (Inserra's Dancer Performance Lease) at ¶ 21(A); Exhibit G (Casillas's Dancer Performance Lease) at ¶ 21(A) (emphasis in originals).

6

Kugmeh, Stephenson, Inserra and Casilla's Agreements also require those entertainers to pay prevailing party attorneys' fees if Defendants are forced to compel arbitration, as they are here:

> IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIAL PROCEEDINGS TO ENFORCE, THE ARBITRATION REQIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES."

Exs. D-G at ¶ 21(C).

### III. ARGUMENT

**A.  The Court Should Compel Encarnacion, Casillas, Gall, Inserra, Kugmeh and Stephenson to Arbitrate Their Claims.**

The Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The goal of the FAA is to ensure judicial enforcement of privately made agreements to arbitrate, creating a presumption of arbitrability. *Sean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*, 460 U.S. 1, 22 (1983); *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003). Accordingly, courts must rigorously enforce arbitration agreements on their terms, "even if the result is 'piecemeal' litigation." *Dean Witter Reynolds*, 470 U.S. at 221; *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). "[A]ny doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25.

A party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). In considering a

7

motion to compel arbitration, the court must consider: (1) the existence of a valid agreement to arbitrate, (2) the existence of arbitrable issues, and (3) whether the right to arbitration has been waived.  *Betancourt v. Green Tree Servicing, LLC*, No. 8:13–cv–2759–T–30AEP, 2013 WL 6644560, at *1 (M.D. Fla. 2013).  "The scope, validity, and enforceability of arbitration agreements . . . is governed by state contract law." *Physician Consortium Servs. v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242 (11th Cir. 2011).  "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  "The FAA leaves no place for the exercise of discretion by a court but, instead, mandates that courts direct parties to arbitrate issues as to which an arbitration agreement has been signed."  *Hamlett v. Owners Advantage, LLC*, 2013 WL 4711165, at *2 (S.D. Fla. Aug. 30, 2013) (*citing Dean Witter Reynolds, Inc.*, 470 U.S. at 218).

      1.      **The Parties Entered Into a Valid Agreement To Arbitrate.**

The Plaintiffs agreed in writing to arbitrate.  The FAA applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such transaction . . . ."  9 U.S.C. § 2.  Here, the attached Agreements clearly constitute such written arbitration agreements between Encarnacion or an opt-in plaintiff and Scarlett's of Hallandale, executed by each plaintiff, to arbitrate all disputes under the Agreements and arising from the dancers' performance at Scarlett's.[3]

---

[3] Plaintiffs allege that the Defendants collectively "operate" the Scarlett's establishments as "an enterprise".  *See* ECF No. 12 at ¶¶ 2-4, 27-37, 73.  Accordingly, Plaintiffs' claims against the other Defendants, though non-signatories to the Agreement, are also subject to arbitration.  *See Armas v. Prudential Securities, Inc.*, 842 So. 2d 210, 211–12 (2003) ("Non-signatories can also compel arbitration . . . when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract.") (internal citations omitted); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S.

B.      **Arbitrable Issues Exist**

The arbitration agreements clearly encompass Plaintiffs' claims.  When determining the scope of an arbitration provision, "the Court looks to the factual allegations of the complaint and determines whether the claims alleged therein touch and concern matters covered by the arbitration provisions."  *Hamlett*, 2013 WL 4711165, at *3 (*citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).  "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Undoubtedly, Plaintiffs' current FLSA and Florida claims (that they are employees entitled to minimum wage and overtime compensation) fall squarely within the scope of the arbitration provisions.  The Encarnacion Agreement arbitration provision (which Gall also signed) covers "any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties."  The arbitration provision in the Kugmeh, Stephenson, Inserra and Casillas Agreements provide covers all disputes arising from the entertainers' Agreements and performance at Scarlett's.  All Agreements include the parties' understanding that the exotic dancer plaintiffs are not employees and that they are entitled to specified compensation as licensees/lessees.  *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (concluding that agreement between the parties to arbitrate "any dispute between them or claim by either against the other" as covering statutory claims,

---

624, 629–31 (2009) (finding non-signatories may enforce arbitration provisions where state contract law permits them to enforce contracts).  Additionally, Brandon Samuels may enforce the Agreements as agents of Scarlett's.  *See Hamlett*, 2013 WL 4711165 at n.3 (finding that agent of a signatory to arbitration agreement may enforce the agreement).

including the plaintiff's Title VII claim); *Hamlett*, 2013 WL 4711165 at *3 (finding that agreement to arbitrate disputes "arising out of" parties' severance agreement, which contained agreement that plaintiff had been paid all compensation owed, covered plaintiff's FLSA claim for overtime compensation); *Sammons v. Sonic-North-Cadillac, Inc.*, 2007 WL 2298032, *3 (M.D. Fla. Aug. 7, 2007) (finding that agreement to arbitrate "any claim, dispute, and/or controversy . . . related to . . . [plaintiff's] employment" covered plaintiff's FLSA claim for overtime compensation).

### C. Defendants Have Not Waived Their Right To Arbitrate.

Defendants have not waived their right to arbitrate. A party may only be deemed to have waived its right to arbitrate when it "substantially invokes the judicial process to the detriment or prejudice of the other party." *Hamlett*, 2013 WL 4711165 at *3 (*quoting Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990)). *See also S & H Contractors, Inc. v. A.J. Taft Coal, Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (finding that party waives its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right and in so acting has in some way prejudiced the other party). This Motion is the first substantive act the Defendants are taking in this matter. *See Hamlett*, 2013 WL 4711165 at *4 (finding there was no evidence of waiver where Defendants filed a motion to dismiss and did not participate in the litigation process). Moreover, there can be no contention of prejudice, as Plaintiffs have not engaged in litigation other than to file their Complaint. Accordingly, this last prong is satisfied and the Court should compel arbitration of Encarnacion, Gall, Kugmeh, Stephenson, Inserra and Casillas's claims.

**B.     The Court Should Dismiss Wong's State Law Claims For Failure To Comply With Statutory Conditions Precedent.**

Andrea Wong's Florida constitutional claims must be dismissed because Wong failed to comply with Florida's Minimum Wage Act, the exclusive state law remedy for violations of Florida's constitutional minimum wage provisions.[4]  Under the Minimum Wage Act, Wong (along with the other Plaintiffs) was required to notify Scarlett's of the alleged failure to comply with the statute before filing suit:

> [P]rior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

Fla. Stat. § 448.110(6)(a).  The Minimum Wage Act gives employers 15 calendar days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved.  Fla. Stat. § 448.110(6)(b).  Only "if the employer fails to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved, then the person aggrieved may bring a claim for unpaid minimum wages, the terms of which must be consistent with the contents of the notice." *Id.*

Wong never fulfilled the mandatory notice requirement.  As evidenced by the notices attached as Exhibit B to the Amended Complaint [ECF No. 12], Plaintiffs' counsel solely notified Defendants of Encarnacion's anticipated state law claim, along with those of the putative class generally, representing that this matter could only be resolved by payment of the full estimated class damages plus provision of "relevant pay and time records for each putative class member, so that we may confirm that this is indeed adequate pay for the unpaid minimum wages

---

[4] Likewise, if the Court does not compel arbitration as to any plaintiff other than Wong, that Plaintiff's state law claims must be dismissed for the same reason.

owed."  Such notice failed to conform to the Florida statute because it did not sufficiently identify any plaintiff other than Encarnacion, let alone that plaintiff's actual or estimated work dates or hours; did not permit Defendants to "cure" the deficiency by paying the estimated amount due any plaintiff, including Encarnacion; and purported to impose additional conditions (the tender of pay and time records) not permitted by statute.  *See Johnson v. Nobu Assoc. South Beach, LP*, 2011 WL 780028, at *3 (S.D. Fla. Feb. 4, 2011) (recommending dismissal for failure to comply with pre-suit notice requirement where "plaintiffs' pre-suit notice violated the terms of the pre-suit notice requirement by demanding more than the statute permits"), *adopted by* 2011 WL 772874 (S.D. Fla. Feb. 11, 2011) (noting that "permitting counsel to inflate the notice of deficiency would . . . undercut the statutory intent of the Florida Minimum Wage Act").

Consequently, Wong's Florida constitutional claim must be dismissed.  *See id.* (rejecting argument that it is impractical to require each member of putative class to serve notice and finding that claims of opt-in plaintiffs who failed to provide required statutory notice should be dismissed); *see also Nichols v. Lab. Corp. of Am.*, 2014 WL 820656 at *4-5 (M.D. Fla. March 3, 2014) (rejecting plaintiff's argument that statutory notice requirement is unconstitutional and holding that "because Plaintiff has not alleged compliance with the FMWA's pre-suit notice requirement in her Complaint, Plaintiff's minimum wage claim under Fla. Const. art. X, § 24 [] is dismissed . . . ."); *Villafana v. Feeding South Florida, Inc.*, 2013 WL 264729, at *5 (S.D. Fla. June 12, 2013) (Cohn, J.) (dismissing plaintiff's claim when Complaint did not show compliance with statutory notice requirement); *Dominguez v. Design By Nature Corp.*, 2008 WL 4426721 at *2 (S.D. Fla. Sept. 25, 2008)(O'Sullivan, J.) (rejecting plaintiff's argument that statutory notice requirement was unconstitutional, holding that "[s]ince the plaintiff has not complied with the notice requirement in the instant case, he has failed to state a claim under Florida's Minimum

Wage Act" and dismissing plaintiff's state law claims); *Resnick v. Oppenheimr & Co., Inc.*, 2008 WL 11364, at *1-3 (rejecting constitutional challenge and finding that any claim brought under Florida Constitution article X, § 24 must comply with the statutory pre-suit notice requirements).

## IV. CONCLUSION AND RELIEF REQUESTED

Wherefore, for the foregoing reasons, Defendants request this Court's entry of its Order staying Encarnacion, Gall, Kugmeh, Stephenson, Inserra and Casilla's claims and compelling them to arbitrate in compliance with their Agreements, awarding Defendants their reasonable attorney's fees incurred in enforcing Kugmeh, Stephenson, Inserra and Casilla's arbitration agreements, dismissing Wong's Florida minimum wage claims, and for such other relief as the Court deems proper.

/s/ Benjamin E. Olive
Benjamin E. Olive, Esq.
Florida Bar No.: 387983
bolive@hojlaw.com
Helaina Bardunias, Esq.
Florida Bar No.: 565431
hbardunias@hojlaw.com
HACKLEMAN, OLIVE, & JUDD, P.A.
2426 East Las Olas Boulevard
Fort Lauderdale, FL  33301
Tel:  954-334-2250
Fax: 954-334-2259
*Attorneys for Defendants*

### Certificate of Good Faith Conference

Pursuant to Local Rule 7.1(a)(3), counsel for Defendants conferred with counsel for Plaintiffs, who does not agree to the relief sought in this motion.

/s/ Benjamin E. Olive
Benjamin E. Olive, Esq.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 4, 2015, I filed the foregoing through CM/ECF, which will send a copy to all counsel of record.

/s/ Benjamin E. Olive_____
Benjamin E. Olive, Esq.
