# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| ADONAY ENCARNACION, Individually, and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 14-61927 |
| J.W. LEE, INC., D/B/A SCARLETT'S CABARET D/B/A SCARLETT'S OF HALLANDALE, FL; J.W. LEE PROPERTIES, LLC; YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP;  BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; J.B. MONROE, INC., BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY, | § § § § § § § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | | |

## PLAINTIFF'S SECOND AMENDED CLASS/COLLECTIVE ACTION COMPLAINT

### I.    SUMMARY

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees.  29 U.S.C. §§ 206, 207.  These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees.  *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

1.      This case implicates a chain of adult entertainment clubs which go by the trade name of "Scarlett's."  The entities and employers implicated are, J.W. Lee Inc. d/b/a Scarlett's Cabaret, J.W. Lee Properties, LLC, YBOR Operations, L.C. d/b/a Scarlett's of Ybor Strip, BZLY, Inc. M.S.B. Land Holdings, Inc., SVC Joint Ventures LLC, BENORE Ventures, Inc., SB Productions, Inc., J.B. Monroe, Inc. d/b/a Scarlett's of Toledo, Brandon Samuels, John Blanke, and William Beasley ("Defendants").

2.      Defendants have a longstanding policy of misclassifying their employees as independent contractors.

3.      Defendants required and/or permitted Plaintiff Adonay Encarnacion ("Plaintiff") to work as exotic "entertainers" and/or dancers at their adult entertainment club in excess of forty (40) hours per week, but refused to compensate them at the applicable minimum wage and overtime rate.   In fact, Defendants refused to compensate Plaintiff at all for the hours she worked.  Plaintiff's only compensation was in the form of tips from club patrons.

4.      Defendants' conduct violates the FLSA, which requires non-exempt employees, such as Plaintiff, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay.  *See* 29 U.S.C. § 207(a).

5.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision as does Defendants' practice of siphoning away those tips to distribute to non-tip eligible employees.  *See* 29 U.S.C. §§ 203, 206.

6.      Plaintiff brings a collective action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked at Scarlett's Cabaret of Hallendale, Scarlett's of Ybor Strip, and/or Scarlett's of Toledo, at any time during the three year period before this Complaint was filed up to the present ("Class Members").

These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

7.      Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former "entertainer" employees of the Defendants who worked in Florida, pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for hours/weeks of work for which they did not receive at least the Florida minimum wage, in violation of Article X, Section 24 of the Florida Constitution ("Florida Minimum Wage Claims").

8.      Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former tipped employees of the Defendants who worked in Ohio, pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for work for which they did not receive proper minimum wages and overtime premium pay as required by the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. Chapter 4111.01, et seq. and Article II, Section 34(a) of the Ohio Constitution.

## II.      SUBJECT MATTER JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10.     This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

11.     This Court has jurisdiction over the Florida Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff's FLSA claims are the same acts and omissions that give rise to Plaintiff's Florida Minimum Wage Claims.

12.     This Court has jurisdiction over the Ohio Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff's FLSA claims are the same acts and omissions that give rise to Plaintiff's Ohio Minimum Wage Claims.

13.     Venue is proper in the Southern District of Florida because a substantial portion of the events forming the basis of this suit occurred in this District, and the Florida Defendants' headquarters is located in this District.  In particular, the Florida Defendants' headquarters are located at 3040 SW 30th Ave. Pembroke Park, Florida 33009.  Also, Plaintiff worked at Defendants' club, located at 2920 SW 30th Ave. Hallandale Beach, Florida 33009 over extended periods of time.

### III.     PARTIES AND PERSONAL JURISDICTION

14.     Plaintiff Adonay Encarnacion is an individual residing in Miami-Dade County, Florida.  Plaintiff's written consent was previously filed.

15.     The FLSA Class Members are all of Defendants' current and former exotic entertainers who worked at any of the Scarlett's chain of clubs located in Florida including, Scarlett's Cabaret located in Hallandale, Florida, Scarlett's of Ybor Strip located in Tampa, Florida, and Scarlett's of Toledo located in Toledo, Ohio at any time during the three years prior to the filing of this Complaint up to the present.

16.     The Florida Class Members are all of Defendants' current and former exotic entertainers who worked at Scarlett's Cabaret of Hallandale, and Scarlett's of Ybor Strip at any time during the five (5) years before this Complaint was filed up to the present.

17.     The Ohio Class Members are all of Defendants' current and former exotic entertainers who worked at Scarlett's Toledo at any time during the three (3) years before this Complaint was filed up to the present.

18.     Defendant J.W. Lee, Inc. d/b/a Scarlett's Cabaret d/b/a Scarlett's of Hallandale, FL is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a resident of Florida. This Defendant has already been served.

19.     Defendant J.W. Lee Properties, LLC is a domestic limited liability company doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a resident of Florida.    This Defendant has already been served.

20.     Defendant Ybor Operations, L.C. d/b/a Scarlett's of Ybor Strip is a domestic limited company doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a resident of Florida.   This Defendant has already been served.

21.     Defendant BZLY, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit.   This Court has personal jurisdiction over this Defendant because it is a resident of Florida.   This Defendant has already been served.

22.     Defendant M.S.B. Land Holdings, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a resident of Florida.   This Defendant has already been served.

23.     Defendant SVC Joint Ventures, LLC is a domestic limited liability company doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a resident of Florida.   This Defendant has already been served.

24.     Defendant Benore Ventures, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a resident of Florida.   This Defendant has already been served.

25.     Defendant SB Productions, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a resident of Florida.   This Defendant has already been served.

26.     Defendant J.B. Monroe, Inc., is a Corporation organized under the laws of Ohio. Service of process on this defendant may be effectuated by service on its registered agent Ryan Kempt at 5765 Telegraph Rd., Toledo, OH 43612.

27.     Defendant Brandon Samuels is an individual residing in Florida.  This Defendant has already been served. This Court has personal jurisdiction over this Defendant because he is a resident of Florida.

28.     Defendant John Blanke is an individual residing in Florida.  This Defendant has already been served. This Court has personal jurisdiction over this Defendant because he is a resident of Florida.

29.     Defendant William M. Beasley is an individual residing in Florida.   This Defendant has already been served.  This Court has personal jurisdiction over this Defendant because he is a resident of Florida.

30.     Upon information and belief, the corporate Defendants are affiliated corporate entities under common ownership and control and are related organizations through, for example, common membership, governing bodies, trustees, and/or officers and benefit plans.

31.     Furthermore, upon information and belief, at all times, the wage and hour policies, as well as all related employee compensation policies, of the affiliated corporate

Defendants under common ownership and control are and were centrally and collectively dictated, controlled, and ratified.

32.   This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privileges of conducting activities in the state of Florida and established minimum contacts sufficient to confer jurisdiction over said Defendants, and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

33.   Defendants have and continue to have continuous and systematic contacts with the state of Florida sufficient to establish general jurisdiction over them.  Specifically, Defendants conduct and/or conducted business in Florida by operating clubs all under the same name and for the same business purpose throughout Florida.

9.   Defendants employ workers and contract with residents and businesses in Florida. Defendants also advertise and own property in Florida.

10.   This cause of action arose from or relates to the contacts of Defendants with Florida residents, thereby conferring specific jurisdiction over Defendants.

## IV.   FLSA COVERAGE

34.   In an FLSA case, the following elements must be met.   "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages."  *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

## EMPLOYMENT RELATIONSHIP

35.   "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an

employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id*. (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id*. (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id*.

36.      Here, Defendants had the power to hire and fire Plaintiff and class members. Defendants hold an audition for entertainers looking to be hired at the club. Defendants ask that the entertainers "bring proper dancing attire" to the auditions or submit a picture if applying online. *See* Exhibit A (Entertainer FAQ from Scarlett's Hallandale).

37.      Defendants controlled Plaintiff's work schedule. Defendants scheduled Plaintiff and other entertainers to certain shifts. *See* Exhibit A.

38.      Defendants required Plaintiff and other entertainers to work a certain number of days during the week.

39.      Defendants provided training, if needed, through an orientation program that taught the entertainers "everything [they] need to know." *See* Exhibit A.

40.      Defendants required Plaintiff and other dancers to wear certain clothing on certain days of the week.

41.      Defendants required Plaintiff and other dancers to sell certain promotional items including items such as t-shirts bearing the Defendants' logo.

42.      Defendants determined the rate and the method of payment of all dancers including Plaintiff. Defendants set the price for their customers to pay dancers for "side table dances" and "song lap dances." *See* Exhibit A. Further, Defendants set a price for their customers to pay entertainers for champagne room dances.

43.      Additionally, Defendants required Plaintiff and all other entertainers to pay "house fees" depending on the day and shift the dancer was working. Plaintiff and all other

entertainers had to tip out certain employees at the end of their shift including but not limited to the DJ, the House Mom, wait staff, floor men, valet, security, and managers.   *See* Exhibit A.

44.     Entertainers are an integral part of Defendants' strip clubs.

45.     Plaintiff's and all other entertainers' job duties consisted of dancing in designated areas and performing dances for Defendants' customers at the club.   These job duties require little to no skill. [1]

46.     Defendants maintained some records regarding the time Plaintiff and all other entertainers arrived and left the club.

47.     At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

48.     Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).

49.     The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation.   *See id*.; *Reich v. Circle C. Investments, Inc*., 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 971-72 (5th Cir. 1984).

---

[1] *See, Freund v. Hi-Tech Satellite, Inc.,* 185 Fed. Appx. 782, 783 (11th Cir. 2006) ([C]ourts must determine whether, as a matter of economic realit[y], an individual is an employee or an independent contractor in business for himself. Several factors guide this inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business.") (internal citations omitted); *see also*, *Clincy v. Galardi S. Enterprises, Inc.,* 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011) (applying economic reality test and finding exotic dancers were employees not independent contractors).

50.     Defendant Brandon Samuels is the President and manager of Benore Ventures, Inc.

51.     Defendant Brandon Samuels is the President and manager of J.W. Lee, Inc.

52.     Defendant Brandon Samuels is the manager of J.W. Lee Properties, LLC.

53.     Defendant Brandon Samuels is the manager of Ybor Operations, L.C.

54.     Defendant Brandon Samuels is the President and manager of M.S.B. Land Holdings, Inc.

55.     Defendant Brandon Samuels is the manager of SVC Joint Ventures, LLC.

56.     Defendant Brandon Samuels is the President and manager of SB Productions, Inc.

57.     Defendant John Blanke is the President and Director of Defendant BZLY, Inc.

58.     Defendant John Blanke is the manager of Ybor Operations, L.C.

59.     Defendant John Blanke is the Vice President and director of Benore Ventures, Inc.

60.     Defendant John Blanke is the director of J.W. Lee, Inc.

61.     Defendant John Blanke is the manager of J.W. Lee Properties, LLC.

62.     Defendant John Blanke is the manager of Ybor Operations, L.C.

63.     Defendant John Blanke is the Vice President and director of M.S.B. Land Holdings, Inc.

64.     Defendant John Blanke is the manager of SVC Joint Ventures, LLC.

65.     Defendant John Blanke is the Vice President and director of SB Productions, Inc.

66.     Defendant John Blanke is the incorporator of J.B. Monroe, Inc.

67.     Defendant John Blanke is the owner of J.B. Monroe, Inc.

68.     Defendant William Beasley is the shareholder, manager, officer and director of Defendant BZLY, Inc.

69.     Defendant William Beasley is the manager of Ybor Operations, L.C.

70.     Defendant William Beasley is the shareholder and manager of Benore Ventures, Inc.

71.     Defendant William Beasley is the shareholder and manager of J.W. Lee, Inc.

72.     Defendant William Beasley is the manager of J.W. Lee Properties, LLC.

73.     Defendant William Beasley is the manager of Ybor Operations, L.C.

74.     Defendant William Beasley is the shareholder and manager of M.S.B. Land Holdings, Inc.

75.     Defendant William Beasley is the manager of SVC Joint Ventures, LLC.

76.     Defendant William Beasley is the shareholder and manager of SB Productions, Inc.

77.     Defendants Brandon Samuels, John Blanke, and William Beasley are involved in the day-to-day business operation of all three Florida Scarlett's clubs (Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip, and Scarlett's of Toledo).

78.     Defendants Brandon Samuels, John Blanke, and William Beasley have responsibility for the supervision of the entertainers at all three Florida Scarlett's clubs (Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip, and Scarlett's of Toledo).

79.     Defendants Brandon Samuels, John Blanke, and William Beasley are responsible for the compensation or lack thereof paid to entertainers at all three Florida Scarlett's clubs (Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip, and Scarlett's of toledo).

80.     Defendants Brandon Samuels, John Blanke, and William Beasley have the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

81.     Additionally, Defendants Brandon Samuels, John Blanke, and William Beasley were responsible for the day-to-day affairs of the clubs. In particular, they were responsible for determining whether the clubs complied with the Fair Labor Standards Act.

82.     Defendants Brandon Samuels, John Blanke, and William M. Beasley controlled the nature, pay structure, and employment relationship of the Plaintiff and Class Members.

83.     As such, Defendants Brandon Samuels, John Blanke, and William Beasley are the employers of the Plaintiff and Class Members within the meaning of 3(d) of the FLSA, and are jointly, severally, and liable for all damages.

## ENTERPRISE AND INDIVIDUAL COVERAGE

84.     "The Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a) (1), requires an employer to pay overtime compensation to an hourly worker if the employee can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634-CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.,* 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id.* (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

85.     At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

86.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

87.     Specifically, Defendants' employees have sold goods—such as alcoholic beverages and a variety of foods—that have been moved or produced in interstate commerce to Defendants' patrons.  Additionally, Defendants' employees, including Plaintiff, have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

88.     Defendants advertise on the internet, own clubs in two states which they advertise together on their website, process credit cards from out of state patrons, communicate via mail, email, and telephone with their clubs outside of the state of Florida, and sell their merchandise across state lines.

89.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

90.     At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

## WAGE VIOLATIONS

91.     Defendants misclassify Plaintiff and all other entertainers as independent contractors.

92.     Defendants failed to pay Plaintiff and all other entertainers they hire any compensation whatsoever.

93.     The money Plaintiff received directly from Defendants' customers are tips.

94.     Defendants siphoned Plaintiff's and all other entertainers' tips by requiring them to share their tips with other employees who are not eligible to participate in a tip pool.

95.    Defendants siphoned Plaintiff's and all other entertainers' tips by requiring them to pay for fees, including house fees, leave early fees, and credit card fees from their tips.

## V.    FACTS

96.    Plaintiff and Class Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them minimum wage, proper overtime, and the tips they lawfully earned.

97.    Defendants operate two adult entertainment clubs in Florida, and one adult entertainment club in Ohio.[2]

98.    Defendants operate an adult entertainment club at 2920 S.W. 30th Ave. Hallandale Beach, FL 33009 under the name of "Scarlett's Cabaret-Hallandale."

99.    Defendants operate an adult entertainment club at 3819 7th Avenue Tampa, Florida 33605 under the name of "Scarlett's of Ybor Strip."

100.    Defendants operate an adult entertainment club at 5765 Telegraph Rd., Toledo, OH 43612 under the name of "Scarlett's of Toledo."

101.    Defendants employ exotic entertainers at Scarlett's Cabaret-Hallandale, Scarlett's of Ybor Strip, and Scarlett's of Toledo.

102.    Plaintiff Adonay Encarnacion is a former exotic entertainer at Defendants' adult entertainment club: Scarlett's Cabaret-Hallandale.

103.    Plaintiff worked on a regular basis for Defendants' club.

104.    From approximately August of 2012 until October 31, 2013, Plaintiff Adonay Encarnacion danced at Scarlett's Cabaret in Hallandale Beach, Florida.

105.    Therefore, Plaintiff Adonay Encarnacion has first-hand personal knowledge of the

---

[2] This case is not intended to include any claims against Scarlett's of Fort Myers, a club affiliated with the Defendants' clubs sued herein.

pay violations at Scarlett's.

106.    The exotic entertainers at all of Defendants' clubs including Scarlett's of Hallandale, Scarlett's of Toledo and Scarlett's' of Ybor Strip are compensated exclusively through tips from Defendants' customers.

107.    Defendants did not pay the entertainers compensation for any hours worked at their establishments.

108.    Defendants charged the entertainers certain fees per shift worked.

109.    Defendants charged the entertainers a "house fee" depending on the time they arrive to work.

110.    Defendants also required the entertainers to share their tips with employees who do not customarily and regularly receive tips, including the disc jockeys and the managers.

111.    Defendants illegally classified the entertainers as independent contractors. However, at all times, the entertainers were employees of Defendants as that term is defined by the FLSA, Ohio law, Florida law, and relevant case law.

112.    Defendants hired, fired and supervised the entertainers.  Defendants also set the schedule for the entertainers. Defendants controlled the details of the entertainers' jobs, including setting the prices to charge customers for dances and imposing limitations on how to interact with the clubs' customers.

113.    Defendants also controlled the entertainers' appearances with respect to their attire and makeup.

114.    Defendants disciplined the entertainers for not following club rules.

115.    Defendants tracked the time and days the entertainers worked just as is common for typical employer-employee relationships.

116.    In addition, Defendants instructed the entertainers about when, where, and how

15

the entertainers were to perform their work.

117.   The following further facts demonstrate the entertainers' status as employees:

a)   Defendants had the sole right to hire and fire the entertainers;

b)   Defendants require dancers to complete an employee application as a prerequisite to their employment;

c)   Defendants made the decision not to pay overtime;

d)   Defendants made the decision not to compensate at the FLSA minimum wage rate;

e)   Defendants provided the entertainers with music equipment and a performing stage;

f)   Defendants controlled the entertainers' music;

g)   The dancers have made no financial investment with Defendants' business;

h)   The dancers were hired as permanent employees and have worked for Defendants for years;

i)   Defendants supervised the entertainers; and

j)   Defendants scheduled entertainers and as such had sole control over their opportunity for profit.

118.   Defendants misclassified Plaintiff and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA.

119.   Plaintiff and Class Members are not exempt from the overtime and minimum wage requirements under the FLSA.

120.   Although Plaintiff and Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated

time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of the FLSA. *See* 29 U.S.C. § 206.

121.     Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the intent to avoid paying her in accordance to the FLSA.

122.     Defendants have been in the exotic dancing industry for years and are familiar with the long line of federal cases holding that entertainers in this industry are employees as that term is defined by the FLSA.

123.     Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

124.     All Defendants have a common business purpose of for profit adult entertainment.

125.     The individually named Defendants keep employment records for Scarlett's Cabaret of Hallandale, Florida, Scarlett's of Toledo, and Scarlett's of Ybor Strip.

126.     The individually named Defendants have ultimate authority regarding hiring and firing employees at Scarlett's Cabaret of Hallandale, Florida, Scarlett's of Toledo, and Scarlett's of Ybor Strip.

127.     The individually named Defendants own and operate Scarlett's Cabaret of Hallandale, Florida, Scarlett's of Toledo, and Scarlett's of Ybor Strip.

128.     The individually named Defendants created and implemented companywide policy of misclassifying exotic entertainers as independent contractors at Scarlett's Cabaret of

Hallandale, Florida, Scarlett's of Toledo and Scarlett's of Ybor Strip.

129.    All corporate Defendants have the same registered agent.

130.    Defendants operate a chain of strip clubs under the assumed name "Scarlett's." Indeed, they advertise themselves as such on their website.  *See* Exhibit C (Defendants' website advertising its chain of clubs). The fact that they run each Scarlett's Cabaret identically and their customers can expect the same kind of customer service regardless of the location is Defendants' main advertising selling point.

131.    Defendants represent themselves to the general public as one strip club— Scarlett's—operating at multiple locations.   They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.   This is a family of strip clubs that advertises together on the same website, provides the same array of services to its customers, and uses the same business model.   The "Scarlett's" family of strip clubs exists under the control and direction of Defendants.   This family of strip clubs provides the same service product to its customers by using a set formula when conducting its business.   Part of that set formula is the wage violation alleged in this complaint.   These facts represent a classic example of "corporate fragmentation."

132.    The pay practices and job duties of entertainers described herein apply to all of Defendants' exotic clubs including, Scarlett's of Toledo, Scarlett's of Hallandale, and Scarlett's of Ybor Strip.

## VI.    COUNT ONE: VIOLATION OF 29 U.S.C. § 207

133.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

134.    Defendants' practice of failing to pay Plaintiff and Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

135.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiff.

## VII.    COUNT TWO: VIOLATION OF 29 U.S.C. § 206

136.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

137.    Defendants' practice of failing to pay Plaintiff and Class Members at the required minimum wage rate violates the FLSA.  29 U.S.C. § 206.  In fact, Defendants do not compensate the exotic entertainers whatsoever for any hours worked.

138.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

139.    Defendants failed to keep adequate records of Plaintiff's and Class Members' work hours and pay in violation of section 211(c) of the FLSA.  *See* 29 U.S.C. § 211(c).

140.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a)    The time of day and day of week on which the employees' work week begins;

b)    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c)    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d)    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e)      The hours worked each workday and total hours worked each workweek;

f)      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g)      The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

h)      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i)      The dates, amounts, and nature of the items which make up the total additions and deductions;

j)      The total wages paid each pay period; and

k)      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

141.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and Class Members.  Because Defendants' records are inaccurate and/or inadequate, Plaintiff and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference."  *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*¸ 328 U.S. 680, 687 (1946).

## VIII.   <u>COUNT THREE: VIOLATION OF ARTICLE X, SECTION 24 OF THE FLORIDA CONSTITUTION</u>

142.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

143.     Plaintiff, and those similarly situated employees, are/were entitled to be paid at least the Florida minimum wage for each hour/week worked during employment with Defendants.

144.     Specifically, Plaintiff, and those similarly situated employees, were not paid the proper minimum wage, as required by Article X, Section 24 of the Florida Constitution.

145.     Defendants willfully failed to pay Plaintiff, and those similarly situated employees, minimum wages for one or more weeks during Plaintiff's employment contrary to Article X, Section 24 of the Florida Constitution.

146.     Although such prerequisites are unconstitutional, Plaintiff has complied with all statutory prerequisites to bringing his claim pursuant to Article X, Section 24 of the Florida Constitution.

147.     Specifically, on November 15, 2013, Plaintiff served Defendants with a Notice pursuant to Fla. Stats. § 448.110, on behalf of herself, and those Servers similarly situated to Plaintiff.  A copy of Plaintiff's Notice Letter is attached hereto as **Exhibit B**.

148.     More than 15 days have elapsed since Plaintiff's service of his Notice on Defendants, and Defendants have failed to make payment to Plaintiff.

149.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, and those similarly situated employees, have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

150.     Plaintiff is entitled to an award of damages in an amount equal to the relevant Florida Minimum Wage, and an equal amount as liquidated damages.

151.     Plaintiff is entitled to an award of reasonable attorneys' fees and costs, pursuant to Article X, Section 24 of the Florida Constitution.

## IX.     COUT FOUR: MINIMUM WAGE VIOLATION UNDER OHIO LAW

152.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

153. Plaintiff was an employee and Defendants were employers within the meaning of the OMFWSA.

154. At various times relevant hereto, Plaintiff and those similarly situated employees worked for Defendants, but Defendants failed to pay Plaintiff at least the applicable Ohio Minimum Wage as required by the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

155. Defendants have violated the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

156. Plaintiff and those similarly situated employees have been damaged as a result of Defendants' failure to pay them the agreed upon wages to which she and the similarly situated employees are entitled, pursuant to the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

157. Pursuant to the OMFWSA and Article II, Section 34(a) of the Ohio Constitution, Plaintiff is entitled to the costs of this action and a reasonable attorneys' fee.

## X.    COUNT FIVE: OVERTIME VIOLATION UNDER OHIO LAW

158. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

159. From at least August 2011 and continuing through the Present, Plaintiff, and members of the Class worked in excess of the forty (40) hours per week for which Plaintiff and the Class were not compensated at the statutory rate of one and one-half times their regular rate of pay.

160. Pursuant to the OMFWSA, Plaintiff and the Class were, and are entitled to be paid at the statutory rate of one and one-half times their regular rate of pay for those hours worked in excess of forty (40) hours.

161.    To date, Defendants continue to fail to pay its tipped employees their overtime pay, as mandated by the OMFWSA and Article II.

162.    Defendants' actions in this regard were/are willful and/or showed/show reckless disregard for the provisions of the OMFWSA and Article II, as evidenced by their continued failure to compensate Plaintiff and similarly situated tipped employees, at the statutory rate of one and one-half times their regular rate of pay for the hours worked in excess of forty (40) hours per weeks when they knew, or should have known, such was, and is due.

163.    Defendants have failed to properly disclose or apprise Plaintiff of Plaintiff's rights under the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

164.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered and continues to suffer damages and lost compensation for time worked over forty (40) hours per week, plus double damages.

165.    Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

## XI.    COUNT SIX: RECORDKEEPING VIOLATIONS UNDER OHIO LAW

166.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

167.    At all times material hereto, Defendants failed, and continue to fail, to maintain proper time records as mandated by the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

168.    By engaging in the above-described acts and omissions, which acts and omissions were willful, intentional, extreme and outrageous, Defendants knowingly and willfully failed to make keep and preserve records of the hours worked by Plaintiff, in violation of the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

XII.    **COUNT SEVEN: FAILURE TO TENDER PAY BY REGULAR PAYDAY**
**UNDER OHIO LAW**

169.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

170.    At all times material hereto, Defendants failed, and continue to fail, to make payments as outlined above, within 30 days of when such payments were due, as mandated by the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

171.    By engaging in the above-described acts and omissions, which acts and omissions were willful, intentional, extreme and outrageous, Defendants knowingly and willfully failed to pay Plaintiff all wages owed to her within 30 days of her regularly scheduled paychecks in violation of R.C. 4113.15.

XIII.   **FLSA COLLECTIVE ACTION ALLEGATIONS**

172.    As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiff and Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

173.    Although Defendants permitted and/or required FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty.  Defendants have also denied them full compensation at the federally mandated minimum wage rate.

174.    Class Members perform or have performed the same or similar work as Plaintiff. In particular, Plaintiff and Class Members all worked as exotic entertainers under the same conditions and subject to the same violations of the FLSA.

175.    Many FLSA Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

176.    Defendants have classified and continue to classify FLSA Class Members as independent contractors.

177.    FLSA Class Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

178.    As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

179.    Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Class Members.

180.    The experiences of Plaintiff, with respect to their pay, are typical of the experiences of FLSA Class Members.

181.    The experiences of Plaintiff, with respect to their job duties, are typical of the experiences of Class Members.

182.    The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

183.    All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

184.    All Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

185.    Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a formula.  The claims of all Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

186.    The Plaintiff and the Class Members held the same job title: Dancers and/or Entertainers.

187.    The Defendants have classified all of its entertainers as independent contractors from June 10, 2011 to present.

188.    The individually named Defendants instituted, permitted, and/or required the policy and practice of classifying all exotic entertainers at Scarlett's Cabaret of Hallandale, Scarlett's of Toledo, and Scarlett's of Ybor Strip as independent contractors.

189.    The individually named Defendants instituted, permitted, and/or required the policy and practice of charging all exotic entertainers at Scarlett's Cabaret of Hallandale, Scarlett's of Toledo, and Scarlett's of Ybor Strip a house fee.

190.    The individually named Defendants instituted, created, and/or permitted the policy and practice of requiring all dancers and/or exotic entertainers at Scarlett's Cabaret of Hallandale, Scarlett's of Toledo, and Scarlett's of Ybor Strip to tip out staff including the DJ.

191.    As such, the FLSA Class of similarly situated Plaintiff is properly defined as follows:

> **The FLSA Class Members are all of Defendants' current and former exotic entertainers who worked at Scarlett's Cabaret of Hallandale, Scarlett's of Ybor Strip, and/or Scarlett's of Toledo at any time during the three years before this Complaint was filed up to the present.**

## XIV.   FLORIDA CLASS ACTION ALLEGATIONS

192.    Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and  (b)(3) of the Federal Rules of Civil Procedure.

193.    Plaintiff brings her Florida Minimum Wage Claims on behalf of all persons who were employed by Defendants at any time since September 2009, to the entry of judgment in this case (the "Florida Class Period"), who were "entertainer" employees and who have not been paid at least the

applicable Florida Minimum Wage for hours/weeks worked, as required, in violation of Article X, Section 24 of the Florida Constitution (the "Florida Class").

194.     The persons in the Florida Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are between 1000 and 2000 members of the Florida Class during the Florida Class Period.

195.     The claims of Plaintiff are typical of the claims of the Florida Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

196.     The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

197.     Specifically, Defendants illegally misclassified all of their exotic entertainer employees, including Plaintiff as independent contractors and failed to pay them minimum wages as mandated by Article X, Section 24 of the Florida Constitution.

198.     Application of this policy or practice does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit.  Rather, the same policy or practice which resulted in the non-payment of minimum wages to Plaintiff applied and continues to apply to all class members.  Accordingly, the "Florida Class Members" are properly defined as:

> **All of Defendants' current and former exotic entertainers who worked at Scarlett's Cabaret of Hallandale, and Scarlett's of Ybor Strip at any time during the five (5) years before this Complaint was filed up to the present.**

199.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

200.    Plaintiff has the same interests in this matter as all other members of the Florida class and Plaintiff's claims are typical of the Florida Class.

201.    There are questions of law and fact common to the Florida Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.      whether the Defendants employed the members of the Florida Class within the meaning of Article X, Section 24 of the Florida Constitution;

b.      whether the Defendants failed to keep true and accurate time records for all  hours worked by Plaintiff and members of the Florida Class;

c.      what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.      whether Defendants misclassified their exotic entertainer employees as independent contractors;

e.      whether Defendants failed and/or refused to pay the members of the Florida Class at least the Florida Minimum Wage in one of more workweeks;

f.      whether the Defendants are liable for all damages claimed hereunder, including but not limited to, costs, disbursements and attorney's fees; and

g.      whether the Defendants should  be enjoined from such violations of Article X, Section 24 of the Florida Constitution in the future.

## XV.   OHIO CLASS ALLEGATIONS

202.    Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

203.    Plaintiff brings her claims, pursuant to the OMFWSA and the Ohio Constitution, on behalf of all persons who were employed by Defendants at any time since August 2011, to the entry of judgment in this case (the "Ohio Class Period"), who were non-exempt employees within the meaning of the OMFWSA and have not been paid for hours actually worked as well as overtime wages as required in violation of the OMFWSA (the "Ohio Class").

204.    The persons in the Ohio Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are over five hundred of members of the Ohio Class during the Ohio Class Period.  As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Ohio Class and Defendants.

205.    The claims of Plaintiff are typical of the claims of the Ohio Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

206.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

207.    Application of this policy or practice does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit.  Rather, the same policy or practice which resulted in the non-payment of minimum wages to Plaintiff applied and continues to apply to all class members.  Accordingly, the "Ohio Class Members" are properly defined as:

> **All of Defendants' current and former exotic entertainers who worked at Scarlett's Toledo at any time during the three (3) years before this Complaint was filed up to the present.**

208.   Plaintiff is committed to pursuing this action and has retained competent counsel experienced in Wage and Hour law and class action litigation.

209.   Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Ohio Class.

210.   This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees and meal periods taken.

211.   There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Ohio Class, including but not limited to:

a.   Whether the Defendants employed the members of the Class within the meaning of the OMFWSA and Article II, Section 34(a) of the Ohio Constitution;

b.   Whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Ohio Class, in violation of;

c.   What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.   Whether Defendants failed and/or refused to pay the members of the Ohio Class at least minimum wages for all hours the were suffered or permitted to work;

e.   Whether Defendants failed and/or refused to pay the members of the Ohio Class premium pay for hours worked in excess of forty hours per workweek within the meaning of the OMFWSA;

e.   Whether the Defendants are liable for all damages claimed hereunder, including but not limited to, double damages, costs, disbursements and attorney's fees; and

f.  Whether the Defendants should be enjoined from such violations of the
OMFWSA and Article II, Section 34(a) of the Ohio Constitution in the future.

## XVI.   DAMAGES SOUGHT

212.   Plaintiff, FLSA Class Members, Florida Class Members, and Ohio Class
Members are entitled to recover compensation for the hours they worked for which they were not
paid at the applicable minimum wage rate.

213.   Additionally, Plaintiff, FLSA Class Members, Florida Class Members, and Ohio
Class Members are entitled to recover their unpaid overtime compensation.

214.   Plaintiff, FLSA Class Members, Florida Class Members, and Ohio Class
Members are also entitled to all of the misappropriated funds, including all funds that were
charged as fees and penalties, and all tips that were taken.  Without repayment of such fees,
Plaintiff, FLSA Class Members, Florida Class Members, and Ohio Class Members will not have
been paid minimum wage and overtime in accordance with the applicable law.

215.   Plaintiff and FLSA Class Members are also entitled to an amount equal to all of
their unpaid wages and fees as liquidated damages.  29 U.S.C. § 216(b).

216.   Plaintiff and the Ohio Class Members are entitled to an award of treble damages,
based on Defendants' willful failure to pay minimum wages and overtime compensation pursuant to
OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

217.   Plaintiff, FLSA Class Members, Florida Class Members, and Ohio Class
Members are also entitled to an award of prejudgment and post judgment interest;

218.    Plaintiff, FLSA Class Members, Florida Class Members, and Ohio Class Members are also entitled to are entitled to recover their attorney's fees and costs.

## JURY DEMAND

219.    Plaintiff and Class Members hereby demand trial by jury.

## PRAYER

220.    For these reasons, Plaintiff, FLSA Class Members, Florida Class Members and Ohio Class Members respectfully request that judgment be entered in their favor awarding the following relief:

      a.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Florida Class and appointing Plaintiff and her counsel to represent the Class;

      b.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Ohio Class and appointing Plaintiff and her counsel to represent the Class;

      c.   Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

      d.   Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage

provisions of the FLSA, the OMFWSA, Article II, Section 34(a) of the Ohio Constitution, and Article X, Section 24 of the Florida Constitution;

e.  Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

f.  All unpaid wages and overtime compensation due under the FLSA;

g.  All unpaid wage and overtime compensation due under Article X, Section 24 of the Florida Constitution;

h.  All unpaid wage due under OMFWSA and Article II, Section 34(a) of the Ohio Constitution;

i.  All unpaid minimum and overtime wages in accordance with the law mentioned herein;

j.  All misappropriated tips;

k.  All misappropriated funds that were labeled as fees or otherwise;

l.  An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under the FLSA;

m.  An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under Article X, Section 24 of the Florida Constitution;

n.  An award of treble damages, based on Defendants' willful failure to pay minimum wages and overtime compensation pursuant to OMFWSA and Article II, Section 34(a) of the Ohio Constitution;

o.  Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

p.  Such other relief to which Plaintiff and Class Members may be entitled, at law or

in equity.

Dated: May 18, 2015

Respectfully submitted,

/s/ Andrew Frisch
Andrew R. Frisch, Esquire
FL Bar No. 27777
Morgan & Morgan, P.A.
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Tel: (954) 318-0268
Fax: (954) 327-3013
E-mail: afrisch@forthepeople.com

/s/ Galvin B. Kennedy
Galvin B. Kennedy (admitted *pro hac vice*)
gkennedy@kennedyhodges.com
Federal Bar No. 20791
State Bar No. 00796870
711 W. Alabama St.
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

/s/ Beatriz Sosa-Morris
Beatriz Sosa-Morris (admitted *pro hac vice*)
State Bar No. 24076154
Federal Bar No. 1552137
KENNEDY HODGES, LLP
711 W. Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile:  713-523-1116
Bsosamorris@kennedyhodges.com

ATTORNEY IN CHARGE FOR PLAINTIFF &
CLASS MEMBERS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>18th</u> day of May, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>**/s/ ANDREW FRISCH**</u>
Andrew Frisch

35