# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| ADONAY ENCARNACION, ANDREA WONG, RACHEL STEPHENSON, and BRITTNEY ROBERTS, Individually, and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 14-61927 |
| J.W. LEE, INC., D/B/A SCARLETT'S CABARET D/B/A SCARLETT'S OF HALLANDALE, FL; J.W. LEE PROPERTIES, LLC; YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP; BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; J.B. MONROE, INC., BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY, | § § § § § § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | | |

DECLARATION OF ANDREW FRISCH IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF RULE 23 SETTLEMENT, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, APPROVAL OF THE PROPOSED NOTICES OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

I, Andrew R. Frisch, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.    My name is ANDREW FRISCH. I am over the age of eighteen (18) and competent to testify as to the matters stated herein.

2.    I am a partner at Morgan & Morgan, P.A. ("M&M") in Plantation,

Florida, in charge of the firm's nationwide class/collective action employment practice.

3.    M&M is a national firm, with over 250 attorneys, that represents plaintiffs in a wide variety of employment matters including individual and collective/class action litigation involving wage and hour claims.

4.    As an attorney for M&M, I am responsible for prosecuting, as lead counsel, federal and state labor and employment claims, including claims arising under Title VII, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), the Florida Civil Rights Act, the Fair Labor Standards Act ("FLSA"), and various parallel state and local municipal wage and hour laws, among others.

5.    M&M is the largest Plaintiff-side law firm in the United States.

6.    Along with Galvin Kennedy and Beatriz Sosa-Morris, of Kennedy Hodges, LLP ("KH"), I was/am lead counsel in the matter of *Encarnacion, et al. v. J.W. Lee, Inc., et al.* (Case No. 0:14-cv-61927-WPD).  To that end, Mr. Kennedy, Ms. Sosa-Morris, and I were the attorneys primarily responsible for the litigation on behalf of Adonay Encarnacion, Andrea Wong, Rachel Stephenson, and Brittney Roberts, and the proposed settlement class.

7.    We undertook this representation on a purely contingent basis. Moreover, because our firms have finite resources, our acceptance of this case precluded me/us from accepting other wage and hour class/collective actions.

8.    Neither M&M nor KH, have received compensation for the services we have rendered in this case to date, from any source.

## Counsel's Background and Experience

9.    I completed my undergraduate studies at the University of Michigan (Ann Arbor), where I obtained a Bachelor of Arts (1997), and served as an assistant to the

Honorable Lynn Rivers, then the Congressperson from Ann Arbor in the United States House of Representatives.   After my graduation from the University of Michigan, I attended law school at the Benjamin N. Cardozo School of Law in New York, where I graduated in the top of my class and earned a Juris Doctor degree (2000). While in law school, I served as a student law clerk for the Honorable Denis R. Hurley of the Eastern District of New York, and received numerous scholastic honors.

10.   I was admitted to the bars of the State of New York and New Jersey in 2001, the bar of the State of Florida in 2006, and the bar of the State of Georgia in 2012. Additionally, I am admitted to the bars of the Third, Sixth, and Eleventh Circuit Court of Appeals and Middle, Northern and Southern Districts of Florida, Eastern, Northern, and Southern Districts of New York, District of New Jersey, Court of Federal Claims, Northern and Southern Districts of Texas, District of Colorado, Eastern and Western Districts of Tennessee, Middle and Northern Districts of Georgia, and Eastern District of Michigan. I am a member in good standing of each of these bars.

11.   I have been practicing law since January 2001, have successfully handled hundreds of FLSA collective action cases (in multiple states and venues), and prior to coming to Morgan & Morgan, P.A., I managed the Wage and Hour Department at Rosenthal & Levy, P.A. in West Palm Beach, Florida for over a year.

12.   I have served or am serving as lead counsel in Wage and Hour Class/Collective Actions in the Middle, Northern and Southern District of Florida, Southern District of Texas, Eastern and Southern Districts of New York, District of New Jersey, Eastern District of North Carolina, Southern and Northern Districts of Mississippi, Eastern, Middle and Western Districts of Tennessee, Southern District of Ohio, Middle,

Northern and Southern Districts of Georgia, District of Colorado, District of Oregon, and the Court of Federal Claims. *See, e.g., Fairley v. Knights Marine and Industrial Services, Inc.,* Case 1:15-cv-00047-LG-RHW, D.E. 43 (S.D. Miss. May 29, 2015) (nationwide class of tradesmen alleging miscalculation of their overtime); *Case v. Danos & Curole Marine Contractors, L.L.C.*, 2015 WL 1978653 (E.D. La. May 4, 2015); *Kutzback v. LMS Intellibound, LLC*, 2015 WL 1393414 (W.D. Tenn. Mar. 25, 2015) (nationwide class of unloaders asserting off-the-clock claims); *Miller v. Garibaldi's Inc.,* 2015 WL 1170956 (S.D. Ga. Mar. 13, 2015); *Bath v. Red Vision Systems, Inc.*, 2014 WL 2436100 (D.N.J. May 29, 2014); *Thompson v. Direct General Consumer Products, Inc*., 2014 WL 884494 (M.D. Tenn. March 5, 2014) (nationwide class of insurance agents); *Palma v. MetroPCS Wireless, Inc*., 2013 WL 6597079 (M.D. Fla. Dec. 16, 2013)(nationwide class of account service representatives); *White v. NTC Transp., Inc*., 2013 WL 5874566 (N.D. Miss. Oct. 31, 2013); *Cooper v. East Coast Assemblers, Inc*., 2013 WL 308880 (S.D. Fla. Jan. 25, 2013)(certifying nationwide class of "assemblers" regarding unpaid overtime claims); *Young v. Dollar Tree Stores, Inc.,* 1:11-cv-01840-REB-MJW, D.E. 264 (D. Colo. Aug. 24, 2012)(conditionally certifying a nationwide class of over 35,000 "assistant store managers" pursuing off-the-clock claims); *Hardesty v. Litton's Market and Restaurant, Inc*., 2012 WL 6046743 (E.D. Tenn. Sept. 28, 2012)(class of tipped servers alleging tip credit violations); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, (E.D.N.Y. April 20, 2012); *Elliott v. Amspec Services, LLC*, 2011 WL 6002019 (D.N.J. Nov. 29, 2011)(certifying nationwide class of "oil, gas and chemical inspectors"); *Mainor v. Lazer Spot, Inc.,* 2011 U.S. Dist. LEXIS 151990, at *8 (N.D. Ga. Aug. 9, 2011)(nationwide class of yard jockeys); *Dacar v. Saybolt, LP*, 4:11-cv-00433, D.E. 135 (S.D. Tex. June 2, 2011); *Aponte v. Comprehensive Health Management, Inc.*, 2011 WL 2207586 (S.D.N.Y.

June 2, 2011); *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457 (D.N.J. Apr. 7, 2011); *Mills v. RM International, Inc.*, 3:11-cv-00129, D.E. 38 (D. Or. March 31, 2011)(conditionally certifying nationwide class of "test drivers"); *Reyes v. AT & T Corp.*, 2011 WL 3517004 (S.D. Fla. Feb. 28, 2011)(conditionally certifying a nationwide class of "retail account executives"); *Brantley v. Inspectorate America Corp.*, 4:09-cv-02439, D.E. 43 (S.D. Tex. April 14, 2010); *Gayle v. United States,* 85 Fed. Cl. 72 (2008).

13.     Additionally, I have repeatedly been held to be adequate class counsel in claims arising under various state wage and hour laws. *See, e.g., Pierre-Val v. Buccaneers Ltd. P'ship,* 2015 WL 3776918, at *4 (M.D. Fla. June 17, 2015) (appointing Frisch and Morgan & Morgan as class counsel in Florida minimum wage class action); *Seghroughni v. Advantus Restaurant, Inc.*, 2015 WL 390329, at *2 (M.D. Fla. Jan. 28, 2015) (same); *Deleon v. Wells Fargo, N.A.,* 1:12-cv-04494-RLE, D.E. 39 (S.D.N.Y. Jan. 12, 2015) (appointing Frisch and M&M as class counsel in NYLL class action); *Reyes v. AT&T Mobility Services, LLC,* 1:10-cv-20837-MGC, D.E. 191 (S.D. Fla. Dec. 20, 2012) (appointing Frisch as class counsel); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. August 6, 2012) ("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Aponte v. Comprehensive Health Management, Inc.*, 2011 WL 2207586, at *12 (S.D.N.Y. June 2, 2011) (finding that Frisch and Morgan & Morgan "are qualified, experienced, and capable of acting as lead counsel" in wage and hour class actions).

14.     I have also tried close to two dozen jury trials in the state and federal courts of Florida and New York, as well as over one hundred final administrative hearings in multiple states and forums.

15.     I have also handled numerous cases as appellate counsel in administrative proceedings, as well as in state and federal court proceedings.

16.     I am a member of the National Employment Lawyers Association ("NELA"), as well as NELA's Florida and Georgia chapters. I am also an active member of various trial lawyer organizations, including the Florida Justice Association ("FJA"), the Palm Beach County Justice Association ("PBCJA"), the Broward County Justice Association ("BCJA") and the New York State Trial Lawyers Association ("NYSTLA").

17.     Further, I have published multiple articles on Wage and Hour subjects in different periodicals.   I am also author/publisher of the "Overtime Law Blog" website http://flsaovertimelaw.com, a frequently updated site pertaining to recent developments in FLSA and Wage and Hour jurisprudence.

18.     Given my expertise in wage and hour law, I am frequently asked to present to groups of attorneys and/or paralegals at speaking engagements. *See, e.g.*, Lecturer, "Overtime and Fair Labor Standards Act," Palm Beach County Chapter of Paralegal Association of Florida, Inc., May 9, 2007; also Lecturer, "Title VII of the Civil Rights Act of 1964; Age Discrimination in Employment Act (ADEA); Older Workers Benefits Protection Act (OWBPA); Florida Whistleblowers Act," Florida Workers' Advocates, FWA's 17th Annual Education Conference, June 9, 2007; Lecturer, "Best Strategies for Handling Fair Labor Standards Act (FLSA) Litigation by the Plaintiff and Defendant," Florida Bar Labor and Employment Section, Advanced Labor Topics 2012, April 14, 2012; Lecturer, "Calculating Damages Under the FLSA to Maximize Your Claims," Practice Made Perfect's Wage & Hour Seminar, February 7, 2013.

## I.  <u>PROCEDURAL HISTORY</u>

### A.    **Litigation.**

19.    Plaintiff commenced this case by filing her Complaint on August 22, 2014. *See* D.E. 1.

20.    Thereafter, Plaintiff filed her Amended Class and Collective Action Complaint on December 4, 2014, in which she added class action claims under the Florida Constitution ("FMWA").  *See* D.E. 12.

21.    Thereafter, the Parties engaged in extensive detailed discussions regarding resolution of this matter on a class-wide basis, and ultimately agreed to attend mediation.

22.    To date, nine (9) additional entertainers formerly employed by Defendants, have opted in to the case by filing their consents to join.  See D.E.s 5, 6, 7, 8, 27, 28, 44 and 49.

23.    In order to conform the pleadings to the scope of the Parties' settlement, Plaintiffs filed their operative Complaint, the *Corrected* Second Amended Complaint on June 2, 2015.  *See* D.E.s 55 and 56.

### B.    <u>Discovery</u>.

24.    While the parties did not engage in formal discovery *per se*, Defendants made tens of thousands of pages of documents and computer records available to Plaintiffs and their expert forensic accountant for inspection.  These documents included corporate policies, entertainer onboarding documents, independent contractor agreements between most class members and Defendants, internal records pertaining to each class member's length of employment, and entertainer rosters and calendars. In addition, Plaintiff's counsel interviewed each of the opt-in Plaintiffs regarding the alleged minimum wage violations at issue in the case.

**C.**      **Settlement Negotiations and Mediations.**

25.      On February 2, 2015, the Parties participated in an all-day mediation, in Fort Lauderdale, Florida with the assistance of Mediator, Adrienne Fechter, of Fechter Mediation & Arbitration Services, LLC.

26.       Ms. Fechter is a very knowledgeable and skilled wage and hour class action mediator, with a nationwide mediation practice.

27.      In that mediation, Defendants provided Class Counsel with additional information about the facts underlying the claims made in the Litigation.

28.      Ultimately, despite mediating for over twelve (12) hours, the parties were unable to reach a settlement at mediation and the mediation reached an impasse.

29.      Subsequent to the full-day mediation, the Parties attended two (2) additional half-day in-person settlement conferences in which they continued to negotiate a settlement of the instant claims.

30.      On March 2, 2015, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case.  *See* D.E. 36 (Notice of Settlement).

31.  Thereafter, on May 11, 2015, Plaintiffs retained an expert forensic accountant, Martin Williams, C.P.A., of the firm Fiske & Company, in order to examine Defendants' records that served as the source of the information for the summary records that the Parties relied upon in reaching their settlement.  *See* Affidavit of Martin Williams, CPA/CFF, CFE attached as **EXHIBIT A**.

32.      After lengthy additional negotiation and further in-person conferences, the Parties have now reduced their agreement to a formal Settlement Agreement, which they are presenting to the Court for preliminary approval. *See* Settlement Agreement attached as **EXHIBIT B**.

## II. <u>TERMS OF SETTLEMENT</u>

### A.     <u>The Settlement Fund</u>.

33.     Defendants have agreed to create a settlement fund of up to
$6,000,000.00 ("the Fund"). *See* Settlement Agreement, ¶¶ 1.14 and 3.1.

34.     The Fund will cover awards to class members, Court-approved attorneys'
fees and costs, Court-approved service payments to Adonay Encarnacion, Andrea
Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Brittney
Roberts, and Rachel Stephenson, and 1/3 of the costs of administering the settlement
(to the extent the costs of administration exceed $20,000.00). *Id.*, ¶ 1.14.

35.     In addition to the Fund, Defendants are responsible for paying the first
$20,000.00 of the cost of administration of the settlement, and 2/3 of any additional
costs thereafter. *Id.,* ¶¶ 1.14 and 3.1.

### B.     <u>R e l e a s e</u>.

36.     Class Members who do not opt out of the settlement will
release all Florida and Ohio wage and hour claims that were brought in the litigation
or that are based on the same facts and circumstances as the claims in the litigation. *Id.*
¶ 4.1.

37.     In addition to releasing their Florida and Ohio wage and hour claims, all
Class Members who timely submit a claim, including Adonay Encarnacion, Andrea
Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Brittney
Roberts, and Rachel Stephenson, will release their FLSA claims, as well as their
respective state wage and hour claims. *Id.*[1]

---

[1] Class Members who do not submit a claim will release their Florida and Ohio wage and

C.      **E l i g i b l e Class Members**.

38.     The Rule 23 class consists of 4,709 current and former Entertainers who perform or performed at Scarlett's of Hallandale and/or Scarlett's of Ybor Strip, at any time between December 4, 2009, and February 2, 2015, or at Scarlett's of Ohio at any time between December 4, 2009, and February 2, 2015, except for those who opt out. *Id.,* ¶ 1.4.

D.      **A l l o c a t i o n  F o r m u l a**.

39.     Qualified Class Members, and those who have submitted a consent to join the FLSA case, will be paid pursuant to an allocation formula based on the period of time they performed at a Scarlett's nightclub identified aboveduring the applicable limitations periods, and specifically, the number of months between their start date and their end date, within the class period. *Id.* ¶ 3.5.

40.     Pursuant to the allocation formula, Qualified Class Members will receive an average of $1,274.15, before attorney's fees, costs and the service payments are deducted (approximately $920.27 net of these amounts).

E.      **A t t o r n e y s ' F e e s a n d L i t i g a t i o n C o s t s**.

41.     Plaintiff's counsel will apply for twenty-seven point seven (27.7%)  of the Settlement Fund as attorneys' fees ($1,660,450.00), an amount that will include their reasonable litigation costs. *Id.,* ¶ 3.3. Plaintiffs' counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

42.     The Settlement Agreement is not conditioned on the award of attorneys' fees, and explicitly states that it is to be considered separately from any application

hour claims, but not any FLSA claims they may have.  *See id.,* ¶ 4.1.

for attorneys' fees.   Settlement Agreement, ¶ 3.3.   The Court need not decide the attorneys' fees and costs issue now, with respect to the Rule 23 Class settlement.

      **F.**    <u>S e r v i c e Payments</u>.

43.    In addition to their individual awards under the allocation formula, Plaintiff, Adonay Encarnacion, and opt-in Plaintiffs, Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Brittney Roberts, and Rachel Stephenson, all of whom actively participated in the Litigation, will apply for additional payment in recognition of the services they rendered on behalf of the class ("Service Payments"). *See* Settlement Agreement, ¶ 3.4.

**III.**    **<u>CLASS ACTION SETTLEMENT PROCEDURE</u>**

44.    Each of the respective Class members will receive an appropriate notice of their rights as part of the settlement procedures proposed by the Parties.   Attached hereto as **EXHIBIT C** is the proposed Notice of Class Action Settlement.

45.    To date, prior to receiving formal notice of the settlement, all FLSA Class members, and Rule 23 Class members that I have spoken to have responded favorably regarding the terms of the settlement.

    I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this **<u>26th</u>** day of June, 2015.

                          <u>/s/ ANDREW FRISCH</u>
                          Andrew Frisch, Esq.
                          FL Bar No.: 27777
                          Morgan & Morgan, P.A.
                          600 N. Pine Island Road, Suite 400
                          Plantation, FL 33324
                          Telephone:    (954) WORKERS

Facsimile:     (954) 327-3013
Email: afrisch@forthepeople.com

*Attorney for Plaintiffs*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CIVIL ACTION NO. 14-61927

ADONAY   ENCARNACION,   ANDREA
WONG,   RACHEL   STEPHENSON,   and
BRITTNEY   ROBERTS,   Individually,   and   on
Behalf of All Others Similarly Situated,

       Plaintiffs,

vs.

J.W. LEE, INC., D/B/A SCARLETT'S CABARET
D/B/A SCARLETT'S OF HALLANDALE, FL;
J.W. LEE PROPERTIES, LLC; YBOR
OPERATIONS, L.C. D/B/A SCARLETT'S OF
YBOR STRIP; BZLY, INC.; M.S.B. LAND
HOLDINGS, INC.; SVC JOINT VENTURES LLC;
BENORE VENTURES, INC.; SB PRODUCTIONS,
INC.; J.B. MONROE, INC., BRANDON
SAMUELS, individually, JOHN BLANKE,
individually, WILLIAM BEASLEY,

       Defendants.

_____/

AFFIDAVIT OF MARTIN WILLIAMS, CPA/CFF, CFE

       BEFORE ME, the undersigned authority personally appeared MARTIN WILLIAMS,

who, having first been duly sworn, deposes and states:

       1.     I am over the age of eighteen (18) years.  I am fully competent to testify and have

personal knowledge of the facts stated herein.

       2.     I am a Certified Public Accountant employed by Fiske & Company, 1000 S. Pine

Island Road, Suite 440, Plantation, Florida.  I hold the credentials of Certified Fraud Examiner

and Certified in Financial Forensics.  My "Statement of Qualifications" is attached hereto as

Exhibit A to this Affidavit.

3.      I was retained on May 11, 2015 by Plaintiffs for the purpose of determining the appropriateness and accuracy of Defendants' apportionment of $4,333,333.00 (the "Award") in settlement proceeds (the "Settlement Calculation") among the 4,709 class participants.

4.      The Settlement Calculation was prepared by Defendants and apportions the Award among the class based upon an entertainer's tenure at Scarlett's relative to other entertainers.

5.      In other words, an entertainer with tenure of twelve months will receive approximately twelve times the payout of an entertainer with tenure of one month.

6.      On May 14, 2015 I visited the corporate offices of Defendants and interviewed Brandon Samuels ("Samuels"), Defendant and partner in J.W. Lee, Inc., d/b/a Scarlett's Cabaret d/b/a Scarlett's of Hallandale, FL and J.B. Monroe, Inc., (hereinafter refereed to as "Scarlett's" when including Ybor Operations, L.C. d/b/a Scarlett's of Ybor Strip) and Fernanda Gontijo ("Gontijo"), Operations Manager for SB Productions.

7.      During a 30-minute interview, Samuels and Gontijo provided an overview of Scarlett's computer systems and data entry policies and procedures utilized during the five-year time frame comprising this matter.  Both Samuels and Gontijo provided thorough and reasonable answers to my direct inquiries.

8.      Subsequent to my interview with Samuels and Gontijo, I met individually with Gontijo to obtained a detailed understanding of Scarlett's entertainer records.

9.      Defendants utilize a cloud-based computer information systems ("ID System") to maintain each entertainer's permanent identification data.  Each entertainer's information is collected within an electronic record ("ID Record") as follows:

        a.      Prior to performing at Scarlett's, every entertainer is required to sign a one-

2

year lease, present a valid form of identification, and have their photo taken. This information is uploaded into the entertainer ID Record.

b.  In addition to the above information, Scarlett's personnel manually enter each entertainer's First Name, Last Name, Date of Birth, and Address and upload this into the entertainer ID Record.

c.  Upon creation of an ID Record, the Systems automatically generate a unique entertainer ID number and an ID Record creation date. The new ID Record is automatically labeled "Active".

d.  Subsequent to the creation of a new entertainer ID Record, a Scarlett's manager must electronically acknowledge within that new entertainer ID Record that all information is complete.

10.  Scarlett's also maintains Point-Of-Sale ("POS") data to measure each entertainer's sales during a given shift ("POS Record"). Scarlett's managers compare entertainer POS Records against entertainer ID Records on a weekly basis to determine which entertainers are "Active" vs. "Inactive".

a.  An entertainer's ID Record is changed to "Inactive" after the entertainer has not generated POS activity over a three-week period.

11.  After obtaining an understanding of the entertainer data, I requested that Gontijo replicate the queries and procedures utilized in preparing the Settlement Calculation and observed the results. These procedures included the following:

a.  Electronically extracting all entertainer ID Records from the ID Systems into an Excel spreadsheet, including Last Name, First Name, Address, ID Record creation Date, and Inactive Date (if applicable);

3

    b.    Removing all entertainer records (within the Settlement Calculation) with an Inactive Date prior to 12/4/2009 (the applicable period start date for this matter) or an ID Record creation date subsequent to 2/2/2015 (the applicable period end date for this matter) ;

    c.    Removing duplicate ID Records (e.g., for an entertainer that created ID Records at two or more Scarlett's location during the same time period); and

    d.    Manually adjusting entertainer Inactive dates to account for those entertainers that performed at any Scarlett's location during two or more mutually exclusive time periods.

12.    Upon obtaining "clean" entertainer data (the population of all entertainer data corrected for the abovementioned errors), Gontijo measured the tenure of each entertainer using one-month increments, with any partial month rounded up to the next month (e.g., an entertainer that performed for more than five months but less than six months would count as six months for purposes of the Settlement Calculation).

13.    Gontijo determined that 4,709 entertainers performed a total of 41,954 months during the period 12/4/2009 to 2/2/2015, resulting in an average tenure of approximately nine months.

14.    Entertainers were awarded $103.29 ($4,333,333.33 / 41,954 months) for each month they had performed at Scarlett's during the 12/4/2009 to 2/2/2015 time period.

15.    The minimum payout was $103.29 (representing a one-month tenure), while the maximum payout was $6,403.84 (representing a sixty-two-month tenure).  The average payout was $920.22.

16.     Throughout my review of Gontijo's calculations, I randomly sampled entertainer data within the ID Systems for accuracy and found zero exceptions.

17.     In my opinion, the processes, procedures and calculations used to determine the entertainer payouts within the Settlement Calculation are reasonable.   Furthermore, the underlying data from which these calculations were performed appeared accurate within a reasonable degree of certainty.

Under penalties of perjury I declare that I have read the foregoing Affidavit and the facts stated in it are true.


FURTHER AFFIANT SAYETH NOT.

_____
MARTIN WILLIAMS


SWORN TO AND SUBSCRIBED before me this 22 day of June, 2015 by MARTIN WILLIAMS, who is personally known to me or who has produced _____ as identification.

_____
Notary Public State of Florida
My Commission Expires:


SANDRA L. TOMLIN
MY COMMISSION # EE 844195
EXPIRES: November 8, 2016
Bonded Thru Budget Notary Services

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| ADONAY ENCARNACION, ANDREA WONG, RACHEL STEPHENSON, and BRITTNEY ROBERTS, Individually, and on Behalf of All Others Similarly Situated, §§§§§ | |
| **Plaintiff,** § | |
| **v.** §§ | **CIVIL ACTION NO. 14-61927** |
| | **JURY TRIAL DEMANDED** |
| J.W. LEE, INC., D/B/A SCARLETT'S CABARET D/B/A SCARLETT'S OF HALLANDALE, FL; J.W. LEE PROPERTIES, LLC; YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP;  BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; J.B. MONROE, INC., BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY, §§§§§§§§§§§§§§ | |
| **Defendants.** | |

<u>**JOINT STIPULATION OF CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**</u>

This Joint Stipulation of Class and Collective Action Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiffs Adonay Encarncion, Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Rachel Stephenson, Brittany Roberts, Rose Arguelles, and Candice Whitaker (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, and J.W. Lee Properties, LLC, d/b/a Scarlett's of Hallandale, FL ("Scarlett's of Hallandale), Ybor Operations, L.C., D/B/A Scarlett's of Ybor Strip ("Scarlett's of Ybor Strip"), BZLY, Inc., M.S.B. Land Holdings, Inc., SVC Joint Ventures LLC, Benore Ventures, Inc., SB Productions, Inc., JB Monroe, Inc. ("Scarlett's of Toledo"), William Beasley, John Blanke, and Brandon Samuels (collectively "Defendants")(Plaintiffs and Defendants collectively referred to as the "Parties").

## RECITALS

1. On August 22, 2014, Plaintiff Adonay Encarnacion filed a Complaint on behalf of herself and all others similarly situated alleging violations of the Fair Labor Standards Act ("FLSA").  Subsequently, on December 4, 2014, Encarnacion filed her Amended Complaint, alleging violations of the FLSA and the Florida Constitution on behalf of her self and other former and current exotic dancers.  The Amended Complaint alleged that the exotic dancers were misclassified as independent contractors and were not paid the minimum wage or overtime in accordance with the FLSA and the Florida Constitution. The Amended Complaint sought certification of Plaintiff's FLSA claims as an opt-in collective action pursuant to Section 216(b) of the FLSA and certification of Encarnacion's state law claims as an opt-out class action pursuant to Fed. R. Civ. P. 23. Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Rachel Stephenson, Rose Arguelles, Candice Whitaker, and Brittany Roberts filed notices of consent to joint Encarnacion's action.  On June 2, 2015, Plaintiffs filed a *Corrected* Second Amended Complaint, which alleged violations of the FLSA, Florida Constitution and Ohio law against Defendants.

2. Defendants contest the allegations in the Corrected Second Amended Complaint, including both the merits of Plaintiffs' claims and the Plaintiffs' rights to bring a collective or class action in federal court.

3. Class Counsel has obtained, through their own investigation and from Defendants' informal, voluntary information production, information regarding the agreements executed between the Defendant night clubs and the exotic dancers and regarding the number of exotic dancers who performed at the Defendant night clubs during the class period.  Class Counsel has interviewed Plaintiffs and individuals who may be FLSA and/or Rule 23 class members.

4. On February 2, 2015, the Parties attended a full-day mediation.  The Parties were unable to reach a settlement at mediation.

5. Following the mediation, the Parties continued to negotiate by telephone and through in-person meetings.

6. During the course of the negotiations, Defendants asserted and continue to assert that they have substantial defenses to Plaintiffs' claims and those of the putative class, including, in part, that: (1) most of Plaintiffs and the putative class members must arbitrate their claims pursuant to written contracts; (2) most of Plaintiffs and the putative class members have waived their right to pursue a class or collective action; (3) the exotic dancers are properly classified as non-employees; (4) the exotic dancers make more money as independent contractors than they would as employees, and after offset of non-

tip monies paid to the dancers pursuant to their contracts, the exotic dancers would not be entitled to any compensation, damages or restitution; (5) Defendants have not operated as a single enterprise; (6) many claims of the Plaintiffs and the putative class are barred by the applicable statutes of limitation; and (7) Defendants cannot be found to have committed "willful" violations and therefore liquidated damages are not available. Notwithstanding that Defendants expressly disclaim all wrongdoing, liability and damages, Defendants have agreed to settle the litigation on the terms and conditions set forth in this Agreement, subject to Court approval, to avoid the burden, expense, and uncertainty of continuing this Litigation.

7.   Class Counsel, based upon their analysis and their evaluation of a number of factors, recognize the substantial risks of continued litigation with respect to their claims, including the possibility that the litigation, if not settled now, might result in a recovery that is less favorable to the Plaintiffs and the potential Class Members, compared to the settlement terms reflected herein, and that such recovery, if any, would not occur for several years.  Class Counsel is satisfied that the terms and conditions of the Agreement are fair, reasonable, adequate and that the Agreement is in the best interest of Plaintiffs and the potential Class Members.

8.   This Agreement represents a compromise of highly-disputed claims, both on the merits and as to whether either a class or a collective action is appropriate.  Nothing in this Agreement is intended to be construed as an admission by Defendants that Plaintiffs' claims have merit or that class or collective action certification is appropriate with respect to any of the claims asserted in the Litigation.

9.   It is the Parties' intent that the Agreement shall constitute a full and complete settlement and release of all claims against Defendants, including all claims that were alleged in the Litigation and all claims based on the facts underlying the claims alleged in the Complaint and Amended Complaint.

Now, therefore, in consideration of the foregoing and of the promises, mutual covenants and valuable consideration contained herein, the Parties agree as follows:

## 1.   DEFINITIONS

1.1   "Agreement" shall mean this Joint Stipulation of Class and Collective Action Settlement and Release, including exhibits.

1.2   "Claims Administrator" shall mean the individual or entity agreed to by the Parties to perform specified tasks described below.

1.3   "Claim Form" shall mean the form to be submitted to Class Members to permit them to participate in the settlement, in the form appended hereto as Exhibit A.

3

1.4   "Class" means all dancers who Performed for at least one week at Scarlett's of Hallandale or Scarlett's of Ybor Strip at any time from December 4, 2009 to February 2, 2015 and/or Scarlett's of Ohio at any time from December 4, 2012 to February 2, 2015.

1.5   "Class Counsel" shall mean the law firms and attorneys listed as Plaintiffs' counsel on the Amended Complaint.  For purposes of providing any notices required under the Agreement, Class Counsel shall mean Andrew Frisch, Esq. of Morgan & Morgan, P.A.

1.6   "Class Member" shall mean an individual member of the Class.

1.7   "Completed Claim Form" shall mean a Claim Form dated and personally signed by the Class Member, which provides full and accurate, to the best of the Class Member's knowledge, answers to all of the information requested in the document.

1.8   "Court" shall mean the United States District Court for the Southern District of Florida, the Honorable Judge William P. Dimitrouleas presiding.

1.9   "Defendants" shall mean J.W. Lee Properties, LLC d/b/a Scarlett's of Hallandale, FL ("Scarlett's of Hallandale), Ybor Operations, L.C. D/B/A Scarlett's of Ybor Strip, BZLY, Inc., M.S.B. Land Holdings, Inc., SVC Joint Ventures LLC, Benore Ventures, Inc., SB Productions, Inc., JB Monroe, Inc., William Beasley, John Blanke, and Brandon Samuels

1.10  "Defendants' Counsel" shall mean all counsel who have entered an appearance on any of the Defendants' behalves in the Litigation.  For purposes of providing any notices required under the Agreement, Defendants' Counsel shall refer to Benjamin Olive, Esq. of Hackleman, Olive & Judd., P.A.

1.11  "Effective Date" is the date on which the Agreement becomes effective, which is the later of:  (1) thirty (30) days following entry of the Court's Final Order and Judgment approving the settlement if no appeal is taken of that Order; or (2) the Court's entry of a final order and judgment after resolution of any appeals.

1.12  "Fairness Hearing" shall mean the hearing on Motion for Judgment and Final Approval.

1.13  "Litigation" shall mean the case styled *Encarnacion v. J.W. Lee, Inc.*, et al., Case No. 14-61927-CIV-DIMITROULEAS, pending in the United States District Court for the Southern District of Florida.

1.14  "Maximum Settlement Payment" shall mean the maximum amount that Defendants can be obligated to pay in connection with this Agreement, which is $6,000,000.00, exclusive of the first $20,000 of fees and costs of the Claims Administrator and two-thirds (2/3) of any fees and costs of the Claims Administrator in excess of $20,000.

1.15  "Net Settlement Fund" shall mean the remainder of the Maximum Settlement Payment after deductions of Court-approved attorneys' fees and costs as described

4

in Section 3.3, Court-approved service awards to Plaintiffs as described in Section 3.4 and 1/3 of any fees and costs of the Claims Administrator in excess of $20,000.

1.16 "Notice" shall mean the Notices of Settlement of the Class/Collective Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit C.

1.17 "Opt Out Form" means the form identical in all material respects to the document attached as Exhibit B.

1.18 "Participating Class Member" shall mean the Plaintiffs and all Class Members who do not opt out of the settlement embodied in this Agreement.

1.19 "Perform," "Performed" or "Performing" means all acts of entertaining, dancing and/or engaging in entertainment services, and all activities included with such performance, at or associated with Scarlett's of Hallandale, Scarlett's of Ybor Strip and/or Scarlett's of Toledo.

1.20 "Plaintiffs" shall mean Adonay Encarncion, Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Brittney Roberts, Candice Whitaker, Rose Arguelles, and Rachel Stephenson, including their representatives, heirs, administrators, executors, beneficiaries, agents, and assigns, as applicable and without limitation.

1.21 "Qualified Class Member" shall mean all Class Members who timely return Completed Claim Forms.  Plaintiffs shall be deemed to be Qualified Class Members without having to submit a Claim Form.

1.22 "Released Claims" shall mean any and all claims released by Plaintiffs and the Class Members as provided in Section 4.1.

1.23 "Releasees" shall mean Defendants, their respective affiliates and related entities, and all of their incumbent and former officers, legal managers, directors, owners, members, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities, excepting that John Blanke is hereby released as to the actions alleged in the Second Amended Complaint, but is not released in his capacity as a shareholder or manager of Ares on Fowler, LLC d/b/a Scarlett's of Fort Myers.

## 2. PRELIMINARY APPROVAL ORDER, STAY OF PROCEEDINGS AND CERTIFICATION OF PROPOSED CLASS FOR SETTLEMENT PURPOSES

2.1 By July 11, 2015, unless otherwise agreed, Class Counsel will submit to the Court a Motion for Preliminary Class Certification, Approval of Class Action and Collective Action Settlement and Stay ("Preliminary Approval Motion"), which shall include the following documents:  (1) a proposed Claim Form and Opt-Out Form, in the form attached as Exhibits A and B, respectively; (2) a proposed Class Notice, in the form attached as Exhibit C; (3) a proposed Order Granting Preliminary Approval, in the form attached as Exhibit D.   The Preliminary

5

Approval Motion will request the Court to set dates for the Class Members to opt-out and/or file objections and for a Fairness Hearing. Defendants will not oppose the Preliminary Approval Motion so long as it complies with the terms of this Agreement.

2.2     If the Court denies the Preliminary Approval Motion, in full or in part, the Parties will jointly seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. Should such renegotiation fail or should the Parties' attempt to secure Court approval be denied, the case will proceed as if no settlement had been attempted. In that event, Defendants shall retain the right to move to compel arbitration, to contest whether the Litigation should be maintained as a collective or class action, to challenge the Rule 23 class action allegations in the Amended Complaint, and to contest the merits of the claims being asserted by Plaintiffs in the Litigation.

3.     **SETTLEMENT PAYMENTS BY DEFENDANTS**

3.1     <u>Maximum Settlement Payment</u>: Defendants agree to pay a Maximum Settlement Payment of $6,000,000.00, which shall be allocated among and shall resolve and satisfy: (a) all amounts to be paid to the Qualifying Class Members; (b) Court-approved service payments to Plaintiffs; (c) Court-approved attorney's fees and costs to be paid to Class Counsel; and (d) one-third of the costs of the Claims Administrator, if any, that exceed $20,000. The only payments Defendants shall be responsible for making payments in excess of the Maximum Settlement Payment are payments to the Claims Administrator, consisting of the first $20,000 of the Claims Administrator's fees and costs and two-thirds (2/3) of any additional fees and costs charged by the Claims Administrator. The final amount to be paid by Defendants shall be determined on the basis of the claims that are made by the Qualifying Class Members.

<u>Net Settlement Fund</u>: The Net Settlement Fund shall be calculated by deducting, from the Maximum Settlement Payment, the following amounts: (a) Court-approved attorneys' fees and costs to be paid to Class Counsel, as described in Section 3.3; (b) Court-approved service awards, as described in Section 3.4; and (c) one-third of the costs of the Claims Administrator exceeding $20,000. The Net Settlement Fund shall be allocated among the Qualified Class Members as described in Section 3.5.

3.2     <u>Payment for Qualified Class Members</u>: Defendants shall pay the total amount of Qualified Class Members' claims to the Claims Administrator in twenty-four equal monthly payments starting thirty (30) days after the Effective Date and continuing every thirty (30) days thereafter for the following twenty-three (23)

months.  To the extent that any Class Member does not make a valid claim to become a Qualified Class Member, Defendants shall retain her allocated portion (as set forth in Section 3.5) of the Net Settlement Fund.  In no case shall Defendants' payments under this section exceed the Net Settlement Fund, except as provided in Sections 8.20 and 8.15 of this Agreement.

Once every ninety (90) days, the Claims Administrator will pay Qualified Class Members one-eighth (1/8) of their portion of the Net Settlement Fund, as described in Section 3.5.

3.3  <u>Attorneys' Fees and Costs</u>:   Class Counsel shall petition the Court for $1,660,450.00 of the Maximum Settlement Payment as an award of attorneys' fees and costs.  Defendants will not oppose such petition so long as it requests an aggregate award of attorneys' fees and costs that complies with this Agreement. In no event shall Defendants be requested or required to pay any attorneys' fees, costs or Litigation expenses in excess of those set forth in this Agreement, except as provided in Sections 8.20 and 8.15 of this Agreement.

The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement (with the exception of Section 3.1 hereof) and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding regarding Class Counsel's petition for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Order and Judgment.

Defendants shall pay the Court-approved attorneys' fees and costs to Class Counsel in twenty-four (24) equal monthly payments (of $69,185.42, assuming Court approval of $1,660,450.00) starting thirty (30) days after the Effective Date of this Agreement and continuing every thirty (30) days thereafter for the following twenty-three (23) months.

3.4  <u>Service Payments</u>:  Class Counsel will apply to the Court to receive a $15,000.00 service payment for representative Plaintiff Adonay Encarnacion.  Additionally, Class Counsel will apply to the Court for a service payment of $2,000.00 for Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, and Rachel Stephenson, and $750.00 for Brittany Roberts.

Defendants will not oppose such application so long as it complies with this section.  The service awards and the requirements for obtaining such payments are separate and apart from this Agreement (with the exception of Section 3.1 hereof) and are to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the applications for service awards shall not terminate the Agreement or otherwise affect the Court's ruling on the Motion for Final Order and Judgment.

Defendants shall pay the approved service payments to Class Counsel, for distribution to Plaintiffs, within sixty (60) days of the Effective Date.

3.5   <u>Distribution to Qualified Class Members</u>:   Qualified Class Members will be deemed eligible to receive a settlement payment from the Net Settlement Fund according to the terms of this Section 3.5.

Payments to Qualified Class Members shall be based on the time period in which they Performed at Scarlett's of Hallandale, Scarlett's of Ybor Strip and/or Scarlett's of Toledo, as reflected in the computer records of J.W. Lee, Inc., Ybor Operations, L.C. and JB Monroe, Inc., as follows:

Tier 1:  $102.77 for any Qualified Class member who Performed less than one month.

Tier 2:  $205.54 for any Qualified Class member who Performed more than one month up to and including two months.

Tier 3:  $308.31 for any Qualified Class member who Performed more than two months up to and including three months.

Tier 4:  $411.08 for any Qualified Class member who Performed more than three months up to and including four months.

Tier 5:  $513.85 for any Qualified Class member who Performed more than four months up to and including five months.

Tier 6:  $616.62 for any Qualified Class member who Performed more than five months up to and including six months.

Tier 7:  $719.39 for any Qualified Class member who Performed more than six months up to and including seven months.

Tier 8:  $822.15 for any Qualified Class member who Performed more than seven months up to and including eight months.

Tier 9:  $924.92 for any Qualified Class member who Performed more than eight months up to and including nine months.

Tier 10:  $1,027.69 for any Qualified Class member who Performed more than nine months up to and including ten months.

Tier 11:  $1,130.46 for any Qualified Class member who Performed more than ten months up to and including eleven months.

Tier 12:  $1,233.23 for any Qualified Class member who Performed more than eleven months up to and including twelve months.

Tier 13:  $1,336.00 for any Qualified Class member who Performed more than twelve months up to and including thirteen months.

Tier 14:  $1,438.77 for any Qualified Class member who Performed more than thirteen months up to and including fourteen months.

Tier 15:  $1,541.54 for any Qualified Class member who Performed more than fourteen months up to and including fifteen months.

Tier 16:  $1,644.31 for any Qualified Class member who Performed more than fifteen months up to and including sixteen months.

Tier 17:  $1,747.08 for any Qualified Class member who Performed more than sixteen months up to and including seventeen months.

Tier 18:  $1,849.85 for any Qualified Class member who Performed more than seventeen months up to and including eighteen months.

Tier 19:  $1,952.62 for any Qualified Class member who Performed more than eighteen months up to and including nineteen months.

Tier 20:  $2,055.39 for any Qualified Class member who Performed more than nineteen months up to and including twenty months.

Tier 21:  $2,158.16 for any Qualified Class member who Performed more than twenty  months up to and including twenty-one months.

Tier 22:  $2,260.92 for any Qualified Class member who Performed more than twenty-one  months up to and including twenty-two months.

Tier 23:  $2,363.69 for any Qualified Class member who Performed more than twenty-two  months up to and including twenty-three months.

Tier 24:  $2,466.46 for any Qualified Class member who Performed more than twenty-three months up to and including twenty-four months.

Tier 25:  $2,569.23 for any Qualified Class member who Performed more than twenty-four  months up to and including twenty-five months.

Tier 26:  $2,672.00 for any Qualified Class member who Performed more than twenty-five  months up to and including twenty-six months.

Tier 27:  $2,774.77 for any Qualified Class member who Performed more than twenty-six  months up to and including twenty-seven months.

Tier 28:  $2,877.54 for any Qualified Class member who Performed more than twenty-seven  months up to and including twenty-eight months.

Tier 29:  $2,980.31 for any Qualified Class member who Performed more than twenty-eight  months up to and including twenty-nine months.

Tier 30:  $3,083.08 for any Qualified Class member who Performed more than twenty-nine  months up to and including thirty months.

Tier 31:  $3,185.85 for any Qualified Class member who Performed more than thirty  months up to and including thirty-one months.

Tier 32:  $3,288.62 for any Qualified Class member who Performed more than thirty-one  months up to and including thirty-two months.

Tier 33:  $3,391.39 for any Qualified Class member who Performed more than thirty-two  months up to and including thirty-three months.

Tier 34:  $3,494.16 for any Qualified Class member who Performed more than thirty-three months up to and including thirty-four months.

Tier 35:  $3,596.93 for any Qualified Class member who Performed more than thirty-four  months up to and including thirty-five months.

Tier 36:  $3,699.69 for any Qualified Class member who Performed more than thirty-five  months up to and including thirty-six months.

Tier 37:  $3,802.46 for any Qualified Class member who Performed more than thirty-six  months up to and including thirty-seven months.

Tier 38:  $3,905.23 for any Qualified Class member who Performed more than thirty-seven  months up to and including thirty-eight months.

Tier 39:  $4,008.00 for any Qualified Class member who Performed more than thirty-eight  months up to and including thirty-nine months.

Tier 40:  $4,110.77 for any Qualified Class member who Performed more than thirty-nine  months up to and including forty months.

Tier 41:  $4,213.54 for any Qualified Class member who Performed more than forty  months up to and including forty-one months.

Tier 42:  $4,316.31 for any Qualified Class member who Performed more than forty-one  months up to and including forty-two months.

Tier 43:  $4,419.08 for any Qualified Class member who Performed more than forty-two  months up to and including forty-three months.

Tier 44:  $4,521.85 for any Qualified Class member who Performed more than forty-three months up to and including forty-four months.

Tier 45:  $4,624.62 for any Qualified Class member who Performed more than forty-four  months up to and including forty-five months.

Tier 46:  $4,727.39 for any Qualified Class member who Performed more than forty-five  months up to and including forty-six months.

Tier 47: $4,830.16 for any Qualified Class member who Performed more than forty-six months up to and including forty-seven months.

Tier 48: $4,932.93 for any Qualified Class member who Performed more than forty-seven months up to and including forty-eight months.

Tier 49: $5,035.70 for any Qualified Class member who Performed more than forty-eight months up to and including forty-nine months.

Tier 50: $5,138.47 for any Qualified Class member who Performed more than forty-nine months up to and including fifty months.

Tier 51: $5,241.23 for any Qualified Class member who Performed more than fifty months up to and including fifty-one months.

Tier 52: $5,344.00 for any Qualified Class member who Performed more than fifty-one months up to and including fifty-two months.

Tier 53: $5,446.77 for any Qualified Class member who Performed more than fifty-two months up to and including fifty-three months.

Tier 54: $5,549.54 for any Qualified Class member who Performed more than fifty-three months up to and including fifty-four months.

Tier 55: $5,652.31 for any Qualified Class member who Performed more than fifty-four months up to and including fifty-five months.

Tier 56: $5,755.08 for any Qualified Class member who Performed more than fifty-five months up to and including fifty-six months.

Tier 57: $5,857.85 for any Qualified Class member who Performed more than fifty-six months up to and including fifty-seven months.

Tier 58: $5,960.62 for any Qualified Class member who Performed more than fifty-seven months up to and including fifty-eight months.

Tier 59: $6,063.39 for any Qualified Class member who Performed more than fifty-eight months up to and including fifty-nine months.

Tier 60: $6,166.16 for any Qualified Class member who Performed more than fifty-nine months up to and including sixty months.

Tier 61: $6,268.93 for any Qualified Class member who Performed more than sixty months up to and including sixty-one months.

Tier 62: $6,371.70 for any Qualified Class member who Performed more than sixty-one months up to and including sixty-two months.

Once every ninety (90) days, the Claims Administrator shall calculate and mail one-eighth (1/8) of the appropriate settlement payment, as set forth in the tiers

above, to Qualified Class Members.   The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect address.   The Claims Administrators' calculation regarding an individual's settlement payment shall be final and binding. Qualified Class Members will have one hundred eighty (180) calendar days after the date the check was issued to redeem their individual settlement payments.  If not redeemed during the 180 day period, their settlement checks will be void and the amount of such checks shall revert to Defendants. The Claims Administrator will pay the unredeemed amount to Defendants within 14 days thereafter.  If a Qualified Class Member alerts Class Counsel during the 180-day period to redeem settlement payments that she has not received her settlement check, Class Counsel will alert the Claims Administrator, who will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Qualified Class Member's original settlement check and reissue that Qualified Class Member's settlement check, which will be valid for forty-five (45) days after the date of issue and will be void thereafter. If not redeemed during that forty-five (45) day period, the Claims Administrator will pay the unredeemed amount to Defendants within the following 14 days.

3.6   <u>Tax Considerations</u>:  Plaintiffs and each Qualified Class Member acknowledge that the settlement payments made to them pursuant to Section 3.5 and the service payments made to them pursuant to Section 3.4 do not constitute "wages" within the meaning of § 3111(a) of the Internal Revenue Code, any other applicable provisions therein, or any applicable state tax or revenue code.  A Form 1099-MISC shall be issued by Defendants to each Plaintiff and Qualified Class Member, as required by law, reflecting the payments made in accordance with this Agreement, and copies of said forms shall be duly filed with the United States Internal Revenue Service and with the department of revenue and/or taxation of Florida, to the extent required by law, under the payee's name and social security number.  All payments to Qualified Class Members made pursuant to the Settlement shall be deemed to be paid to such individuals solely in the year in which such payments actually are received by them.  Any tax responsibility for the settlement payments and service payments shall not be Defendants' responsibility.

Defendants' Counsel and Class Counsel make no representation and provide no advice as to the tax treatment or legal effect of the payments called for hereunder. Each participating Class Member shall be obligated to obtain her own independent tax advice concerning the proper income reporting and tax obligations regarding any payments she receives pursuant to this Agreement, and assumes the responsibility of remitting to the Internal Revenue Service any other applicable taxing authorities any and all amounts required by law to be paid out of any monies received under this Agreement, without any contribution from Defendants or Class Counsel.

No provision of the Agreement and no written communication or disclosure between or among the Parties or their counsel is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 CFR part 10, as amended).

3.7     Payment of Claims Administrator:    Defendants will pay the Claims Administrator's fees and costs.   If the Claims Administrator's fees and costs exceed $20,000, one-third of the amount exceeding $20,000 shall be paid out of the Maximum Settlement Amount, and the remaining two-thirds shall be paid by Defendants.

## 4.     CLASS MEMBERS' RELEASES

Release of Released Defendants:   As of the Effective Date, each and every Participating Class Member knowingly and voluntarily releases, acquits and forever discharges each and every one of the Releasees from any and all claims of every conceivable kind or nature whatsoever that she has, had, or may have up to the Effective Date against the Releasees or against any one or group of  them, whether known or unknown, fixed or contingent, asserted or unasserted, at law, in equity or otherwise, that arise out of, relate to, or concern, in any way whatsoever, the conduct, events, or transactions that are set forth or could have been set forth in the Litigation.  Such released claims include, but are not limited to, any FLSA claims, state law wage or labor claims, business practices or similar claims, retaliation claims predicated upon a Class Member's assertion that any of the Defendants wrongfully terminated her right to Perform or any contract with her after she or any other person asserted a claim that she was misclassified as an independent contractor and/or non-employee, breach of contract claims, unjust enrichment and/or quantum meruit claims, claims under or derived from ERISA arising from any alleged failure to pay wages, including any claims for benefits under any benefit plans subject to ERISA, and any claims for liquidated, punitive or exemplary damages based upon any of the above matters.  Each Participating Class Member acknowledges and agrees that the Court will enjoin, and maintains authority to enforce an injunction precluding, all claims released by this Agreement from being further litigated, brought or pursued by any Class Member who does not opt out of the Litigation.  However, Participating Class Members who do not submit a claim, and thus are not Qualifying Class Members, shall not be deemed to release their FLSA claims.

4.2     Indemnity Regarding Released Claims:  For and in return of the complete and full considerations, terms, covenants and conditions set forth in this Agreement, the

Participating Class Members, and each and every one of them, agree to waive their right to bring any claims against the Releasees, or any one or group of them, at any time in the future arising out of, relating to, or concerning, in any way, manner or regard whatsoever, the Released Claims set forth in Section 4.1. The Participating Class Members further agree to individually indemnify the Releasees from any type of claim whatsoever that she had, has or may have against them, or any one or group of them, arising out of, relating to or concerning, in any way, manner or regard whatsoever, the Released Claims arising prior to the Effective Date. The indemnification shall be limited to the recovery obtained by the Participating Class Member and shall not include any claim for attorneys' fees or litigation expenses.

4.3    Waiver of Additional Compensation and Indemnity:    Except as otherwise specifically provided for in this Agreement, the Participating Class Members, and each and every one of them, agree that they will not seek to enforce, recover or collect upon any damages, awards, remunerations, sanctions, costs and/or attorneys' fees assessed against the Releasees, or any one or group of them, arising out of, relating to or concerning, in any way, manner, regard or fashion whatsoever, the Released Claims set forth in Section 4.1, including but not limited to any investigations, proceedings, lawsuits, claims, charges, or causes of action that she may have or that may be asserted by others, or by any governmental entity, organization or agency, on her behalf, in her interest or for her benefit, either in whole or in part.

If, however, any court, tribunal, firm, third person(s), business entity, or governmental entity, organization or agency brings, asserts or assumes jurisdiction over any form of investigation, proceeding, lawsuit, claim, charge or cause of action for or on behalf of any such Participating Class Member, and/or in her interest or for her benefit, either in whole or in part, against the Releasees, or any one or group of them, arising out of, relating to or concerning, in any way, manner, regard or fashion whatsoever, the Released Claims, such Participating Class Member shall reasonably cooperate with any request from the Releasees, at Releasees' cost, to demand the dismissal with prejudice of any such investigation, proceeding, lawsuit, claim, charge or cause of action, and/or, as may be appropriate, her withdrawal therefrom (including, by way of example and without limitation, a formal written request for withdrawal of, or non-participation in, an administrative proceeding, formally opting out of an opt-out class action lawsuit, and refraining from formally opting in to an opt-in class or collective action). In the event, however, that any court, tribunal, or government entity, organization or agency should assess any damages, awards, remunerations, sanctions, costs, and/or attorney's fees of any kind whatsoever against any Releasee (an "Award") arising out of, relating to or concerning, in any way, manner, regard or fashion whatsoever, the Released Claims set forth in Section 4.1, the Participating Class

14

Members, and each and every one of them, agree to specifically waive entitlement to, and refrain from collecting upon, any such Award.

4.4     <u>Sufficiency of Consideration</u>:   Each and every Participating Class Member specifically represents that sufficient and adequate consideration is being conveyed to her through this Agreement to support the releases of any and all of the Class Members' Released Claims.

4.5     <u>Satisfaction of Participating Class Member Claims</u>:   The Participating Class members specifically acknowledge that the considerations conveyed by the Defendants to the Participating Class Members as set forth herein represent valid compromises, settlements and resolutions of any and all claims for FLSA or state wage/labor law coverage, minimum wage, overtime, liquidated damages, punitive and/or exemplary damages, costs, attorneys' fees, and any other benefits allegedly due the Participating Class Members in regard to any matters or conduct arising from, relating to or associated with, in any way, the Released Claims set forth in Section 4.1.

4.6     <u>Plaintiffs' Waiver of Right to Opt-Out or Object</u>:   For good and valuable consideration, Plaintiffs each agree that they will not file an Opt-out Statement or otherwise seek exclusion from the Rule 23 Class settlement, and that they will not object to the proposed settlement.   Any effort to seek exclusion or object to the settlement shall be void and of no force or effect.

4.7     <u>Performing at Scarlett's Nightclubs</u>:   To the extent they are no longer performing for Defendants, as of the date of execution of this Agreement, and have not done so for at least two (2) months prior, Plaintiffs each agree that they shall not apply or reapply to Perform at Scarlett's of Hallandale, Scarlett's of Ybor Strip or Scarlett's of Toledo.   Plaintiffs release Releasees from and waive any right to assert at any time in the future any claims that arise out of or relate to, in any way whatsoever, the refusal of any Defendant to permit her to Perform at Scarlett's of Hallandale, Scarlett's of Ybor Strip or Scarlett's of Toledo.

4.8     <u>Non-Assignment of Claims</u>:  Class Counsel and Plaintiffs represent that they have not assigned or transferred and will not assign or transfer any interest or claim in this Litigation or any portion thereof, including any of the Released Claims, as described in Section 4.1, to any other person or entity.

4.9     <u>Release of Fees and Costs</u>:  Class Counsel and Plaintiffs, on behalf of the Class, hereby irrevocably and unconditionally release, acquit and forever discharge any claim that they may have against Releasees for attorneys' fees or costs associated

with Class Counsel's representation of Plaintiffs and the Class, in exchange for the receipt of Court-approved attorneys' fees and costs hereunder.

4.10   <u>No Admission of Wrongdoing</u>:  Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of the Agreement is, may be deemed to be, or may be used as an admission or evidence of the validity of any of the Class Members' Released Claims or of any wrongdoing, fault or liability of any of the Defendants in any civil, criminal or administrative proceeding.

## 5.   CLASS NOTICE AND CLAIMS FORMS

5.1   Within fourteen (14) days of the entry of the Order Granting Preliminary Approval, Defendants will provide the Claims Administrator, to the extent available in Defendants' records, the following information:

(a) Each Class Member's legal name;
(b) Each Class Member's last known address;
(c) Defendant nightclub at which each Class Member last Performed prior to the Preliminary Approval Order, as reflected in the nightclub's records; and
(d) The date range (in weeks) that each Class Member Performed.

5.2   Within fourteen (14) days of the receipt of the Class Member information identified in Section 5.1, the Claims Administrator shall mail the Class Notice, the Claim Form and the Opt Out Form to each Class Member via First Class United States mail, postage prepaid, using each individual's last known address as recorded in Defendants' records and provided pursuant to Section 5.1.

5.3   The Class Notice shall provide that, with the exception of the Plaintiffs, in order to participate in this settlement, Class Members must return the Completed Claim Form to the Claims Administrator within 60 days of the initial mailing specified in Section 5.2 ("Claim Period").  To be effective, a Completed Claim Form must be post-marked within the Claim Period.  Any Claim Forms that are not post-marked within the 60-day Claim Period shall be deemed untimely and the associated Class Member shall not be a Qualified Class Member.

Defendants will fund amounts allocated to each Class Member who returns a Claim Form within the Claim Period, as set forth in this Agreement.  Defendants shall have no obligation to pay or fund any amounts allocated to the Class Members who do not submit a Completed Claim Form within the Claim Period or who otherwise are not Qualified Class Members.

5.4   If the Class Notice for any Class Member is returned within twenty-one (21) days of the initial mailing, with a forwarding address provided by the Postal Service, the Class Notice, Claim Form and Opt Out Form will be re-sent by the Claims

Administrator to the forwarding address within seven (7) days of return.  If the Class Notice for any Class Member is returned within twenty-one (21) days of initial mailing as undeliverable, the Claims Administrator shall take reasonable steps to obtain the correct address and shall attempt to re-mail the Class Notice, Claim Form and Opt Out Form, which shall also be accomplished within seven (7) days of return.  A Completed Claim Form must nevertheless be remitted to the Claims Administrator and postmarked by the close of the Claim Period for the Class Member to be a Qualified Class Member with a valid claim for payment.

6.     **OBJECTIONS AND OPT-OUTS**

6.1     Opt-Outs:  Any Class Member who wishes to be excluded from the settlement embodied in this Agreement must mail a written, signed statement in substance equivalent to the Opt Out Form to the Claims Administrator ("Opt Out Statement") at the address set forth in the Class Notice, and postmarked no later than the end of the "Opt Out Period," which shall be 60 days after the last date on which the Claims Administrator makes initial mailings to the Class Members, as provided in Section 5.2, but no later than 14 days before the date of the Fairness Hearing.  Within 10 days after the last day on which it makes such a mailing, the Claims Administrator shall notify Class Counsel and Defendants' Counsel of the date of the end of the Opt Out Period.

The Claims Administrator shall stamp the post-mark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel not later than 3 days after receipt thereof.  The Claims Administrator shall, within 2 days of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel.  Class Counsel shall retain the stamped originals of all Opt-Out Statements and the originals of all envelopes accompanying the Opt-Out Statements in its files until such time as Defendants' Counsel provides Class Counsel with written authorization to destroy them.

Any Class Member who does not fully complete, personally sign and timely mail notice of her intention to opt out of the Settlement will be deemed included as a Participating Class Member in accordance with this Agreement.  If a Class Member submits both a Claim Form and an Opt Out Statement, the Opt Out Statement will be invalid and the Class Member will be deemed to be a Qualified Class Member and be bound by the terms of this Agreement.

6.2     Objections:  All Class Members who wish to present objections to the Agreement at the Fairness Hearing must do so in writing.  To be considered, such objection must be mailed to Class Counsel and Defendants' Counsel, and post-marked

within the Opt-Out Period, as specified on the Class Notice.  The objection must contain the name, address and telephone number of the Class Member to be valid. It must also contain the words "I object to the Settlement in Encarnacion v. J.W. Lee, Inc., et al." and set forth the reasons for the objection.  Class Counsel shall stamp the date received on the original objection and shall file the date-stamped original of all objections with the Clerk of Court within 3 business days after the end of the Opt-Out Period.

An objector also has the right to appear at the Fairness Hearing, either in person or through counsel hired by the objector.  Any objector who wishes to appear at the Fairness Hearing must state her intention to do so at the time she submits her written objections.  An objector may withdraw her objections at any time.  Any Class Member who has filed an Opt-Out statement may not submit objections.

The Parties may file with the Court written responses to any objections no later than 7 days before the Fairness Hearing.

6.3    No Solicitation of Opt-Outs or Objections:  The Parties and their counsel agree that they shall not solicit or otherwise encourage Class Members to opt-out and/or to present written objections to the Agreement, or to appeal from the Court's Final Order and Judgment.  Defendants shall not solicit potential Class Members to not participate in the Settlement, or otherwise discourage Class Members from participating in the Settlement.

## 7.  FINAL APPROVAL AND ORDER OF COURT

7.1    Motion for Final Order and Judgment:  No later than 14 days before the Fairness Hearing, Class Counsel will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

7.2    Final Order and Judgment:  Class Counsel will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment in a form to be agreed upon by the Parties.  The proposed Final Order and Judgment will, among other things: (a) finally certify the Rule 23 Class and FLSA Collective Action Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Plaintiffs and all Class Members who do not opt out, (d) reserve jurisdiction to enforce the terms of the Parties' settlement, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Agreement. Defendants will not oppose the application for the Final Order and Judgment.

7.3     <u>Effectiveness of Agreement</u>:  This Agreement will become final and effective upon the occurrence of all of the following:  execution of the Agreement by Plaintiffs, Defendants and their respective counsel; entry of the Final Order and Judgment; and finality of the Judgment, either because the time for appeal or review expires, *i.e.*, 30 days after entry of the Final Order and Judgment, or because the Judgment is affirmed and/or any appeal denied or dismissed.

7.4     <u>Failure to Grant Final Approval</u>:  In the event not all Parties sign the Agreement, the Court does not enter the Final Order and Judgment in accordance with the Agreement or such Judgment does not become final, whether because the Final Order and Judgment is overturned, reversed, vacated, or modified in any material way on appeal or review or through any collateral proceeding, the Parties agree to proceed as follows.  In the event the Court refuses to approve the Agreement in its entirety, the Parties jointly agree to (a) seek reconsideration of the decision denying entry of Judgment, and failing that (b) attempt to renegotiate the Agreement and seek Court approval of the renegotiated settlement.  In the event such reconsideration is denied and a mutually agreed-upon settlement is not reached or approved:

(a)  The Agreement will be null and void, and the Litigation will proceed as if no settlement had been attempted.  In that event, any Preliminary Approval Order and the Final Order and Judgment, if entered, shall be vacated.  The Rule 23 Class and/or Collective Action, if previously certified by the Court for purposes of settlement pursuant to the process set forth in the Agreement, shall be decertified and the Defendants shall retain, without objection from the Class or from Class Counsel as to the timing, the right to move to compel arbitration, the right to contest whether the claims can be maintained as a class and/or collective action, and the right . to contest the merits of all claims being asserted by Plaintiffs and the Class.

(b)  Defendants shall have no obligations to make any payments to any Party, Class Member, attorney, fund, or account.

(c) The Claims Administrator shall return to Defendants all information disclosed pursuant to Section 5.1.  To the extent Class Counsel has received such information, Class Counsel shall return such information to Defendants.

## 8.   MISCELLANEOUS

8.1     <u>Cooperation Among the Parties: Further Acts</u>:  The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's preliminary and final approval of this Agreement and all of its terms as quickly as possible. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of the Agreement.

8.2     <u>Entire Agreement</u>:  The Agreement constitutes the entire agreement between and among the Parties with regard to the settlement of the Litigation, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

8.3.    <u>Binding Effect</u>:  The Agreement shall be fully enforceable and binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, successors, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.   The Agreement shall be admissible and subject to disclosure in any proceeding to enforce its terms.

8.4     <u>Arm's Length Transaction; Materiality of Terms</u>:  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.   All terms and conditions of this Agreement in the exact form set forth herein are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

8.5.    <u>Captions</u>:   The captions or headings of the sections and paragraphs of this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement or its interpretation.

8.6.    <u>Construction</u>:  The Parties participated jointly in the drafting of the Agreement, and therefore the terms and conditions of the Agreement are not intended to be, and shall not be, construed in favor of, or against, any party by virtue of draftsmanship.

8.7     <u>Severability</u>:  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

8.8.    <u>Governing Law</u>:  The Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Florida, without regard to choice of law  principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

8.9.    <u>Continuing Jurisdiction</u>:    The Court shall retain jurisdiction over the interpretation and implementation of the Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

8.10.   <u>Waivers, etc. to Be in Writing</u>:  No waiver, modification or amendment of the terms of the Agreement, whether purportedly made before or after the Court's approval of the settlement contemplated by the Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.   Any failure by any party to insist upon the strict

20

performance by the other party of any of the provisions of the Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of the Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provision of the Agreement.

8.11.   Counterparts:   The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants have signed the same instrument.

8.12.   Facsimile/Electronic Signatures: Each party shall execute this Agreement on the designated signature block and direct counsel to transmit that signature page via facsimile or email to counsel for the other parties. Any signature made and transmitted by facsimile or email for the purpose of executing the Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

8.13   Parties' Authority to Sign:   The signatories to this Agreement hereby represent that they are fully authorized to enter into the Agreement on behalf of themselves or their respective principals/clients.

8.14   Dispute Resolution:   Except as otherwise set forth herein, all disputes concerning the interpretation, calculation, or payment of settlement claims, or other disputes regarding compliance with this Agreement, shall be resolved as follows: (a) If the Plaintiffs or Class Counsel, on behalf of any Qualified Class Member, or Defendants at any time contend that another party has breached or acted contrary to this Agreement, that party shall notify the other party(ies) in writing of the alleged violation; (b) upon receiving notice of the alleged violation or dispute, the responding party shall have 10 days to correct the alleged violation and/or respond to the initiating party with the reasons why the party disputes all or part of the allegation; (c) if the response does not address the alleged violation to the initiating party's satisfaction, the Parties shall negotiate in good faith for up to 30 days to resolve their differences; (d) if the disputing Parties are unable to resolve their differences after 30 days from the writing referenced in this section, the aggrieved party may file an appropriate motion for enforcement with the Court.

8.15   In the event that Plaintiffs or Defendants commence an action to enforce the provisions of the Agreement, the prevailing party in any such action shall be entitled to an award of its reasonable attorney's fees and all costs including appellate fees and costs, incurred in connection therewith as determined by the court in any such action.

8.16   Class Member Bound by Settlement:   Because of the number of Class Members, it is impractical to have each Class Member execute this Agreement. The Class Notice will inform all Class Members of the binding nature of the Released

Claims, which shall have the same force and effect as if this Agreement were executed by each Class Member.

8.17   Exhibits Incorporated by Reference:  The terms of this Agreement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein.  Any Exhibits to this Agreement are an integral part of this Agreement.

8.18   Computation of Deadlines:  Unless otherwise specified, the term "days" means calendar days.

8.19   Incorporation of Recitals:  The recitals contained in the paragraphs numbered 1-9 preceding the Definitions portion of this Agreement are incorporated by reference herein.

8.20   Acceleration Clause:  If Defendants fail to make one or more of the periodic payments due under Section 3.2 or 3.3 of this Agreement within 45 days of its due date, Class Counsel may, by written notice to Defendants, declare the entire principal sum then unpaid immediately due and payable.  Upon such declaration, if Defendants cure the default within 75 days by paying all sums then due, along with interest at the rate of 4.75% per month on the past due sum, the default shall be deemed to be cured.

To the extent Defendants fail to cure the default within 75 days per the preceding sentence, Defendants shall be deemed to be in default, and Plaintiffs will be entitled to immediately enter judgment for the entire amount of the settlement payments hereunder, with the exception of payments made up until the date of such judgment, plus any applicable interest, attorneys' fees necessitated by the default and costs associated therewith.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Settlement on the following days and year:

Dated: June 23 , 2015          By: _____
                                   Adonay Encarnacion, Plaintiff

Dated: June 23 , 2015          By: _____
                                   Andrea Wong, Plaintiff

Dated: June 26 , 2015          By: _____
                                   Rachel Stephenson, Plaintiff

Dated:  June 22   , 2015                    By: _____
                                                Brittney Roberts, Plaintiff


Dated:  June _____, 2015                    Defendant, J.W. Lee, D/B/A SCARLETT'S
                                            CABARET D/B/A SCARLETT'S OF
                                            HALLANDALE, FL

                                            By:_____
                                                Name:
                                                Title:


Dated:  June _____, 2015                    Defendant, J.W. Lee Properties, LLC

                                            By:_____
                                                Name:
                                                Title:


Dated:  June _____, 2015                    Defendant, Ybor Operations, L.L.C. D/B/A
                                            Scarlett's of Ybor Strip

                                            By:_____
                                                Name:
                                                Title:


Dated:  June _____, 2015                    Defendant, BZLY, Inc.

                                            By:_____
                                                Name:
                                                Title:


Dated:  June _____, 2015                    Defendant, M.S.B. Land Holdings, Inc.

                                            By:_____
                                                Name:
                                                Title:


Dated:  June _____, 2015                    Defendant, SVC Joint Ventures LLC

23

Dated:  June _____, 2015              By: _____
                                          Brittney Roberts, Plaintiff


Dated:  June _____, 2015              Defendant, J.W. Lee, D/B/A SCARLETT'S
                                      CABARET D/B/A SCARLETT'S OF
                                      HALLANDALE, FL

                                      By:_____
                                          Name: _____
                                          Title: _____


Dated:  June _____, 2015              Defendant, J.W. Lee Properties, LLC

                                      By:_____
                                          Name: _____
                                          Title: _____


Dated:  June _____, 2015              Defendant, Ybor Operations, L.L.C. D/B/A
                                      Scarlett's of Ybor Strip

                                      By:_____
                                          Name: William Beasley
                                          Title: Secretary


Dated:  June _____, 2015              Defendant, BZLY, Inc.

                                      By:_____
                                          Name: William Beasley
                                          Title: Secretary


Dated:  June _____, 2015              Defendant, M.S.B. Land Holdings, Inc.

                                      By:_____
                                          Name: _____
                                          Title: _____

23

Dated: June _____, 2015   Defendant, SVC Joint Ventures LLC

By:_____
  Name:
  Title:

Dated: June _____, 2015   Defendant, Benore Ventures, Inc.

By:_____
  Name:
  Title:

Dated: June _____, 2015   Defendant, SB Productions, Inc.

By:_____
  Name:
  Title:

Dated: June _____, 2015   Defendant, J.B. Monroe, Inc.

By:_____
  Name:
  Title:

Dated: June _____, 2015   Defendant, Brandon Samuels

By:_____
  Name:
  Title:

Dated: June _____, 2015   By:_____
        Brandon Samuels, Defendant

24

Dated:  June _____, 2015    By: _____
                 John Blanke, Defendant

Dated:  June _____, 2015    By: _____
                 William Beasley, Defendant

Dated: June _____, 2015                 By: _____
                                            John Blanke, Defendant


Dated: June _____, 2015                 By: _____
                                            William Beasley, Defendant

# EXHIBIT C

UNITED STATES DISTRICT COURT -- SOUTHERN DISTRICT OF FLORIDA

# Notice of Settlement of Class Action

*If you performed at Scarlett's of Hallandale, Scarlett's of Ybor Strip or Scarlett's of Toledo as an Exotic Dancer, a Proposed Class Action Settlement May Affect Your Rights.  You May Be Entitled to Cash Payments Over a 24-Month Period.*

*A United States Federal Court has authorized this Notice.*
*It is not from a lawyer.  You are not being sued.*

You are receiving this notice because there is a proposed settlement of a class and collective action brought by Adonay Encarnacion, Andrea Wong, Rachel Stephenson, and Brittney Roberts (referred to as the "Plaintiffs") against J.W. Lee, Inc. (which does business as Scarlett's of Hallandale), Ybor Operations, L.C. (which does business as Scarlett's of Ybor Strip), J.B. Monroe, Inc. (which does business as Scarlett's of Toledo) and other entities and individuals (referred to as the "Defendants"). The lawsuit is captioned *Encarnacion, et al. v. J.W. Lee, Inc., et al.*, Case No. 14-61927-CIV-DIMITROULEAS, and is pending before Judge Dimitrouleas in the United States District Court for the Southern District of Florida.

In the lawsuit, the Plaintiffs have brought their claims on behalf of themselves and all other exotic dancers who performed at Scarlett's of Hallandale, Scarlett's of Ybor Strip and Scarlett's of Toledo ("collectively the "Scarlett's Nightclubs").  Nine additional exotic dancers have joined the lawsuit.  The lawsuit alleges that the Defendants failed to pay minimum wages and overtime to the exotic dancers performing at the nightclubs.  The Defendants have denied and continue to deny all of the allegations in Plaintiffs' Complaint.  The Court has not made a determination on the merits of Plaintiffs' claims or the Defendants' defenses.

Rather than continue to litigate these matters, the parties have reached a settlement.  The potential monetary value of the settlement is $6.0 million dollars.  Pursuant to the terms of the settlement, exotic dancers who performed at Scarlett's of Hallandale, and/or Scarlett's of Ybor Strip between December 9, 2009 and February 2, 2015 and exotic dancers who performed at Scarlett's of Toledo between December 9, 2011 and February 2, 2015 (the "Class") may receive cash payments over a 24-month period, depending on the amount of time during which they performed at one or more of the Scarlett's Nightclubs.

The Court has preliminarily approved the settlement.  However, settlement benefits cannot be distributed until after the Court grants final approval of the settlement and after any possible appeals are resolved.

The Court has certified the Class for settlement purposes as being:

> All exotic dancers who performed for at least one week at Scarlett's of Hallandale, and/or Scarlett's of Ybor Strip at any time from December 4, 2009 to February 2,

1

2015 and/or all exotic dancers who performed for at least one week at Scarlett's of Toledo at any time from December 4, 2011 to February 2, 2015.

The time periods set forth in this definition are referred to as the "Class Period."

Your legal rights are affected by the Court's decision to certify a class, and you have a <u>choice</u> to make now. Please read the following pages carefully, including the *Summary of Your Rights and Choices* and the *Settlement Benefits and My Options* sections, which are below.

## Summary of Your Rights and Choices:

*Your Legal Rights Are Affected Even If You Do Not Act.*

*Read This Notice Carefully.*

| You May: | Effect of Choosing the Option: | Due Date: |
|---|---|---|
| **Exclude Yourself** | You can elect to get out of the Class and keep your right to sue the Scarlett's Nightclubs on your own in regard to the claims in the lawsuit. To exclude yourself from participating in the Settlement, you **must** complete and return the attached Opt Out Form. | <u>Postmarked by TBD</u> |
| **File Objection** | If you do not exclude yourself, you can remain a Class member and still write to the Court about why you disagree with the settlement. | <u>Postmarked by TBD</u> |
| **Appear at A Hearing** | If you do not exclude yourself, you can remain a Class member and write to the Court about why you disagree with the settlement. | The Notice of Appearance Must be postmarked on or before TBD ,2015 to appear at the final hearing on TBD at the Federal Courthouse in Fort Lauderdale, Florida. |
| **Do Nothing** | You **will** be bound by the terms of the Settlement and give up your right to sue the Scarlett's Nightclub and all other Defendants yourself on these | |

2

| | claims later, but receive no money. | |
|---|---|---|
| **Claim Your Settlement Benefit** | If you wish to be included in the class Settlement, you may receive a cash payment by mailing in a completed Claim Form as instructed below. | Postmarked by TBD |

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION

1. Why did I get this Notice? .................................................................X
2. What is a Class Action? ...................................................................X
3. What is the Class Action about? .........................................................X
4. Who are the Class Members? .............................................................X
5. Why is the Class Action Being Settled? ................................................X

REMAINING IN THE CLASS

6. What happens if I do nothing and stay in the Class? ...............................X
7. If I remain in the Class, what am I giving up? .......................................X

SETTLEMENT BENEFITS AND MY OPTIONS

8. What are my two Settlement Benefits? ..................................................X
9. What are my two options to receive Settlement Benefits? ........................X

EXCLUDING YOURSELF FROM THE CLASS

10. Why would I want to be excluded from the Class?...............................X
11. How do I exclude myself from the Class? ...........................................X
12. How Do I Object to the Settlement? ...................................................X

THE LAWYERS REPRESENTING YOU

13. Do I have a lawyer representing my interests in this case? .......................................X
14. How Will the Lawyers be Paid? ..........................................................................X
15. How Will the Class Representatives be Paid? ........................................................X

THE COURT'S FINAL APPROVAL HEARING

16. When and Where will the Court Decide Whether to Approve the Settlement? ........X
17. Do I have to attend the Hearing? .........................................................................X
18. Can I have my lawyer appear at the Final Approval Hearing to tell the Court
    about my opinions regarding the Settlement? ........................................................X

GETTING MORE INFORMATION

19. Where do I obtain more information? ....................................................................X

# BASIC INFORMATION

### 1.   Why did I get this Notice?

The Court directed this Notice be sent to you because you may have performed as an exotic dancer at one or more of the Scarlett's Nightclubs during the Class Period, and therefore may be entitled to benefits pursuant to the terms of the settlement.

If you are a member of the Class, the proposed settlement will affect your legal rights. Therefore, it is important that you read this notice carefully.  You have choices to make before the Court decides whether or not to approve the settlement.

### 2.   What is a Class Action?

In a class action lawsuit, one or more people called "Representative Plaintiffs" sue one or more defendants on behalf of other people who may have similar claims.  All these people together are a "class" or are "class members."  The court can determine whether it will allow a lawsuit to proceed as a class action.  If it does, a trial then decides the lawsuit for everyone in the class or the parties may settle without a trial.

In a class action, one court resolves the common issues for everyone in the Class - except for those people who can choose to exclude themselves from the Class.

### 3.   What is this Class Action about?

4

The lawsuit alleges that the Defendants, including Scarlett's of Hallandale, Scarlett's of Ybor Strip and Scarlett's of Toledo, misclassified exotic dancers as non-employees and as a result of this misclassification the exotic dancers were not paid minimum wages and overtime compensation required under federal, Florida and Ohio wage and hour laws. The Defendants have denied these allegations.

The Court has preliminarily approved the certification of the class of exotic dancers who performed at any of the Scarlett's Nightclubs during the Class Period, concluding that the question of whether the Defendants are liable under the Fair Labor Standard Act ("FLSA") or state wage laws for the purported misclassification of exotic dancers are common issues deserving class action treatment.

Plaintiffs and Defendants have reached a settlement in this case. The Court has not ruled on the merits of Plaintiffs' claims or on Defendants' defenses. Rather, the Court has simply certified a settlement class and tentatively approved the proposed settlement.

### 4.   Who are the Class Members?

In order to determine if you are entitled to benefits from this settlement, you first must determine if you are a Class Member, defined as:

> **All exotic dancers who performed at for least one week at Scarlett's of Hallandale and/or Scarlett's of Ybor Strip Nightclubs during the period December 4, 2009 through February 2, 2015.**
>
> **And/or**
>
> **All exotic dancers who performed at least one week at Scarlett's of Toledo Nightclub during the period of December 4, 2011 through February 2, 2015.**

If you fall within definition of a Class Member, you may qualify for cash payments pursuant to the criteria set forth in the settlement agreement. If you are not a Class Member as described above, you do not qualify for settlement benefits.

### 5.   Why is the Class Action Being Settled?

This matter is being settled because both sides have agreed to a settlement of this case in order to avoid the costs and risks of trial.

## SETTLEMENT BENFITS AND MY OPTIONS

## 6. What are the Settlement Benefits?

The settlement, if approved, provides monetary benefits to the Class. As part of the settlement, the Defendants have agreed to pay a maximum of $6,000,000.00, which shall be distributed among the Class Members as set forth in the following section of this notice. As part of the settlement, Defendants will pay Class Counsel and certain administrative costs of the settlement.

Each Class Member that submits their claim form will receive a specified share of the settlement over a 24 month period, as set forth below. Therefore, it is very important that you tell us your new address and other contact information if your address or other contact information changes at any time during the payment period.

## 7. What are my options to receive Settlement benefits?

If you wish to receive payments from the settlement funds, **you must** file the Claim Form that is included with this notice. Only one claim form is needed, and only one form will be accepted.

Each exotic dancer electing to receive payments will be paid based on the amount of time she performed at one or more of the Scarlett's Nightclubs during the Class Period, as follows:

Tier 1: $102.77 for any Qualified Class member who Performed less than one month.

Tier 2: $205.54 for any Qualified Class member who Performed more than one month up to and including two months.

Tier 3: $308.31 for any Qualified Class member who Performed more than two months up to and including three months.

Tier 4: $411.08 for any Qualified Class member who Performed more than three months up to and including four months.

Tier 5: $513.85 for any Qualified Class member who Performed more than four months up to and including five months.

Tier 6: $616.62 for any Qualified Class member who Performed more than five months up to and including six months.

Tier 7:  $719.39 for any Qualified Class member who Performed more than six months up to and including seven months.

Tier 8:  $822.15 for any Qualified Class member who Performed more than seven months up to and including eight months.

Tier 9:  $924.92 for any Qualified Class member who Performed more than eight months up to and including nine months.

Tier 10:  $1,027.69 for any Qualified Class member who Performed more than nine months up to and including ten months.

Tier 11:  $1,130.46 for any Qualified Class member who Performed more than ten months up to and including eleven months.

Tier 12:  $1,233.23 for any Qualified Class member who Performed more than eleven months up to and including twelve months.

Tier 13:  $1,336.00 for any Qualified Class member who Performed more than twelve months up to and including thirteen months.

Tier 14:  $1,438.77 for any Qualified Class member who Performed more than thirteen months up to and including fourteen months.

Tier 15:  $1,541.54 for any Qualified Class member who Performed more than fourteen months up to and including fifteen months.

Tier 16:  $1,644.31 for any Qualified Class member who Performed more than fifteen months up to and including sixteen months.

Tier 17:  $1,747.08 for any Qualified Class member who Performed more than sixteen months up to and including seventeen months.

Tier 18:  $1,849.85 for any Qualified Class member who Performed more than seventeen months up to and including eighteen months.

Tier 19:  $1,952.62 for any Qualified Class member who Performed more than eighteen months up to and including nineteen months.

Tier 20:  $2,055.39 for any Qualified Class member who Performed more than nineteen months up to and including twenty months.

Tier 21:  $2,158.16 for any Qualified Class member who Performed more than twenty  months up to and including twenty-one months.

Tier 22:  $2,260.92 for any Qualified Class member who Performed more than twenty-one  months up to and including twenty-two months.

Tier 23:  $2,363.69 for any Qualified Class member who Performed more than twenty-two  months up to and including twenty-three months.

Tier 24:  $2,466.46 for any Qualified Class member who Performed more than twenty-three months up to and including twenty-four months.

Tier 25:  $2,569.23 for any Qualified Class member who Performed more than twenty-four  months up to and including twenty-five months.

Tier 26:  $2,672.00 for any Qualified Class member who Performed more than twenty-five  months up to and including twenty-six months.

Tier 27:  $2,774.77 for any Qualified Class member who Performed more than twenty-six  months up to and including twenty-seven months.

Tier 28:  $2,877.54 for any Qualified Class member who Performed more than twenty-seven  months up to and including twenty-eight months.

Tier 29:  $2,980.31 for any Qualified Class member who Performed more than twenty-eight  months up to and including twenty-nine months.

Tier 30:  $3,083.08 for any Qualified Class member who Performed more than twenty-nine  months up to and including thirty months.

Tier 31:  $3,185.85 for any Qualified Class member who Performed more than thirty  months up to and including thirty-one months.

Tier 32:  $3,288.62 for any Qualified Class member who Performed more than thirty-one  months up to and including thirty-two months.

Tier 33:  $3,391.39 for any Qualified Class member who Performed more than thirty-two  months up to and including thirty-three months.

Tier 34:  $3,494.16 for any Qualified Class member who Performed more than thirty-three months up to and including thirty-four months.

Tier 35:  $3,596.93 for any Qualified Class member who Performed more than thirty-four  months up to and including thirty-five months.

Tier 36:  $3,699.69 for any Qualified Class member who Performed more than thirty-five  months up to and including thirty-six months.

Tier 37:  $3,802.46 for any Qualified Class member who Performed more than thirty-six  months up to and including thirty-seven months.

Tier 38:  $3,905.23 for any Qualified Class member who Performed more than thirty-seven  months up to and including thirty-eight months.

Tier 39:  $4,008.00 for any Qualified Class member who Performed more than thirty-eight  months up to and including thirty-nine months.

Tier 40:  $4,110.77 for any Qualified Class member who Performed more than thirty-nine  months up to and including forty months.

Tier 41:  $4,213.54 for any Qualified Class member who Performed more than forty  months up to and including forty-one months.

Tier 42:  $4,316.31 for any Qualified Class member who Performed more than forty-one  months up to and including forty-two months.

Tier 43:  $4,419.08 for any Qualified Class member who Performed more than forty-two  months up to and including forty-three months.

Tier 44:  $4,521.85 for any Qualified Class member who Performed more than forty-three months up to and including forty-four months.

Tier 45:  $4,624.62 for any Qualified Class member who Performed more than forty-four  months up to and including forty-five months.

Tier 46:  $4,727.39 for any Qualified Class member who Performed more than forty-five  months up to and including forty-six months.

Tier 47:  $4,830.16 for any Qualified Class member who Performed more than forty-six  months up to and including forty-seven months.

Tier 48:  $4,932.93 for any Qualified Class member who Performed more than forty-seven  months up to and including forty-eight months.

Tier 49:  $5,035.70 for any Qualified Class member who Performed more than forty-eight  months up to and including forty-nine months.

Tier 50:  $5,138.47 for any Qualified Class member who Performed more than forty-nine  months up to and including fifty months.

Tier 51:  $5,241.23 for any Qualified Class member who Performed more than fifty  months up to and including fifty-one months.

Tier 52:  $5,344.00 for any Qualified Class member who Performed more than fifty-one  months up to and including fifty-two months.

Tier 53:  $5,446.77 for any Qualified Class member who Performed more than fifty-two  months up to and including fifty-three months.

Tier 54:  $5,549.54 for any Qualified Class member who Performed more than fifty-three months up to and including fifty-four months.

Tier 55:  $5,652.31 for any Qualified Class member who Performed more than fifty-four  months up to and including fifty-five months.

Tier 56:  $5,755.08 for any Qualified Class member who Performed more than fifty-five  months up to and including fifty-six months.

Tier 57:  $5,857.85 for any Qualified Class member who Performed more than fifty-six  months up to and including fifty-seven months.

Tier 58:  $5,960.62 for any Qualified Class member who Performed more than fifty-seven  months up to and including fifty-eight months.

Tier 59:  $6,063.39 for any Qualified Class member who Performed more than fifty-eight months up to and including fifty-nine months.

Tier 60:  $6,166.16 for any Qualified Class member who Performed more than fifty-nine  months up to and including sixty months.

Tier 61:  $6,268.93 for any Qualified Class member who Performed more than sixty   months up to and including sixty-one months.

Tier 62:  $6,371.70 for any Qualified Class member who Performed more than sixty-one  months up to and including sixty-two months.

The total amount due to each exotic dancer will be paid over 24 months in 8 equal quarterly payments following the Court's final approval of the settlement and conclusion of any appeals.

**YOU MUST SUBMIT A TIMELY CLAIM FORM TO RECEIVE CASH PAYMENTS.  If you select to received such payments, you will receive an IRS Form1099-MISC for the amount of the cash payments made to you if applicable in accordance with IRS regulations.  You will be responsible for the payment of any federal and state taxes due as a result of the cash payments.**

10

Please read the Claim Form for more detailed instructions on how to submit a claim for cash payments.

**Summary:** To summarize, if you wish to remain in the Class and receive cash payments, then you **MUST** fill in the Claim Form and submit it to the Claims Administrator.

**You should seek the advice of a tax professional if you have any questions about the tax implication of this settlement.**

## REMAINING IN THE CLASS

### 8.   What happens if I do nothing and stay in the Class?

If you do nothing, you will be included in the Class, and you will be bound by the terms and conditions of the settlement.  However, you will not receive monetary compensation unless you elect to receive cash benefits as described herein.  Please read the Settlement Benefits and My Options section.

### 9.   If I remain in the Class, what am I giving up?

If the Court approves the settlement, you will have released all of the Scarlett's Nightclubs and all other Defendants from any further state law claims related to the matters raised in this lawsuit, and you can't ever sue any of the Defendants about these issues based upon conduct that occurred prior to the effective date of the settlement. Should you have any questions about the scope of the release, you may contact Class Counsel.

## EXCLUDING YOURSELF FROM THE CLASS

### 10.   Why would I want to be excluded from the Class?

You do not have to take part in the settlement or be a member of the Class.  You can exclude yourself from the settlement by "opting out."  If you exclude yourself, you will not get the benefits of the settlement.  Any Court orders will not apply to you. By excluding yourself, you keep any right to file or proceed with a lawsuit against Defendants regarding the subject of the settlement.

If you have sued any of the Defendants and want to continue with your suit, you need to personally ask to be excluded from the Class.  If you exclude yourself, you will not be legally bound by the Court's judgments in this case.  Similarly, if you wish to start your own lawsuit against any of the Defendants, you must exclude yourself from the Class.

11

Should you do so, you will have to hire and pay your own lawyer for that lawsuit and prove your own claims. If you do exclude yourself so you can start or continue your own lawsuit, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

## 11. How do I exclude myself from the Class?

If you are a member of the Class and wish to be excluded from the settlement, you must complete and personally sign the Opt-Out Form included with this notice, or send a written request, signed by you personally, which includes all of the following:

- Your legal name, current address and telephone number;
- The name and number of the lawsuit: *Encarnacion, et al. v J.W. Lee, Inc. et al.*, Case No. 14-61927-CIV-DIMITROULEAS; and
- A statement, signed personally by you, clearly stating that you want to be excluded from the Class.

All exclusion request must be mailed first class United States mail, **postmarked on or before [TBD 2015], to:**

> Settlement Administrator
> In re: Scarlett's Nightclub Litigation
> P.O. Box xxx
> City, State Zip Code

**Any request for exclusion must contain your personal signature, which shall be an indication to the Court that you wish to be excluded from the Class.** You cannot exclude yourself by phone or email. Further, if you do not follow these instructions properly or if you also submit a claim form, you will lose your right to exclude yourself. There are no exceptions.

**UNLESS YOU PROPERLY SIGN AND TIMELY MAIL AN OPT OUT FORM OR REQUEST FOR EXCLUSION, YOU WILL BE BOUND BY ANY JUDGMENT IN THIS CASE AND YOU WILL NOT BE PERMITTED TO PURSUE ANY PENDING OR FUTURE LITIGATION AGAINST SCARLETT'S NIGHTCLUBS REGARDING MATTERS RESOLVED IN THIS SETTLEMENT. SHOULD YOU WISH TO EXCLUDE YOURSELF FROM THIS SETTLEMENT, IT IS IMPORTANT THAT YOU FOLLOW THESE INSTRUCTIONS CAREFULLY.**

## 12. How do I Object to the Settlement?

If you don't like the settlement, you may file an objection to it. This means you can tell the Court that you disagree with the settlement or some of its terms. For example, you

can say you don't think the settlement is fair or adequate, or that you object to the amount of the attorneys' fees, costs, or expenses. The Court will consider your views but may approve the settlement anyway.

You can object only if you do not exclude yourself from the Class (i.e, you do not opt out).  If you opt out, or exclude yourself you cannot object.

To object, either you or a lawyer of your own choosing must prepare an objection that contains all of the following:

1.   The name and title of the lawsuit: *Encarnacion, et al. v J.W. Lee, Inc. et al.*, Case No. 14-61927-CIV-DIMITROULEAS;

2.   A written statement of objections clearly specifying the grounds or reason for each objection;

3.   A statement of whether or not you or your lawyer will ask to appear at the Final Approval Hearing to talk about your objections, and, if so, how long you will need to present your objections; and

4.   Copies of documents (if any) you or your lawyer will present at the Final Approval Hearing.

Your objection must be filed with the Court and served on Class Counsel and Counsel for the Defendants **no later than _____, 2015.**  Any objection postmarked after that date will be rejected.

**To File an Objection with the Court, Mail Objection to:**

Clerk of the Court
United States District Court
Southern District of Florida, Miami Division
299 East Broward Boulevard #108
Fort Lauderdale, FL 33301

**To Serve Class Counsel, Mail Objection to:**

Andrew Frisch
Morgan & Morgan, P.A.
600 N. Pine Island Road, Suite 400
Plantation, FL 33324

**To Serve Defendants' Counsel, Mail Objection to:**

Objections postmarked after _____ will be untimely and not be considered by the Court.

# THE LAWYERS REPRESENTING YOU

13.  Do I have a lawyer representing my interests in this case?

Yes.  The Court has appointed law firms to represent you and other Class Members. These lawyers are referred to as Class Counsel, and include:

| | |
|---|---|
| Andrew Frisch | Morgan & Morgan, P.A.<br>600 N. Pine Island Road, Suite 400 Plantation, FL 33324<br>Telephone:     (954) WORKERS<br>Facsimile:      (954) 327-3013<br>Email: afrisch@forthepeople.com<br>Website: http://www.forthepeople.com/attorneys/andrew-r-frisch |
| Galvin B. Kennedy | KENNEDY HODGES, L.L.P.<br><br>711 W. Alabama Street<br><br>Houston, TX  77006<br><br>Telephone:  (713) 523-0001<br>Facsimile: 713-523-1116<br>Email: gkennedy@kennedyhodges.com<br>Website: http://www.kennedyhodges.com/bio/galvin-kennedy.cfm |
| Beatriz Sosa-Morris | KENNEDY HODGES, L.L.P.<br>711 W. Alabama Street<br>Houston, TX  77006<br>Telephone:  (713) 523-0001<br>Facsimile: 713-523-1116<br>Email: bsosamorris@kennedyhodges.com<br>Website: http://www.kennedyhodges.com/bio/beatriz-sosa-morris.cfm |

You will not be charged directly by Class Counsel for their lawyers' services, but they will ask the Court to award them a fee from the Settlement.  More information about Class Counsel and their experiences is available at the websites listed above.

If you so desire, you may hire your own attorney.  However, you will be responsible for that attorney's fees and expenses.

## 14. How Will the Lawyers be Paid?

The lawyers who represent the Class will ask the Court for reimbursement out of their pocket expenses and an award of attorneys' fees based on their work in this litigation. The amount of attorneys' fees to be awarded will be determined solely by the Court. Under the terms of the settlement agreement and subject to Court approval, Class Counsel can petition the Court for a fee of up to $1,660,450.00.

Attorney fees and costs payable to Class Counsel have been factored into the value of the settlement.  In particular, the $6,000,000 Defendants have agreed to pay to the Class members will be reduced by the amount of attorney's fees and costs awarded to Class Counsel.

The settlement agreement provides further details on attorney fees payable to Class Counsel, and a copy of the settlement agreement may be obtained either from Class Counsel or the Court.

## 15. How Will the Class Representatives be Paid?

To compensate the Class Representatives (Adonay Encarnacion, Andrea Wong, Rachel Stephenson, and Brittney Roberts) and the other exotic dancers who have already joined the litigation for their work in this litigation on behalf of the Class and for the particular claims they may have, these named plaintiffs will receive a service award.  Class Counsel will apply to the Court to receive a $15,000.00 service payment for Adonay Encarnacion, $2,000 for Andrea Wong, Rachel Stephenson, and four others who have participated in the case to date, and $750 for Brittney Roberts.  If approved, the Defendants shall pay these awards as part of the settlement.

## THE COURT'S FINAL APPROVAL HEARING

## 16. When and Where will the Court Decide Whether to Approve the Settlement?

The Court will hold a Final Approval Hearing at _____, 2015.  At this hearing, the Court will consider whether or not the settlement is fair, reasonable, and adequate.  If there are written objections, the Court will consider them, and the Court will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether or not to approve the settlement.

The Hearing will be held at: United States District Court for the Southern District of Florida, 299 East Broward Boulevard, Rm. 205B, Fort Lauderdale, FL 33301, before Judge William P. Dimitrouleas.

**17. Do I have to attend the Hearing?**

No.  Class Counsel will answer questions the Court may have, but you may appear at your own expense.  If you send a written objection, the Court will consider it.  You may also pay your own lawyer to attend the hearing if you desire.

**18. Can my lawyer appear at the Final Approval Hearing to tell the Court about my opinions regarding the Settlement?**

Yes.  As long as you don't exclude yourself, you have the right to appear through counsel at the Final Approval Hearing, so long as your Attorney's Notice of Appearance and any written objections you may have are postmarked or received by the Court, Defendants, and Class Counsel by TBD.  If you do this, however, the cost of having your lawyer appear will be at your own expense.

**19. Where do I obtain more information?**

If you want additional information, you may call or write Class Counsel at the address and phone number listed above.

In addition, Class Counsel has created a specific website containing relevant documents including the operative class action complaint and complete settlement agreement. www.(INSERT WEB ADDRESS HERE).com

The specific terms of the settlement are outlined in the legal documents that have been filed with the Court.  You can look at and copy these documents at any time during regular office hours at the Office of the Clerk of Court for the United States District Court for the Southern District of Florida, 299 East Broward Boulevard #108 Fort Lauderdale, FL 33301.  If you have a PACER account, you may view the documents on the Court's CM/ECF website.

**[date]**

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| ADONAY ENCARNACION, ANDREA WONG, RACHEL STEPHENSON, and BRITTNEY ROBERTS, Individually, and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 14-61927 |
| v. | § § | JURY TRIAL DEMANDED |
| J.W. LEE, INC., D/B/A SCARLETT'S CABARET D/B/A SCARLETT'S OF HALLANDALE, FL; J.W. LEE PROPERTIES, LLC; YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP; BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; J.B. MONROE, INC., BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY, | § § § § § § § § § § § § § § § § | |
| Defendants. | | |

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

The above-entitled matter came before the Court on Plaintiffs' Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Settlement Procedure ("Motion for Preliminary Approval"). Defendants agree, for settlement purposes only, not to oppose the motion.

1

I.    **Preliminary Approval of the Settlement**

1.    Based upon the Court's review of the Plaintiffs' Memorandum of Law is Support of the Motion for Preliminary Approval, the Declaration of Andrew R. Frisch ("Frisch Declaration"), and all other papers submitted in connection with Plaintiffs' Motion for Preliminary Approval, the Court grants preliminary approval of the settlement memorialized in the Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement") between Plaintiffs, Plaintiffs, ADONAY ENCARNACION ("Encarnacion"), ANDREA WONG ("Wong"), RACHEL STEPHENSON ("Stephenson"), and BRITTNEY ROBERTS ("Roberts") (collectively "Plaintiffs"), and Defendants, J.W. LEE, INC., D/B/A SCARLETT'S OF HALLANDALE, FL;   J.W. LEE PROPERTIES, LLC;   YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP;   BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; J.B. MONROE, INC., BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY (collectively "Defendants" or "Scarlett's"), and "so orders" all of its terms.

2.    District courts are given discretion to certify a class under Rule 23 of the Federal Rules of Civil Procedure. *Cooper v. S. Co.*, 390 F.3d 695, 711 (11th Cir. 2004).  In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks.  *See Clark v. Ecolab, Inc.,* 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009); *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir.1977)("Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.").

3.   Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process.  It simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input.  *Newberg on Class Actions* at § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies ... and appears to fall within the range of possible approval, the court should direct that" notice issue and should schedule a final approval hearing.") (citation omitted.).

4.   Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of the written submissions.  *Clark,* 2009 WL 6615729, at *3 (citations omitted).   "A proposed settlement should be preliminarily approved if it is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement."  *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *7 (S.D. Fla. May 14, 2007)(internal quotation omitted).

5.   Here, the Court concludes that the proposed Settlement Agreement is within the range of possible final settlement approval, such that notice to the class is appropriate.

6.   The Court finds that the Settlement Agreement is the result of extensive, arms-length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions.  "Clearly, [such] settlements, especially in class actions, are to be encouraged."  *Florida Power Corp. v. Granlund*, 82 F.R.D. 690, 693 (M.D. Fla. 1979).

7.   The assistance of an experienced wage and hour class action mediator, Adrienne Fechter, reinforces that the Settlement Agreement is non-collusive.   *See Pierre-Val v. Buccaneers Ltd. P'ship*, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015).

3

## II.     Conditional Certification of the Proposed Rule 23 Settlement Class

8.  Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 790-92 (3d Cir. 1995) (discussing the advantages of certifying class for settlement purposes).

9.  For settlement purposes only, the Court provisionally certifies the following class under Federal Rule of Civil Procedure 23(e), without prejudice to the parties if the Court does not finally approve the settlement or if the settlement otherwise does not take effect ("Settlement Class"):

> **All Dancers who performed for at least one week at Scarlett's of Hallandale or Scarlett's of Ybor Strip at any time from December 4, 2009 to February 2, 2015 and/or Scarlett's of Ohio at any time from December 4, 2012 to February 2, 2015.**

10. For settlement purposes only, Plaintiff meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

11. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 4,709 Class Members and thus, joinder is impracticable.  *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir.1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

12. Plaintiffs satisfy Federal Rule of Civil 23(a)(2) because they and the class members share common issues of fact and law, including whether Defendants failed to pay proper minimum wages in violation of federal and state wage and hour laws.  *See Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) ("[C]ommonality requires that there be at

4

least one issue whose resolution will affect all or a significant number of the putative class members.") (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same).

13. Plaintiffs' claims are typical of the Settlement Class for purposes of this settlement, because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

14. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the Settlement Class, and Plaintiffs have retained competent counsel to represent them and the Settlement Class. Class Counsel here regularly engages in wage and hour class litigation and other complex litigation similar to the present action, and have dedicated substantial resources to the prosecution of the action. Moreover, the Plaintiffs and Class Counsel have vigorously and competently represented the Settlement Class Members' interests in the Action. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

15. Therefore, Plaintiffs and Plaintiffs' Counsel, Andrew R. Frisch of Morgan & Morgan, P.A. ("M&M"), and Galvin Kennedy and Beatriz Sosa-Morris, of Kennedy Hodges, LLP ("KH") meet Rule 23(a)(4)'s adequacy requirement.

16. Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal

and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 4,709 Settlement Class Members in a single, coordinated proceeding is superior to 4,709 individual lawsuits or arbitrations addressing the same legal and factual issues. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted); *see also In re Checking Account Overdraft Litigation,* 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

**III.    Appointment of Plaintiffs' Counsel as Class Counsel**

17. For settlement purposes only, the Court appoints Andrew R. Frisch and M&M and Galvin Kennedy and Beatriz Sosa-Morris and KH ("Plaintiffs' Counsel") as Class Counsel because they meet all of the requirements of Federal Rule of Civil Procedure 23(g).

18. Plaintiffs' Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.

19. Frisch, M&M, Kennedy, Sosa-Morris, and KH have significant experience in litigating and settling wage and hour class and collective actions.  *See Pittman vs. Comfort Systems USA (Southeast), Inc.,* 8:12-cv-2142-30TGW (M.D. Fla. 2013); *Reyes v. AT&T Mobility Services, LLC,* 1:10-cv-20837-MGC, D.E. 191 (S.D. Fla. Dec. 20, 2012) (appointing Frisch as class counsel); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. August 6, 2012) ("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Aponte v. Comprehensive Health Management, Inc.*, 2011 WL 2207586, at *12 (S.D.N.Y. June 2, 2011)(finding that Morgan & Morgan "are qualified, experienced, and capable of acting as lead counsel" in wage and hour class actions).

20. The work that Plaintiffs' Counsel has performed both in litigating and settling this

6

case demonstrates their skill and commitment to representing the class's interests.

**IV.    Notice**

21. The Court approves the Proposed Notice of Proposed Settlement of Class Action , which is attached as Exhibit C to the Frisch Declaration, and directs its distribution to the Class.

22. The content of the Rule 23 Notice fully complies with due process and Federal Rule of Civil Procedure 23.

23.    Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

24.    The Rule 23 Notice satisfies each of these requirements and adequately puts Class Members on notice of the proposed settlement. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The Rule 23 Notice is also appropriate because it describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.

**V.    Class Action Settlement Procedure**

25.    The Court hereby adopts the settlement procedure:

a.     The Court appoints Andrew R. Frisch and Morgan and Morgan, P.A., and Galvin Kennedy, Beatriz Sosa-Morris, and Kennedy Hodges, LLP,  as Class Counsel.

b.     Within 14 calendar days of the date of this Order, Defendants shall provide the Claims Administrator the names and contact information for Class Members pursuant to ¶ 5.1 of the Settlement Agreement;

c.     Within 14 days thereafter, the Claims Administrator shall mail the Notices to Class Members;

d.     Class Members will have 60 days from the date the Notice is mailed to opt out of the settlement or object to it;

e.     Plaintiff will file a Motion for Final Approval of Settlement no later than 14 days before the fairness hearing;

f.     The Court will hold a final fairness hearing on _____ at _____ a.m./p.m. at the United States District Court for the Southern District of Florida, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301 in Courtroom 205B before Judge William P. Dimitrouleas;

g.     If the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be the day after the deadline for taking an appeal has passed;

h.     If rehearing, reconsideration or appellate review is sought, the "Effective Date" shall be the day after all appeals are resolved in favor of final approval;

i.     Defendants will fund the settlement, based on the Effective Date, by remitting Class Counsel's attorneys' fees and costs, the amount needed to pay valid claims, plus the other specified costs and expenses, including Service Payments, pursuant to the schedule outlined in sections 3.2, 3.3, 3.4, and 3.5 of the Settlement Agreement;

j.     The Claims Administrator will disburse settlement checks to the Class Members, Class Counsel's attorneys' fees and expenses to Class Counsel, and the Service Awards pursuant to the schedule outlined in sections 3.2, 3.3, 3.4, and 3.5 of the Settlement Agreement; and

k.      The parties shall abide by all terms of the Settlement Agreement.

l.     If the Court does not finally approve the Settlement Agreement or the Settlement Agreement otherwise does not become effective, this Order

shall be void and of no force and effect, and cannot be used against Defendants in future proceedings; the Settlement Agreement shall likewise be of no force and effect and shall not constitute any admission by any Defendant; and the parties shall be restored to their respective positions existing immediately prior to the Court's entry of this Order, such that Defendants will not have waived any procedural or substantive defenses, including the right to pursue their currently-pending motion to compel arbitration.

It is so ORDERED this ___ day of _____ , 2015.


_____
HONORABLE WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE