UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ADONAY ENCARNACION, ANDREA
WONG, RACHEL STEPHENSON, and
BRITTNEY ROBERTS, Individually, and on
Behalf of All Others Similarly Situated,

CASE NO.: 14-CIV-61927-DIMITROULEAS

     Plaintiff,

vs.

J.W. LEE, INC., D/B/A SCARLETT'S
CABARET D/B/A SCARLETT'S OF
HALLANDALE, FL; et.al.,

     Defendants.

CHRISTINE DEMARIA-DOMINGUEZ, on
behalf of herself and all others similarly
situated,

CASE NO. 15-CIV-61173-DIMITROULEAS

(Consolidated with 14-CIV-61927-
DIMITROULEAS)

     Plaintiff,

vs.

JW LEE, INC., a Florida Corporation d/b/a
SCARLETT'S CABARET, a Florida
corporation,

     Defendant.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF SERVICE AWARDS AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT**

**Submitted by:**

Andrew R. Frisch, Esq.
MORGAN & MORGAN P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013

Galvin B. Kennedy, Esq.
Beatriz Sosa-Morris, Esq.
KENNEDY HODGES, LLP
711 W. Alabama St.
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

*Attorneys for Plaintiffs and the Settlement Class*

# I.   <u>TABLE OF CONTENTS</u>

II.   INTRODUCTION ................................................................................................................. 1

III.   FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 3

   A.   Factual Allegations ...................................................................................................... 3

   B.   Procedural History ....................................................................................................... 4

   C.   Discovery ...................................................................................................................... 7

   D.   Settlement Negotiations and Mediation ....................................................................... 7

IV.   SUMMARY OF THE SETTLEMENT TERMS ................................................................ 8

   A.   The Settlement Fund ..................................................................................................... 8

   B.   Release .......................................................................................................................... 8

   C.   Eligible Class Members ................................................................................................ 9

   D.   Allocation Formula ...................................................................................................... 9

   E.   Service Award.............................................................................................................. 10

V.   SETTLEMENT CLAIMS ADMINISTRATION .............................................................. 11

VI.   ARGUMENT .................................................................................................................... 13

   A.   The Settlement Class Meets the Legal Standard for Class Certification. ................... 13

      1.   Numerosity. ......................................................................................................... 13

      2.   Commonality ....................................................................................................... 14

      3.   Typicality ............................................................................................................ 15

      4.   Adequacy............................................................................................................. 15

      5.   Predominance and Superiority ............................................................................ 16

   B.   The Proposed Settlement is fair, reasonable, and adequate, and should be ................ 16

   approved. ............................................................................................................................ 16

      1.   The Settlement Is Fair, Reasonable, and Adequate............................................. 18

      2.   The Service Awards Are Reasonable and Should Be Awarded........................... 24

   C.   Approval of the FLSA Settlement Is Appropriate Under Federal Law. ..................... 26

VII.   CONCLUSION................................................................................................................. 27

## II. <u>INTRODUCTION</u>

Subject to Court approval, the parties have settled Plaintiffs' claims on a class-wide basis for significant monetary relief of up to $6,000,000.00. The proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the FLSA.[1]  By the instant Motion, Plaintiffs now seek final approval of the Rule 23 Class, final approval of the settlement and approval of the service awards to the named Plaintiffs, Adonay Encarnacion, Andrea Wong, Rachel Stephenson, Brittany Roberts, and opt-in Plaintiffs Valeria Casillas, Marissa Gall, Roberta Inserra, and Patricia Kugmeh in accordance with section 3.4 of the Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement").[2]

The Parties' settlement of up to six million and 00/100 dollars ($6,000,000.00) satisfies all of the criteria for final approval.  Thus, Plaintiffs respectfully requests an order: (1) finally approving the Settlement as fair, adequate and reasonable; (2) certifying for settlement purposes only the Class[3] pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e) and the collective action pursuant to the FLSA; (3) appointing Adonay Encarnacion, Andrea Wong, Rachel Stephenson, and Brittany Roberts as class representatives for this Settlement ("Settlement

---

[1] While all Class Members who were mailed notice and have not opted out of the class settlement will be deemed to have released their Florida state law claims, only those Class Members who have affirmatively opted in and/or filed a claim ("Qualified Class Members") will be deemed to have waived their FLSA claims.  Those Class Members who have neither opted in to the case nor submitted a claim will not be deemed to have waived their FLSA claims.

[2] Unless otherwise defined in the motion, defined terms as used herein are intended to have the same meaning as in the Settlement Agreement.

[3] "Class" means all dancers who performed for at least one week at Scarlett's of Hallandale or Scarlett's of Ybor Strip at any time from December 4, 2009 to February 2, 2015 and/or Scarlett's of Ohio at any time from December 4, 2011 to February 2, 2015.  D.E. 75, p. 3 (Joint Motion to Correct Scrivener's Error and Modify Settlement Agreement, Class Notice and Order Preliminarily Approving Settlement); D.E. 76 (Order granting such Motion).

Class Representatives"); (4) appointing as Class Counsel Andrew R. Frisch, the firm of Morgan & Morgan, P.A., Galvin B. Kennedy, Beatriz Sosa-Morris and the firm of Kennedy Hodges LLP; (5) approving a service award of $15,000 to Settlement Class Representative Adonay Encarnacion, approving a service award of $2,000 to Settlement Class Representatives Andrea Wong, and Rachel Stephenson and Plaintiffs, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh each, and awarding a service award of $750 to Settlement Class Representative Brittany Roberts; (6) retaining continuing jurisdiction over Plaintiffs, the Class, and Defendants J.W. LEE, INC., D/B/A SCARLETT'S OF HALLANDALE, FL; J.W. LEE PROPERTIES, LLC; YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP;  BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; J.B. MONROE, INC., BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY (collectively "Defendants" or "Scarlett's") to enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; (7) entering Final Judgment dismissing the Action with prejudice; (8) declaring the same binding on all Participating Class Members, and permanently enjoining the Participating Class Members from pursuing any claims that are released by Section 4.1 of the Settlement Agreement; and (9) entering the proposed Order of Final Approval of Settlement.[4]

On June 29, 2015, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to Class Members. *See* D.E. 65. The Participating Class Members have now been notified of the terms of the settlement and their right to opt out of or object to it.  As of October 12, 2015, no Class

---

[4] Plaintiffs' Counsel is filing Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Incorporated Memorandum of Law in Support simultaneously with this Motion.

2

Members have objected to the settlement, one-hundred and eighty-eight (188) Class Members have opted in, and forty-six (46) Class Members have excluded themselves.  *See* Exhibit A (Declaration of Andrew R. Frisch ("Frisch Decl.") ¶60), and Exhibit B (Declaration of Abel Morales ("Morales Decl.").  For the reasons stated below, the Court should grant final approval.

### III.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Factual Allegations

Plaintiffs allege that Defendants own and/or operate three (3) adult entertainment clubs that conduct business under the moniker "Scarlett's Cabaret," with locations in Hallandale, Florida, Ybor City, Florida, and Toledo, Ohio (the "Nightclubs").  Plaintiffs and the Class Members claim to have performed as entertainers at one of the Nightclubs.  The Class consists of all dancers who performed for at least one week at Scarlett's of Hallandale or Scarlett's of Ybor Strip in Florida at any time from December 4, 2009 to February 2, 2015 ("Florida class"), and/or at Scarlett's of Toledo in Ohio at any time from December 4, 2011 to February 2, 2015 ("Ohio class").  As entertainers, Plaintiffs and the Class Members were primarily responsible for entertaining patrons at the Nightclubs.

At all times throughout the relevant time period, Plaintiffs received no hourly wage or salary from the Nightclubs based upon their classification as non-employees (colloquially termed "independent contractors").  In this case, Plaintiffs alleged that Defendants misclassified them as independent contractors, when they were actually employees, and as a result Defendants failed to pay them legally mandated minimum wages and/or overtime as required under the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FLMWA"), and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").

3

In this lawsuit (also referred to herein as the "Litigation"), Plaintiffs alleged that Defendants violated the FLSA, FLMWA, and OMFWSA by failing to pay the entertainers the required minimum wage and/or overtime wages in one or more workweeks. As such, Plaintiffs claimed that Defendants were liable to them for an amount equal to the minimum wage for all hours worked and time and one-half minimum wage for any overtime hours. *See* Complaint (D.E. 1), Amended Complaint (D.E. 12), and Corrected Second Amended Complaint (D.E. 56).

Although this settlement was reached before any of the Defendants filed an Answer, Defendants maintain that neither Plaintiffs nor any of the entertainers were misclassified as independent contractors, and assert that Plaintiffs and the putative class therefore fall outside of the coverage provided by the FLSA, FLMWA, and OMFWSA. The parties also continue to disagree about the type and amount of damages each entertainer would be entitled to (if any), even to the extent Plaintiffs were ultimately to prevail in the case and obtain a finding that they were Defendants' employees. To that end, Defendants assert that any amounts that Plaintiffs received from their patrons were "service charges" that, upon a reclassification, would be the lawful property of the Nightclubs and that could then be used, in whole or in part, to satisfy any wage claims found to be owed. Moreover, Defendants assert that the Plaintiffs have not complied with certain Florida statutes that they contend are legal prerequisites to being able to initiate the state law claims at issue here. Finally, Defendants assert that the entertainers are subject to various written arbitration agreements that require them to resolve any and all claims that they may have against the Defendants through individualized binding arbitration.

**B.    Procedural History**

Plaintiff Encarnacion commenced this case by filing her Complaint on August 22, 2014. *See* Frisch Decl. ¶ 20; D.E. 1. Thereafter, she filed her Amended Class and Collective Action

4

Complaint on December 4, 2014, in which she added class action claims under the Florida Constitution ("FMWA").  *Id.* ¶ 21; D.E. 12.   Thereafter, the parties engaged in extensive, detailed discussions regarding resolution of this matter on a class-wide basis, and ultimately agreed to attend mediation.  *See* Exhibit A, ¶ 22 (Frisch Decl.).   Mediation took place on February 16, 2015, but was unsuccessful.  *Id.* ¶ 24.   Nevertheless, the parties continued to discuss resolution.  A tentative settlement was reached on March 2, 2015, but the details of the settlement and voluminous entertainer performance information necessitated additional weeks of negotiation and review.  In order to conform the pleadings to the scope of the parties' settlement, Plaintiffs filed their operative Complaint, the *Corrected* Second Amended Complaint on June 2, 2015.  *See* Frisch Decl. ¶ 25; D.E.s 55 and 56.

On June 26, 2015, the Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support.  [D.E. 64].  On June 30, 2015, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure ("Order").  [D.E. 65].

Thereafter, on July 7, 2015, the parties filed a Joint Motion to Approve a Revised Class Notice.  [D.E. 67].  The purpose of the revision was to add language to the Notice of Class Action Settlement ("Class Notice") clarifying the effect of each Class Member's participation and/or exclusion from the settlement on their release of any Fair Labor Standards Act ("FLSA")

claims. *Id.* The same day, the Court granted the parties' Joint Motion to Approve the Revised Class Notice. [D.E. 68].

On August 13, 2015, the parties filed a Joint Motion to Correct Scrivener's Error and Modify Settlement Agreement, Class Notice and Order Preliminarily Approving Settlement. [D.E. 75]. The parties requested that the Court approve a revised definition of the Ohio Class and the Participating Class Members,[5] along with the commensurate settlement payments, deem the settlement agreement and approved class notice so modified, and grant the parties an extension for the mailing of the Class Notice until seven (7) days from the date of the Court's Order granting the Motion. On August 14, 2015, the Court granted the parties' Joint Motion and Ordered the Class Administrator to mail within seven (7) days the revised Notice of Settlement of Class Action in accordance with the revisions of the Motion to Correct Scrivener's Error. D.E. 76.

On August 20, 2015, the Class Administrator mailed the Class Notice, the Claim Form, and the Opt-Out Form. The Class Members have until October 19, 2015, to timely submit a Completed Claim Form. There are approximately 4,709 Class Members. The Notice of Settlement of Class Action, the Claim Form, and the Opt-Out Form was mailed to 4,316 Class Members for whom Defendants provided addresses.[6] Class Members who did not provide Defendants an address and therefore were not mailed the Notice are not (unless they timely submit a claim) considered Participating Class Members and are therefore not bound by the

---

[5] Identifying the Ohio Class Members as "All exotic dancers who performed for at least one week at Scarlett's of Toledo at any time form December 4, *2011* to February 2, 2015."

[6] Exhibit C (CPT's weekly report). For Class Members whose Notices were returned undeliverable, a second mailing was attempted. To date, 1,277 notices were returned of which 1,238 were re-mailed to an updated address. *See id.*

settlement's release D.E. 75. To date, two-hundred and fifty (250) Class Members have responded, of which forty-six (46) have opted out and one-hundred and eighty-eight (188) have submitted valid Completed Claim Forms.[7]   Accordingly, 4.36% of the Participating Class Members have submitted valid claims.

### C.     Discovery

While the parties did not engage in formal discovery *per se*, Defendants made tens of thousands of pages of documents and computer records available to Plaintiffs and their expert forensic accountant for inspection as part of the mediation process discussed below and the settlement discussions that led to the parties' Settlement Agreement.   These documents included corporate policies, entertainer onboarding documents, independent contractor agreements between most Class Members and one or more of the Defendants, internal records pertaining to the period of time each Class Member performed at one of the Nightclubs, and entertainer rosters and calendars.  In addition, Plaintiffs' counsel interviewed each of the initial opt-in Plaintiffs regarding the alleged wage violations at issue in the case.  *See* Frisch Decl. ¶ 31.

### D.     Settlement Negotiations and Mediation

On February 2, 2015, the parties participated in an all-day mediation in Fort Lauderdale, Florida, with the assistance of Mediator, Adrienne Fechter, of Fechter Mediation & Arbitration Services, LLC.  *Id.,* ¶ 25.  Ms. Fechter is a very knowledgeable and skilled wage and hour class action mediator, with a nationwide mediation practice.  *Id.,* ¶ 26.  In that mediation, Defendants provided Class Counsel with additional information about the facts underlying the claims made in the Litigation and Defendants' claimed defenses.  *Id.,* ¶ 27.

_____

[7] *Id.*

Ultimately, despite mediating for over twelve (12) hours, the parties were unable to reach a settlement at mediation and the mediation reached an impasse. *Id.,* ¶ 28. Subsequent to the full-day mediation, the parties attended two (2) additional half-day in-person settlement conferences in which they continued to negotiate a settlement of the instant claims. *Id.,* ¶ 29.

On March 2, 2015, the parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case. *See* D.E. 36 (Notice of Settlement). *Id.,* ¶ 30. After lengthy additional negotiation and further in-person conferences, the parties reduced their agreement to a formal Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"), which the Court previously preliminarily approved. Plaintiffs, with Defendants' consent, nowseek final approval of the Agreement. *See* Joint Stipulation of Class Action Settlement Agreement and Release attached as **EXHIBIT D.** [D.E. 64-1].

## IV.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Settlement Fund

Defendants have agreed to create a settlement fund of up to $6,000,000.00 ("the Fund"). *See* Settlement Agreement, ¶¶ 1.14, 1.15 and 3.1; *see also* Frisch Decl. ¶ 40. The Fund will cover awards to Class Members, Court-approved attorneys' fees and costs, Court-approved service payments to Adonay Encarnacion, Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Rachel Stephenson, and Brittney Roberts, and one-third of the costs of administering the settlement exceeding $20,000. *See* Settlement Agreement, ¶¶¶¶ 1.14, 3.1, 3.3, 3.4; Frisch Decl. ¶¶ 40-42.

### B.   Release

Participating Class Members will release all Florida and Ohio wage and hour claims that were brought in the litigation or that are based on the same facts and circumstances as the

claims in the litigation. *See* Settlement Agreement, ¶ 4.1; Frisch Decl. ¶ 45. In addition to releasing their Florida and Ohio wage and hour claims, all Class Members who timely submit a Completed Claim Form (including Plaintiffs, Adonay Encarnacion, Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Brittney Roberts, and Rachel Stephenson) will release their FLSA claims. *Id.*; Frisch Decl. ¶ 46.[8]

### C.   **Eligible Class Members**

The Class consists of 4,709[9] current and former entertainers who performed for at least one week at Scarlett's of Hallandale or Scarlett's of Ybor Strip in Florida at any time from December 2009 to February 2, 2015 ("Florida class"), and/or at Scarlett's of Toledo in Ohio at any time from December 4, 2011 to February 2, 2015 ("Ohio Class"). Settlement Agreement, ¶ 1.4.

### D.   **Allocation Formula**

Qualified Class Members -- those who timely submit Completed Claim Forms and those who have submitted a consent to join the FLSA case -- will be paid pursuant to an allocation formula based on the period of time they performed at a Nightclub during the applicable limitations periods for their respective club, and specifically, the number of weeks they performed as an entertainer at each Nightclub within the class period. *Id.* ¶ 3.5. The weeks

---

[8] Participating Class Members who did not submit a claim will release their Florida and Ohio wage and hour claims, but not any FLSA claims they may have. *See id.,* ¶ 4.1.

[9] There are 4,709 Class Members, 4,316 Participating Class Members, and 188 Qualified Class Members who have submitted Completed Claim Forms. *See* Decl. of Abel Morales. Participating Class Members are Class Members who were mailed a Notice of Settlement, Claim Form and Opt-Out Form. D.E. 75, D.E. 76. Participating Class Members who do not submit a claim will release their Florida and Ohio wage and hour claims, but not any FLSA claims they may have. *See* Settlement Agreement ¶ 4.1 Qualified Class Members will release both FLSA and their Florida and Ohio wage and hour claims. *Id.* Class Members who are not Participating Class Members will not release their FLSA, Florida, or Ohio wage and hour claims. *Id.*, D.E. 75, D.E. 76.

performed by the entertainers are then grouped into months for purposes of allocating damages. *Id*. ¶ 3.5.  An IRS Form 1099-MISC shall be issued by the appropriate Defendant to each Qualified Class Member, as applicable under IRS regulations.  *Id*. ¶3.6.  Pursuant to the allocation formula, Qualified Class Members will receive a minimum of $111.01 if they performed anywhere from one week to one month, and a maximum of $6,882.37 if they performed sixty-one months or more within the class period.   Exhibit D (Settlement Agreement); *see also* D.E. 75-1 (Revised allocation); D.E. 76 (Order granting Motion to Correct Scrivener's Error and Modify Settlement Agreement, Class Notice, and Order Preliminarily Approving Settlement).

> ### E.   Service Awards.

In addition to their individual awards under the allocation formula, Plaintiffs, Adonay Encarnacion, Andrea Wong, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, Brittney Roberts, and Rachel Stephenson, all of whom actively participated in the Litigation, are applying for additional payment in recognition of the services they rendered on behalf of the class ("Service Awards"), and the risks they undertook for the benefit of the class.  *See* Exhibit D *(*Settlement Agreement) ¶ 3.4.

Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010); *Allapattah Services, Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185, 1218 (S.D. Fla. 2006) (Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (discussing the public policy reasons for incentive/service awards to class representatives). Like

the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of the Service Payments.  *See* Exhibit D (Settlement Agreement) ¶ 3.4.

## V.    SETTLEMENT CLAIMS ADMINISTRATION

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 688 (S.D. Fla. 2014) (discussing steps), *appeal dismissed* (Oct. 15, 2014); *Khait*, 2010 WL 2025106, at *1. This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

The Court granted the Plaintiffs' Motion for Preliminarily Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure.  D.E. 65.  The revised Notice of Settlement of Class Action, Claim Form, and Opt-Out Form were mailed to 4,316 Participating Class Members on August 20, 2015.  *See* Exhibit B (Declaration of Morales).  The Claims Administrator also created a case-specific website where

11

the Class Members could submit their Claim Forms or Opt-Out Forms electronically.[10]   In accordance with the Settlement Agreement, the Notice Period is 60 days. Exhibit D (Settlement Agreement) ¶ 5.3.  The deadline to submit a claim form, object or opt out is Monday, October 19, 2015. The fairness hearing is scheduled for October 22, 2015 at 1:15 P.M.

With this motion, Plaintiffs request that the Court grant final approval of their Settlement Agreement.  The parties respectfully submit for the Court's approval the following schedule for final resolution of this matter:

1. After the fairness hearing, if the Court grants Plaintiffs' Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 30 days after the Court enters its Final Order and Judgment. *Id.*, ¶ 1.11.

2. If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired. *Id.*

3. Defendants shall pay the total amount of the Qualified Class Members' claims, Class Counsel's fees and costs in the amount of $1,660,450.00, the first $20,000 of the Claim Administrator's fee and 1/3 of the Claim Administrator's fee which exceeds $20,000, if any, in twenty-four (24) equal monthly payments starting thirty (30) days after the Effective Date and continuing every thirty (30) days thereafter for the following twenty-three (23) months. *Id.*, ¶¶ 3.2, 3.3.

4. Defendants shall pay the total amount of the Service Awards sixty (60) days after the Effective Date. *Id.*, ¶ 3.4.

5. Once every ninety (90) days the Claims Administrator will pay Qualified Class Members one-eighth (1/8) of their portion of the Net Settlement Fund, as described in Section 3.5 of the Settlement Agreement.

6. Amounts allocated to any Class Member who does not timely submit a Completed Claim Form, or who elects to opt-out of the settlement, shall be retained by the Defendants. *Id.* ¶ 3.2.

---

[10] Scarlettscabaretlawsuit.com

## VI.    ARGUMENT

### A.    The Settlement Class Meets the Legal Standard for Class Certification.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed. R. Civ. P. 23(c). Second, the Court must determine whether the settlement is fair and adequate. *See In re Checking Account Overdraft Litiq.,* 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011); Fed.R.Civ.P. 23(e)(2), (e)(1).

To certify a class for settlement purposes, the Court must determine that the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC,* 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement Class satisfies the requisite Rule 23 factors detailed below.[11] Thus, the Court should certify the settlement Class.

### 1.    Numerosity.

---

[11] Federal courts throughout Florida have granted class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.,* 2014 WL 2625181 (M.D. Fla. June 12, 2014) (certifying opt-out Rule 23 class of FLMWA claimants); *Lopez v. Hayes Robertson Group, Inc.,* 2013 WL 10561294 (S.D. Fla. Sept. 23, 2013)(certifying opt-out Rule 23 class of FMWA claimants regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.,* 280 F.R.D. 640 (M.D. Fla. 2012) (Moody, J.) (certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting,* 265 F.R.D. 619 (M.D. Fla. 2010)(Steele, J.)(same); *Napoles-Arcila v. Pero Family Farms, LLC,* 2009 WL 1585970 (S.D. Fla. June 4, 2009)(same); *Mesa v. Ag-Mart Produce, Inc.,* 2008 WL 2790224 (M.D. Fla. July 18, 2008)(Howard, J.)(same).

13

"Numerosity" speaks to the practicability of joining all members in the litigation in lieu of implementing the class action procedure. *See* FED.R.CIV.P. 23(a)(1). It frequently is said that attending circumstances dictate the existence of "numerosity," rather than the mere satisfaction of some arbitrarily numeric formulae. *See, e.g., Garcia v. Gloor,* 609 F.2d 156, 160 (5th Cir.1980); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993) (considering the totality of facts when applying Rule 23(a)(1)). Thus, as the Rule itself suggests, the "numerous" character of any action turns upon concepts of general unwieldiness, not size alone. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) (movant need only show that joinder of prospective members would cause inconvenience); *Kelley v. Norfolk & W. Ry. Co.,* 584 F.2d 34, 35–36 (4th Cir.1978) (courts must focus on both qualitative and quantitative considerations).

Here, there are 4,709 Class Members and 4,316 Participating Class Members.[12]  For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met for purposes of settlement. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

### 2.  Commonality

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied for purposes of settlement because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices pertaining to the entertainers—specifically their classification of

---

[12]  *See* Supra n. 8.

all entertainers as independent contractors, and alleged failure to pay minimum wages—and are common to the Class.

### 3.  Typicality

In a similar fashion, Rule 23(a)'s "typicality" requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Flanagan v. Ahearn ( In re Asbestos Litigation),* 90 F.3d 963, 976 (5th Cir.1996) (citing *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468, 472 (5th Cir.1986)).

The Plaintiffs' claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### 4.  Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue.  *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Representative Plaintiffs and the settlement class, and Plaintiffs have retained competent counsel to represent them and the settlement class. Class Counsel here regularly engages in wage and hour class litigation and

other complex litigation similar to the present Litigation, and have dedicated substantial resources to the prosecution of the action. Moreover, the Representative Plaintiffs and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

### 5.   Predominance and Superiority

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 4,709 Class Members in a single, coordinated proceeding is superior to 4,709 individual lawsuits or arbitrations addressing the same legal and factual issues.  With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir.2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all Class Members in a single common judgment.  *See In re Checking Account Overdraft Litigation,* 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class.  Thus, the Court should finally certify the settlement Class.

### B.   <u>The Proposed Settlement is fair, reasonable, and adequate, and should be approved.</u>

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed

dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977)).

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Smith*, 926 F.2d 1027, 1029 (11th Cir.1991)("Settlement is generally favored because it conserves scarce judicial resources."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.*, 18 F.3d 1527, 1531 (11th Cir.1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.*, 447 2011 WL

6003986 (11th Cir. 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

    **1.   The Settlement Is Fair, Reasonable, and Adequate.**

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp., supra.* The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and therefore the Court should approve theSettlement Agreement.

    **a.   <u>The Likelihood of Success at Trial.</u>**

Although Plaintiffs believe their case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 356 (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages, as Defendants have asserted numerous substantive and procedural defenses. For example, Defendants presented evidence on which a finder of fact could ultimately have relied in finding

their independent contractor classification was correct, and there is case law supporting the position of the Defendants.  If successful, this would be a complete defense to Plaintiffs' claims. *See Hilborn v. Prime Time Club, Inc.,* 2012 WL 9187581 (E.D. Ark. July 12, 2012) (adult entertainers held to be independent contractors and thus not subject to FLSA coverage); *Matson v. 7455, Inc.,* 2000 WL 1132110 (D. Or. Jan. 14, 2000) (same).

Additionally, even to the extent Plaintiffs prevailed on the employee versus independent contractor argument, Defendants argue that, according to the relevant case authority, Plaintiffs suffered little or no damages, because the money that they received from their patrons constituted service fees rather than tips, and thus could be used to satisfy Defendants' minimum wage obligations, to the extent same existed.  *See Doe v. Cin-Lan, Inc.*, 2010 WL 726710, at *7 (E.D. Mich. Feb. 24, 2010) (if amounts received by adult entertainers from club's patrons were deemed to be service charges, they could serve as set-off to plaintiff's claims).   Indeed, Defendants contend that Plaintiffs would owe Defendants money because the service fees substantially exceeded the amount of the minimum wage Plaintiffs would have made.  *See Geter v. Galardi South Enterprises*, 2014 WL 4290550 (S.D. Fla. Aug. 29, 2014) (denying a motion by a group of exotic dancers to dismiss counterclaims that had been filed against them).

Procedurally, based on written arbitration agreements containing class and collective action waivers, Defendants also assert that some or all of the Plaintiffs' and settlement Class Members' claims were subject to binding and costly arbitration on an individual basis. Defendants filed a motion to compel such individual arbitrations.  *See AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (holding class action waivers enforceable).

While Plaintiffs disagree, Defendants also contend that Plaintiffs' Florida state law claims suffer from procedural infirmities because Plaintiffs failed to comply with Fla. Stat. §

448.110(6), which requires a claimant, prior to filing suit under the Florida Minimum Wage Act, to first serve on the proposed defendant a detailed itemization of the damages sought and provide the proposed defendant with the requisite statutory period in which to voluntarily remit any wages owed.  Defendants moved to dismiss the Florida state law claims on this alternative basis.

While Plaintiffs believe that they would ultimately have defeated each of Defendants' aforementioned arguments, this would require significant factual development and favorable outcomes at trial and on appeal regarding issues of first impression within the Eleventh Circuit, all of which is inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of preliminary approval.

### b.  Range of Possible Recovery and Range at Which Settlement is Fair.

The relief sought in the settlement is reasonable and within the range of remedies permitted by law.  Under the Settlement Agreement, each Class Member is eligible to receive a proportion of her alleged minimum wage/overtime deficiency.  A Qualified Class Member who performed less than one month will receive $111.01 and a Qualified Class Member who performed more than sixty-one months will receive $6,882.37.  D.E. 75-1 (revised allocation). "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail." *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C. October 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness").

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

### c.  Litigation Through Trial Would Be Complex, Costly, and Long.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with more than 4,000 Class Members and claims under federal and state law.

Although there has been some informal discovery already, additional discovery would be required to establish liability and damages, including depositions of Class Members in several states, Defendants, and Defendants' employees and managers. Further, Defendants would have opposed certification of the Rule 23 class and any FLSA collective action, had the matter not resolved, and sought to decertify same, even in the event that the Court ultimately certified a Rule 23 class.

In addition, the parties likely would have filed cross-motions for summary judgment on the legal issues regarding Defendants' challenged classification of Plaintiffs as independent contractors, their set-off defense as outlined above and other defenses. If the Court denied the motions, a fact-intensive trial would be necessary to determine whether Plaintiffs and the Class Members were paid in compliance with the FLSA, FLMWA, and/or OFMWSA. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial

21

resources. Given the unsettled nature of the law at issue in the case, any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the third *Bennett* factor weighs in favor of approval.

### d. The Reaction to the Settlement Has Been Favorable and In Accord with Similar Cases

The claims, objection and opt out period will close on October 19, 2015.  Significantly, of the total 3,852 Class Members to whom the Notice was apparently successfully mailed, as of the date of this Motion, no Class Member has objected to the settlement and only 46 have opted out.  *See* Frisch Decl., ¶¶ 60; *See* Morales Decl.   Thus, as of the date of this Motion, the total opt out rate is only approximately 1%.  *See Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") (citing *Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990), wherein fact that only 10% of class members objected to settlement weighed in favor of approval); *Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *15 (C.D. Cal. 2010) (where approximately 5% of class members submitted claims and under 1% opted out or objected, "[t]he comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair"); *Briggs v. Hartford Fin. Servs. Grp., Inc.*, 2009 WL 2370061, at *11 (E.D. Pa. July 31, 2009) ("Put otherwise, less than 2.7% of the class opted out. It is therefore fair to infer that a vast majority—over 97%—of the class supports the Agreement.").

Additionally, 188, or 4.89% of those to whom Notices were apparently successfully mailed have submitted valid claims.  This claims rate is substantially the same as similar matters

involving wage and hour claims by exotic entertainers, *see Jane Doe Nos. 1-4 v. Cin-Lan, Inc.,* No. 4:08-CV-12719 (E.D. Mich. June 15, 2011) (approving class settlement where approximately 4.93% of the eligible class members opted in), and comports with federal court's consistent approval of settlements with similar claims rates in other contexts under Rule 23. *See, e.g., Hall v. Bank of America, N.A.*, 2014 WL 7184039, *8 (S.D. Fla. Dec. 17, 2014) (Moreno, J.) (approving settlement absent final claims data because the number of claims is "not a relevant factor in evaluating the fairness, reasonableness, or adequacy of the settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (Seitz, J.) (approving settlement in which 1.1% of class members returned claim forms); *see also Date v. Sony Electronics, Inc.*, 2013 WL 3945981, *9-10 (E.D. Mich. July 31, 2013) (approving settlement with 4% claims made rate); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485 (D. Me. April 13, 2011) (finding favorable class reaction in a 3.9% response rate); *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 397, 406 (D. Mass. 2008) (approving settlement with response rate of slightly more than 3%).

### e. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, Defendants produced

voluminous documents pertaining to their corporate policies, entertainer schedules, class size, and workweek information. Frisch Decl. ¶31.   In addition, Plaintiffs' counsel interviewed the opt-in Plaintiffs, who joined prior to the filing of Plaintiffs' Motion for Preliminary Approval of Settlement, D.E. 64, regarding the independent contractor misclassification and minimum wage deficiency claims at issue here. *Id.*

Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where the parties exchanged payroll and time data and policies and procedures and where plaintiffs interviewed numerous opt-ins regarding their duties and hours worked). This factor also weighs in favor of final approval.

**2.      The Service Awards Are Reasonable and Should Be Awarded.**

The Settlement Agreement proposes that the settlement Class Representative Plaintiffs be awarded the following Service Awards: $15,000 to settlement Class Representative Adonay Encarnacion, $2,000 each to Settlement Class Representatives Andrea Wong, and Rachel Stephenson and opt-in Plaintiffs, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, and $750 to settlement Class Representative Brittany Roberts.  The Service Awards are in recognition of the Class Representative Plaintiffs' and designated opt-in Plaintiffs' active participation in this action and service to the settlement Class, as well as the risks they undertook for the benefit of the Class.  These service awards are in addition to the awards each of the Class Representative/opt-in Plaintiffs are to receive pursuant to the formula applicable to all class

24

members.  *See* Exhibit A Frisch Decl.; Exhibit D (Settlement Agreement), ¶ 3.4.  The parties

have agreed that the Service Awards will be paid from the Fund.  *See id.,* ¶ 3.1.

"[T]here is ample precedent for awarding incentive compensation to class representatives

at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.,* 2010 WL

1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an

efficient and productive way to encourage members of a class to become class representatives.

*See, e.g., Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class

representatives $300,000 each, explaining that "the magnitude of the relief the Class

Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer*

*v. Chi. Bd. Options Exchange, Inc.,* 844 F. Supp. 1226, 1267–68 (N.D.Ill.1993) (collecting cases

approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each

named plaintiff).

"While the Eleventh Circuit has not expressly set forth guidelines for courts to use in

determining incentive awards, there is ample precedent for awarding incentive compensation to

class representatives at the conclusion of a successful class action. In fact, "'[c]ourts routinely

approve incentive awards to compensate named plaintiffs for the services they provided and the

risks they incurred during the course of the class action litigation.' " *Allapattah Servs., Inc. v.*

*Exxon Corp.,* 454 F.Supp.2d 1185, 1218 (S.D.Fla.2006) (quoting *supra*); *see also Su v. Elec.*

*Arts, Inc.,* No. 6:05–cv–131–Orl–28JGG, 2006 WL 4792780, at *1, 2 (M.D. Fla. Aug.29, 2006)

(unpublished Report and Recommendation), adopted, 2007 WL 2780899 (M.D. Fla. Sept.20,

2006) (unpublished); *see also Sheppard v. Consol. Edison Co. of N.Y., Inc.,* 2002 WL 2003206,

at *6 (E.D.N.Y. Aug.1, 2002) (unpublished) (collecting cases). "Such awards are justified when

the class representatives expend considerable time and effort on the case, especially by advising

counsel, or when the representatives risk retaliation as a result of their participation." *Ingram,* 200 F.R.D. at 694.

Given the amount of time and effort put forth by the settlement Class Representatives and designated opt-in Plaintiffs and the inherent risk taken, and upon consideration of the amount proposed, the Service Awards are reasonable and should be awarded. *See* Frisch Decl., ¶¶ 52-55.

### C.   Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of the FLSA claims of those Rule 23 Class Members who opted in to the case and/or submitted a claim form.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Sewell*, 2012 WL 1320124, at *10. Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2012); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.

*Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Frisch Decl. ¶¶ 32-39. During the litigation and at the mediation, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## VII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requests that the Court: (1) finally approving the Settlement as fair, adequate and reasonable; (2) certifying for settlement purposes only the Class[13] pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e) and the collective action pursuant to the FLSA; (3) appointing Adonay Encarnacion, Andrea Wong, Rachel Stephenson, and Brittany Roberts as class representatives for this Settlement ("Settlement Class Representatives"); (4) appointing as Class Counsel Andrew R. Frisch, the firm of Morgan & Morgan, P.A., Galvin B. Kennedy, Beatriz Sosa-Morris and the firm of Kennedy Hodges LLP; (5) approving a service award of $15,000 to Settlement Class Representative Adonay Encarnacion, approving a service award of $2,000 to Settlement Class Representatives Andrea Wong, and Rachel Stephenson and Plaintiffs, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh each, and awarding a service award of $750 to

---

[13] "Class" means all dancers who performed for at least one week at Scarlett's of Hallandale or Scarlett's of Ybor Strip at any time from December 4, 2009 to February 2, 2015 and/or Scarlett's of Ohio at any time from December 4, 2011 to February 2, 2015.  D.E. 75, p. 3 (Joint Motion to Correct Scrivener's Error and Modify Settlement Agreement, Class Notice and Order Preliminarily Approving Settlement); D.E. 76 (Order granting such Motion).

Settlement Class Representative Brittany Roberts; (6) retaining continuing jurisdiction over Plaintiffs, the Class, and Defendants J.W. LEE, INC., D/B/A SCARLETT'S OF HALLANDALE, FL; J.W. LEE PROPERTIES, LLC; YBOR OPERATIONS, L.C. D/B/A SCARLETT'S OF YBOR STRIP;  BZLY, INC.; M.S.B. LAND HOLDINGS, INC.; SVC JOINT VENTURES LLC; BENORE VENTURES, INC.; SB PRODUCTIONS, INC.; J.B. MONROE, INC., BRANDON SAMUELS, individually, JOHN BLANKE, individually, WILLIAM BEASLEY (collectively "Defendants" or "Scarlett's") to enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; (7) entering Final Judgment dismissing the Action with prejudice; (8) declaring the same binding on all Participating Class Members, and permanently enjoining the Participating Class Members from pursuing any claims that are released by Section 4.1 of the Settlement Agreement; and (9) entering the proposed Order of Final Approval of Settlement.

Dated: October 12, 2015

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

*/s/ Andrew R. Frisch*
Andrew R. Frisch, Esq.
MORGAN & MORGAN P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013
E-Mail: AFrisch@forthepeople.com

-and-

Galvin B. Kennedy, Esq. (admitted *pro hac vice*)
Beatriz Sosa-Morris, Esq. (admitted *pro hac vice*)
KENNEDY HODGES, LLP
711 W. Alabama St.

Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
E-mail:  gkennedy@kennedyhodges.com
E-mail:  bsosamorris@kennedyhodges.com

*Attorneys for Plaintiffs and the Proposed*
*Settlement Class*

## CERTIFICATE OF CONFERENCE

Plaintiff's undersigned counsel certifies that, pursuant to the Local Rules of the Middle District of Florida, and the Federal Rules of Civil Procedure, he has conferred in good faith regarding the relief sought in this Motion, and is authorized to represent to the Court that Defendants do not oppose same.

**/s/ ANDREW FRISCH**
ANDREW FRISCH, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all counsel of record this 12th day of October, 2015.

**/s/ ANDREW FRISCH**
ANDREW FRISCH, ESQ.