UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ADONAY ENCARNACION, ANDREA WONG, RACHEL STEPHENSON, and BRITTNEY ROBERTS, Individually, and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>vs.<br><br>J.W. LEE, INC., D/B/A SCARLETT'S CABARET D/B/A SCARLETT'S OF HALLANDALE, FL; et.al.,<br><br>    Defendants. | CASE NO.: 14-CIV-61927-DIMITROULEAS |
| CHRISTINE DEMARIA-DOMINGUEZ, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br>vs.<br><br>JW LEE, INC., a Florida Corporation d/b/a SCARLETT'S CABARET, a Florida corporation,<br><br>    Defendant. | CASE NO. 15-CIV-61173-DIMITROULEAS<br><br>(Consolidated with 14-CIV-61927-DIMITROULEAS) |

## FINAL ORDER AND JUDGMENT GRANTING MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF SERVICE AWARD, AND APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

This case comes before the Court on Plaintiffs' Motion for Final Approval of the Class Action Settlement and Approval of Service Awards, and Incorporated Memorandum of Law in Support ("Motion for Final Approval") and Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Fees"). The Court held a final fairness hearing on October 22, 2015 (the "Fairness Hearing") concerning the Motion for Final Approval and the parties' Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement

1

Agreement"), which the Court previously preliminarily approved.

In this case, Plaintiffs allege that Defendants own and/or operate three (3) adult entertainment clubs that conduct business under the moniker "Scarlett's Cabaret," with locations in Hallandale, Florida, Ybor City, Florida, and Toledo, Ohio (the "Nightclubs"). Plaintiffs and the Class Members claim to have performed as entertainers at one or more of the Nightclubs. The Class consists of all dancers who performed for at least one week at Scarlett's of Hallandale or Scarlett's of Ybor Strip in Florida at any time from December 2009 to February 2, 2015 and/or at Scarlett's of Toledo in Ohio at any time from December 4, 2011 to February 2, 2015. As entertainers, Plaintiffs and the Class Members were primarily responsible for entertaining patrons at the Nightclubs.

At all times throughout the relevant time period, Plaintiffs received no hourly wage or salary from the Nightclubs based upon their classification as non-employees (colloquially termed "independent contractors"). In this lawsuit (also referred to herein as the "Litigation"), Plaintiffs alleged that Defendants misclassified them as independent contractors, when they were actually employees, and as a result Defendants failed to pay them legally mandated minimum wages and/or overtime as required under the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FLMWA"), and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").

Plaintiffs alleged that Defendants violated the FLSA, FLMWA, and OMFWSA by failing to pay the entertainers the required minimum wage and/or overtime wages in one or more workweeks. As such, Plaintiffs claimed that Defendants were liable to them for an amount equal to the minimum wage for all hours worked and time and one-half minimum wage for any

overtime hours. *See* Complaint (D.E. 1), Amended Complaint (D.E. 12), and Corrected Second Amended Complaint (D.E. 56).

Although this settlement was reached before any of the Defendants filed an Answer, Defendants maintain that neither Plaintiffs nor any of the entertainers were misclassified as independent contractors, and assert that Plaintiffs and the putative class therefore fall outside of the coverage provided by the FLSA, FLMWA, and OMFWSA. The parties also disagree about the type and amount of damages to which each entertainer would be entitled (if any), even if Plaintiffs were to obtain a finding that they were Defendants' employees. To that end, Defendants assert that any amounts Class Members received from their patrons were "service charges" that, upon a reclassification, would be the lawful property of the Nightclubs and that could then be used, in whole or in part, to satisfy any wage claims found to be owed. Moreover, Defendants assert that the Plaintiffs failed to comply with certain Florida statutes that are legal prerequisites to being able to initiate the state law claims at issue here. Finally, Defendants assert that the entertainers are subject to various written arbitration agreements that require them to resolve any and all claims that they may have against the Defendants through individualized binding arbitration.

### A. Procedural History

Plaintiff Encarnacion commenced this case by filing her Complaint on August 22, 2014. Thereafter, she filed her Amended Class and Collective Action Complaint on December 4, 2014, in which she added class action claims under the Florida Constitution ("FMWA"). Subsequently, the Parties engaged in extensive, detailed discussions regarding resolution of this matter on a class-wide basis, and ultimately agreed to attend mediation. Mediation took place on

3

February 16, 2015, but was unsuccessful. Nevertheless, the parties continued to discuss resolution. A tentative settlement was reached on March 2, 2015, but the details of the settlement and voluminous entertainer performance information necessitated additional weeks of negotiation and review. In order to conform the pleadings to the scope of the Parties' settlement, Plaintiffs filed their operative Complaint, the *Corrected* Second Amended Complaint, on June 2, 2015.

On June 26, 2015, the Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support. [D.E. 64]. On June 30, 2015, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure ("Order"). [D.E. 65].

Thereafter, on July 7, 2015, the parties filed a Joint Motion to Approve a Revised Class Notice. [D.E. 67]. The purpose of the revision was to add language to the Notice of Class Action Settlement ("Class Notice") clarifying the effect of each Class Member's participation and/or exclusion from the settlement on their release of any Fair Labor Standards Act ("FLSA") claims. *Id.* The same day, the Court granted the parties' Joint Motion to Approve the Revised Class Notice. [D.E. 68].

On August 13, 2015, the parties filed a Joint Motion to Correct Scrivener's Error and Modify Settlement Agreement, Class Notice and Order Preliminarily Approving Settlement.

[D.E. 75]. The parties requested that the Court approve a revised definition of the Class Members who performed at the Ohio Nightclub and the Participating Class Members,[1] along with the commensurate settlement payments, deem the settlement agreement and approved class notice so modified, and grant the parties an extension for the mailing of the Class Notice until seven (7) days from the date of the Court's Order granting the Motion. On August 14, 2015, the Court granted the parties' joint motion and ordered the Claims Administrator to mail within seven (7) days the revised Class Notice in accordance with the revisions of the Motion to Correct Scrivener's Error.

On August 20, 2015, the Class Administrator mailed the Class Notice, the Claim Form, and the Opt-Out Form. There are approximately 4,709 Class Members. The Settlement Notice, the Claim Form, and the Opt-Out Form were mailed to 4,316 Class Members for whom Defendants provided addresses. Class Members who did not provide Defendants an address and who therefore were not mailed the Class Notice are not (unless they timely submitted a valid claim) considered Participating Class Members and are therefore not bound by the settlement's release D.E. 75.

To be considered timely, all Completed Claim Forms, Opt-Out Forms and objections had to be postmarked by October 19, 2015. As of the Fairness Hearing, assuming all such postmarked submissions had been received, 394 Class Members have responded, of which none objected, 53 (or 1%) opted out and 315 (or 7.3%) submitted valid claims.

---

[1] Identifying the Ohio Class Members as "All exotic dancers who performed for at least one week at Scarlett's of Toledo at any time from December 4, *2011* to February 2, 2015."

### B. Discovery

While the parties did not engage in formal discovery *per se*, Defendants made tens of thousands of pages of documents and computer records available to Plaintiffs and their expert forensic accountant for inspection as part of the mediation process discussed below and the settlement discussions that led to the parties' Settlement Agreement. These documents included corporate policies, entertainer onboarding documents, independent contractor agreements between most Class Members and one or more of the Defendants, internal records pertaining to the period of time each Class Member performed at one of the Nightclubs, and entertainer rosters and calendars. In addition, Plaintiffs' counsel interviewed each of the initial opt-in Plaintiffs regarding the alleged wage violations at issue in the case.

### C. Settlement Negotiations and Mediation

On February 2, 2015, the parties participated in an all-day mediation in Fort Lauderdale, Florida, with the assistance of Mediator, Adrienne Fechter, of Fechter Mediation & Arbitration Services, LLC. Ms. Fechter is an experienced wage and hour class action mediator, with a nationwide mediation practice. In that mediation, Defendants provided Class Counsel with additional information about the facts underlying the claims made in the Litigation, and Defendants' claimed defenses.

Ultimately, despite mediating for over twelve (12) hours, the parties were unable to reach a settlement at mediation and the mediation reached an impasse. Subsequent to the full-day mediation, the parties attended two (2) additional half-day in-person settlement conferences in which they continued to negotiate a settlement.

On March 2, 2015, the parties reached a settlement in principle, on a class-wide basis,

regarding all claims in the case. *See* D.E. 36 (Notice of Settlement). After lengthy additional negotiations and further in-person conferences, the parties reduced their agreement to a formal Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"), which the Court previously preliminarily approved, and for which the parties now seek final approval.

### D. The Class Received Adequate Notice

On June 29, 2015, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to Class Members. *See* D.E. 65.

On August 20, 2015, the Claims Administrator mailed the Class Notice, Claim Form, and Opt-Out Form to 4,316 class members for whom mailing addresses were available. Of these, 1,300 were initially returned. After performing procedures to obtain updated addresses, the Claims Administrator re-mailed the Notice of Settlement, Claim Form, and Opt-Out Form to 1,064 Class Members. Additionally, 40 mailings were forwarded. Of this total, 218 mailings were returned a second time. Class Members could also make a claim, opt out or object either via mail or through a case-specific website created by the Claims Administrator. Under the Settlement Agreement, the post-mark deadline to make a claim, opt out or object was October 19, 2015. These dates were clearly stated in the Class Notice.

As of the cut-off date of October 19, 2015, no Class Members objected to the settlement, 315 Class Members opted in, and 53 Class Members excluded themselves.

### E. Final Approval is Warranted

Having considered the Motion for Final Approval, the supporting memorandum of law,

7

the Declaration of Andrew R. Frisch and exhibits thereto; the oral arguments presented at the Fairness Hearing; and the complete record in this matter, for the reasons set forth therein and stated on the record at the Fairness Hearing and for good cause shown,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:**

1. This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used in this Final Judgment shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

2. The Court certifies the Rule 23 and FLSA Classes for purposes of settlement.

3. This Court approves the Settlement Agreement and all terms set forth in the Settlement Agreement and finds that the Settlement Agreement meets the requirements of Rule 23 and the FLSA. The Settlement Agreement is, in all respects, fair, reasonable, adequate, not a product of collusion, and the resolution of a bona fide dispute. *See* Fed. R. Civ. P. 23(e); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

4. The $6,000,000.00 maximum settlement amount is substantial and includes meaningful payments to Class Members. In reaching this conclusion, the Court is satisfied that the settlement was fairly and honestly negotiated. It was the result of vigorous arm's-length negotiations, which were undertaken in good faith by counsel with extensive experience in litigating wage and hour class actions, and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See In re: U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits.").

5. The parties' judgment that the settlement is fair and reasonable, as well as the

Class's favorable response to the settlement, weigh in favor of final approval of the settlement. *See, e.g., Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") (citing *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990)); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007)( "A low percentage of objections demonstrates the reasonableness of a settlement.").

6. The Court therefore enters Judgment in accordance with the Settlement Agreement. Upon the effective date of the Settlement, each Participating Class Member shall release all Florida and Ohio state law claims asserted in this lawsuit through February 2, 2015, along with all other claims arising out of or relating to the same alleged conduct, as set forth in the Settlement Agreement, and attorneys' fees and costs to date related to such claims.

7. All Qualified Class Members additionally forever and fully release all FLSA claims asserted in this lawsuit through February 2, 2015, including all FLSA claims for unpaid overtime wages, liquidated damages, and attorneys' fees and costs related to such claims.

8. This Court awards Class Counsel 27.4% of the Maximum Settlement Payment, or $1,641,686.06, as attorneys' fees and $18,763.94 for costs and expenses incurred in this Litigation, for a total of $1,660,450.00, to be paid from the Maximum Settlement Payment as set forth in the Settlement Agreement.

9. The Court finds that the amount of fees requested is fair and reasonable using the "percentage of recovery" method, which is consistent with the dictates of the Eleventh Circuit. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

10. Class Counsel's request for 27.4% of the Maximum Settlement Payment is also consistent with the trend in this Circuit. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third of the settlement fund... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012)(class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys fees); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

11. The attorneys' fees requested were entirely contingent upon success in this litigation. Class Counsel expended significant time and effort and advanced costs and expenses

without any guarantee of compensation.

12. This Court approves the following service payments, to be paid from the Maximum Settlement Payment as set out in the Settlement Agreement: $15,000 to settlement Class Representative Adonay Encarnacion, $2,000 each to settlement Class Representatives Andrea Wong, and Rachel Stephenson and opt-in Plaintiffs, Valeria Casillas, Marissa Gall, Roberta Inserra, Patricia Kugmeh, and $750 to settlement Class Representative Brittany Roberts. The service payments are in recognition of the Class Representative Plaintiffs' and designated opt-in Plaintiffs' active participation in this action and service to the settlement Class, as well as the risks they undertook for the benefit of the Class. These service payments are reasonable in light of the efforts this individual expended in furthering the interests of the Class. *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010) ("[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.").

13. Defendants shall pay the total amount of the Qualified Class Members' claims, Class Counsel's fees and cost in the amount of $1,660,450.00, and Claims Administrator fees, once determined, to the extent set out in the Settlement Agreement, in twenty-four (24) equal monthly payments starting thirty (30) days after the Effective Date and continuing every thirty (30) days thereafter for the following twenty-three (23) months.

14. Defendants shall pay the total amount of the service payments sixty (60) days after the Effective Date.

15. The *Encarnacion* case is dismissed with prejudice and without costs to any party. All Participating and Qualifying Class Members are barred and permanently enjoined from

participating in any other individual or class lawsuit against the Releasees concerning the Released Claims, as defined in Section 4 of the Settlement Agreement.

16. This Order shall not have any effect on the *Demaria-Dominguez* case, and the claims raised therein shall proceed independent of the findings herein.

17. Without affecting the finality of this Judgment and Order, the Court reserves continuing and exclusive jurisdiction over parties to the settlement agreement to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the parties.

18. The Parties having so agreed, good cause appearing, and there being no just reason for delay, it is expressly directed that this Final Judgment and Order be, and hereby is, entered as a final order.

DONE AND ORDERED in chambers, at Fort Lauderdale, Florida this 22 day of October 2015.

_____
William P. Dimitrouleas
United States District Judge

Copies furnished to:
*Counsel of record*